## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ORO CAPITAL ADVISORS, LLC　　　　　　:　Case No.: 2:19-cv-05087
11766 Wilshire Boulevard, Suite 325
Los Angeles, CA 90025　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　Judge:
　　　　and　　　　　　　　　　　　　　:

ORO KARRIC SOUTH, LLC　　　　　　　　:
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120　　　　　　　　:　**<u>COMPLAINT</u>**


　　　　and　　　　　　　　　　　　　　:

ORO KARRIC NORTH, LLC　　　　　　　　:　**<u>JURY DEMAND ENDORSED</u>**
3556 E. Russell Road, 2nd Floor　　　　　　**<u>HEREON</u>**
Las Vegas, Nevada 89120　　　　　　　　:


　　　　and　　　　　　　　　　　　　　:

ORO SILVERTREE, LLC　　　　　　　　　:
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120　　　　　　　　:


　　　　and　　　　　　　　　　　　　　:

ORO SPRINGBURNE, LLC　　　　　　　　:
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120　　　　　　　　:


　　　　and　　　　　　　　　　　　　　:

ORO RB SPE OWNER, LLC　　　　　　　　:
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120　　　　　　　　:


　　　　and　　　　　　　　　　　　　　:

13751232 _1

ORO ISLAND CLUB SPE OWNER, LLC          :
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120                 :

     Plaintiffs,                     :

     v.                              :

BORROR CONSTRUCTION CO., LLC            :
985 North High Street, Suite 200
Columbus, OH 43201                      :

     With a copy to:                 :

     Borror Construction Co., LLC    :
     C/o Loribeth Steiner, Its Statutory Agent
     600 Stonehenge Parkway, 2nd Floor   :
     Dublin, OH 43017
                                     :

DOUGLAS BORROR                          :
845 North High Street, Unit 505
Columbus, Ohio 43215                    :

     and                             :

LORIBETH STEINER                        :
8134 Crossgate Court North
Dublin, Ohio 43017                      :

     and                             :

TOM GARSKE                              :
7364 Worthington Road
Westerville, Ohio 43082                 :

     and                             :

DANIELLE BORROR SUGARMAN                :
1042 Jaeger Street
Columbus, Ohio 43206                    :

13751232 _1

    :

    and

JOHN AND JANE DOES 1-15, JOHN DOE  :
CORPORATIONS 1-15, AND OTHER JOHN
DOE ENTITIES 1-15, all whose true names are  :
unknown.

    Defendants.

Plaintiffs, Oro Capital Advisors, LLC ("Oro Capital"), Oro Karric South, LLC ("Oro Karric South"), Oro Karric North, LLC ("Oro Karric North"), Oro Silvertree, LLC ("Oro Silvertree"), Oro Springburne, LLC ("Oro Springburne"), Oro RB SPE Owner, LLC ("Oro Runaway Bay"), and Oro Island Club SPE Owner ("Oro Island Club"), state as follows for their complaint against the Defendants, Borror Construction Company, LLC ("Borror Construction"), Douglas Borror ("Doug Borror"), Loribeth Steiner ("Steiner"), Tom Garske ("Garske"), Danielle Borror Sugarman ("Borror Sugarman"), John Does 1-10, John Doe Corporations 1-10, and John Doe Entities 1-10 (John Does 1-10, John Doe Corporations 1-10, and John Doe Entities 1-10 shall be referred to collectively herein as the "John Doe Defendants"):

<u>**PARTIES/JURISDICTION/VENUE**</u>

1.    Plaintiff Oro Capital is a limited liability company organized under the laws of the State of California, and none of its members or sub-members are citizens of the State of Ohio.

13751232_1

2.     Plaintiff Oro Karric North is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

3.     Plaintiff Oro Karric South is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

4.     Plaintiff Oro Silvertree is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

5.     Plaintiff Oro Springburne is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

6.     Plaintiff Oro Runaway Bay is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

7.     Plaintiff Oro Island Club is a limited liability company organized under the laws of the State of Delaware and none of its members or sub-members are citizens of the State of Ohio.

13751232 _1

8.     Plaintiffs Oro Karric North, Oro Karric South, Oro Silvertree, Oro Springburne, Oro Runaway Bay, and Oro Island Club shall be referred to collectively herein as the "Property-Owning Plaintiffs."

9.     Defendant Borror Construction is a limited liability company organized under the laws of the State of Ohio with its principal place of business located in Franklin County, Ohio, and, upon information and belief, it has at least two members, Doug Borror and Lori Steiner, both of whom are believed to be citizens of the State of Ohio.

10.     Upon information and belief, Defendant Doug Borror is an individual residing in Franklin County, Ohio.

11.     Upon information and belief, Defendant Steiner is an individual residing in Franklin County, Ohio.

12.     Upon information and belief, Defendant Garske is an individual residing in Franklin County, Ohio.

13.     Upon information and belief, Defendant Borror Sugarman is an individual residing in Franklin County, Ohio.

14.     Plaintiff does not know the true identities of the John Doe Defendants, but upon discovery, will amend this Complaint to include their identities.

15.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332.

16.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

13751232 _1

## FACTS

17.     Doug Borror, Steiner, Garske, Borror Sugarman, the John Doe Defendants, Borror Construction (collectively "Defendants"), and other principals, employees and/or representatives of Defendants and/or affiliates of the Defendants, represented that Borror Construction had vast experience renovating multifamily communities and, particularly, individual apartment units and, specifically, providing third-party construction management services, including, but not limited to, providing proper scope of work, bidding, accounting, scheduling, sourcing of materials, identifying qualified vendors, development of renovation designs and or plans, and organizing and working with labor, materials, equipment, and the services necessary (the "Borror Representations").

18.     Based on the Borror Representations, on or about June 25, 2018, Plaintiff Oro Capital, acting as agent for the Property-Owning Plaintiffs (excepting, at the time, Oro Island Club), and  Borror Construction, entered into a written contract titled "Standard Agreement and General Conditions Between Owner and Construction Manager [with the subtitle] "(Where the Basis of the Payment is the Cost of the Work)" ("Original Borror Construction Agreement").

19.     On or about June 25, 2018 Oro Capital, on behalf of the Property-Owning Plaintiffs, and Borror Construction entered into "Addendum No. 1 to Standard Agreement and General Conditions Between Owner and Construction Manager"

13751232 _1

("Addendum to the Borror Construction Agreement"), (together the Original Borror Construction Agreement and the Addendum to the Borror Construction Agreement shall be referred to herein as the "Borror Construction Agreement").

20.     Section 11.3 of the Borror Construction Agreement is a provision that provides a non-binding project neutral dispute structure in which a project neutral was to be appointed by the parties when the Borror Construction Agreement commenced, at or around the commencement of the work on the Renovations (as defined below). The parties were to determine the scope of the project neutral and the project neutral was to have regular visits to the site so that, in the event a dispute arose during the Renovations, which could not be resolved through direct discussion, the project neutral could issue a non-binding decision as to how the dispute should be resolved. This was never done by the parties, and neither party requested the project neutral process at the beginning of, or during the Renovations (as defined below).

21.     The non-binding project neutral process is set forth, in part, in Section 11.3 of the Borror Construction Agreement, and it states:

> The [Project Neutral] shall be mutually selected and appointed by the Parties and shall execute a retainer agreement with the Parties establishing the scope of the [Project Neutral's] responsibilities. The costs and expenses of the [Project Neutral] shall be shared equally by the Parties. The [Project Neutral] shall be available to either Party, upon request, **throughout the course of the Project, and shall make regular visits to the Project so as to maintain an up-to-date understanding of the Project progress and issues and to enable the [Project Neutral] to address matters in dispute between the Parties promptly and knowledgeably. (emphasis added)**

13751232 _1

22.     By failing to initiate the provisions of the project neutral process when applicable and timely, all parties waived this provision. The dispute resolution provisions of the Borror Construction Agreement, including but not limited to the non-binding project neutral process, are discussed in more detail below.

23.     After Oro Island Club purchased the Island Club Property (hereinafter defined) it was the intent and agreement of the parties that the Renovations under the Borror Construction Agreement would include the Island Club Property and that the terms of the Borror Construction Agreement would govern.

24.     Pursuant to the Borror Construction Agreement, Borror Construction agreed, among other things, to fulfill the Borror Representations and provide all construction management services, along with all labor, materials, equipment, and services necessary (i.e., providing proper scope of work, bidding, accounting, scheduling, and organizing and working with labor, materials, equipment, and the services necessary) to construct certain improvements, including, but not limited to, the remodeling of residential apartment units and common interest areas (the "Renovations") on the real properties located at 5850 Shannon Place, Dublin, OH 43016—Franklin County Tax Parcel Nos. 590-185197 and 560-185195 ("Karric South Property"), 3970 Brelsford Lane, Dublin, OH 43016—Franklin County Tax Parcel No. 590-202396 ("Karric North Property"), 5350 Silverthorne Road, Columbus, OH 43081—Franklin County Tax Parcel No. 600-204075-00 ("Silvertree Property"), 300 Springboro

Lane, Columbus, OH 43235—Franklin County Tax Parcel Nos. 610-200940, 610-204547, and 610-204548 ("Springburne Property"), 1480 Runaway Bay Drive, Columbus, OH 43204—Franklin County Tax Parcel Nos. 010-105155-00, 010-138775-00, 010-193917-00, and 010-193918-00 ("Runaway Bay Property"), and 2225 Montego Boulevard, Columbus, OH 43235—Franklin County Tax Parcel No. 590-199993 ("Island Club Property"), (collectively, the "Properties").

25.    A true and accurate copy of the Borror Construction Agreement is attached hereto and incorporated herein as **Exhibit 1**.

26.    Oro Karric South is the fee simple owner of the Karric South Property by virtue of a Limited Warranty Deed dated June 19, 2018 and recorded with the Franklin County Recorder's Office on June 21, 2018 as Instrument No. 201806210082480.  A true and accurate copy of said deed is attached hereto and incorporated herein as **Exhibit 2**.

27.    Oro Karric South acquired the Karric South Property from an affiliate of one or more of the Defendants and/or their principals.

28.    Oro Karric North is the fee simple owner of the Karric North Property by virtue of a Limited Warranty Deed dated June 19, 2018 and recorded with the Franklin County Recorder's Office on June 21, 2018 as Instrument No. 201806210082479.  A true and accurate copy of said deed is attached hereto and incorporated herein as **Exhibit 3**.

29.    Oro Karric North acquired the Karric North Property from an affiliate of one or more of the Defendants and/or their principals.

30.     Oro Silvertree is the fee simple owner of the Silvertree Property by virtue of a Limited Warranty Deed dated June 19, 2018 and recorded with the Franklin County Recorder's Office on June 21, 2018 as Instrument No. 201806210082482.  A true and accurate copy of said deed is attached hereto and incorporated herein as **Exhibit 4**.

31.     Oro Silvertree acquired the Silvertree Property from an affiliate of one or more of the Defendants and/or their principals.

32.     Oro Springburne is the fee simple owner of the Springburne Property by virtue of a Limited Warranty Deed dated June 19, 2018 and recorded with the Franklin County Recorder's Office on June 21, 2018 as Instrument No. 201806210082481.  A true and accurate copy of said deed is attached hereto and incorporated herein as **Exhibit 5**.

33.     Oro Springburne acquired the Springburne Property from an affiliate of one or more of the Defendants and/or their principals.

34.     Oro Runaway Bay is the fee simple owner of the Runaway Bay Property by virtue of a Limited Warranty Deed dated December 19, 2017 and recorded with the Franklin County Recorder's Office on January 3, 2018 as Instrument No. 201801030001120, and a Limited Warranty Deed dated December 19, 2017 and recorded with the Franklin County Recorder's Office on January 3, 2018 as Instrument No. 201801030001121.  True and accurate copies of said deeds are attached hereto and incorporated herein as **Exhibit 6**.

13751232 _1

35.     Oro Island Club is the fee simple owner of the Island Club Property by virtue of a Limited Warranty Deed dated May 23, 2019 and recorded with the Franklin County Recorder's Office on May 24, 2019 as Instrument No. 201905240061346.  A true and accurate copy of said deed is attached hereto and incorporated herein as **Exhibit 7**.

36.     To perform the Renovations under the Borror Construction Agreement, Borror Construction purportedly entered into agreements with laborers, material suppliers, equipment suppliers, and other construction vendors who supplied one or more of the above to perform the Renovations (the "Borror Vendors").

37.     Borror Construction and/or the Borror Vendors started performing Renovations at one or more of the Properties on or about June 25, 2018.

38.     Between June 25, 2018 and July 19, 2019, Borror Construction and/or the Borror Vendors performed portions of the Renovations at the Properties, but never completed the Renovations and abandoned many projects within the scope of the Renovations mid-project.

39.     From almost the very beginning of the Renovations, Borror Construction failed to properly fulfill its obligations with respect to the Borror Representations and the Borror Construction Agreement ("Borror Failures").

40.     On numerous occasions, Oro Capital, on behalf of the Property-Owning Plaintiffs, met with and had telephone calls and other communications with one or

more of the Defendants to discuss the Borror Failures and the damages being incurred by the Property-Owning Plaintiffs due to the Borror Failures.

41.     Plaintiffs, on many occasions, made it clear to Defendants that the Borror Failures were damaging the Property-Owning Plaintiffs.

42.     Defendants made excuses as to why the Borror Failures occurred and made further representations to Plaintiffs as to how the Borror Failures would be corrected.

43.     In or around mid-July of 2019, Oro Capital, on behalf of the Property-Owning Plaintiffs, first realized that Defendants had little, if any, knowledge or experience with respect to the Renovations.

44.     In breach of the Borror Construction Agreement, and in an attempt to make an improper profit without any concern regarding the damages that the Property-Owning Plaintiffs were incurring, one or more of the Defendants hired unqualified employees to work on the Renovations, failed to get approval of such employees from Plaintiffs, and failed to apply for and receive proper permits and/or inspections for the Renovations.   In addition, Renovations were being left uncompleted or in subpar condition with knowledge of one or more of the Defendants.

45.     Upon information and belief, one or more of the Defendants hired the unqualified employees and delayed the Renovations so that one or more of the

Defendants could inflate charges to the Plaintiffs and make an improper profit without any concern regarding the damages that the Property-Owning Plaintiffs were incurring.

46.     The Borror Failures and breaches of the Borror Construction Agreement caused unacceptable delays, defective work, and other additional expenses to the Plaintiffs.

47.     Defendants, Doug Borror, Steiner, Garske, Borror Sugarman, Borror Construction, and/or the John Doe Defendants continued to make false statements and false representations including, but not limited to, the Borror Representations to conceal the previous actions and inaction of the Defendants and to continue inflating charges to make an improper profit without any concern regarding the damages that the Property-Owning Plaintiffs were incurring.  Doug Borror, Steiner, Garske, Borror Sugarman, Borror Construction, and/or the John Doe Defendants continued to intentionally misrepresent Borror Construction's experience renovating multifamily communities and, particularly, individual apartment units and, specifically, providing third-party construction management services, including, but not limited to, providing proper scope of work, bidding, accounting, scheduling, sourcing of materials, identifying qualified vendors, development of renovation designs and or plans, and organizing and working with labor, materials, equipment, and the services necessary.

48.     On or about July 19, 2019, without having completed the Renovations that Borror Construction agreed to complete under the Borror Construction Agreement,

Borror Construction, at the direction of one or more of the Defendants, unilaterally, and without justification, ceased any and all performance of the Renovations and ordered the Borror Vendors to cease all work on the Renovations. This included certain aspects of the Renovations that were in mid-project. Defendants took this action with knowledge that this would cause further damages to the Property-Owning Plaintiffs.

49. One or more Defendants refused to complete, and instructed the Borror Vendors not to complete, the Renovations, including the aspects of the Renovations that were in mid-project. Defendants took this action with knowledge that this would cause further damages to the Property-Owning Plaintiffs.

50. Just prior to unilaterally terminating the Borror Construction Agreement, on or about July 19, 2019, Borror Construction notified Oro Capital that Borror Construction no longer wished to perform the remaining work necessary to complete the Renovations, but informed, and yet again represented to Plaintiffs, that Borror Construction and the Borror Vendors would still be completing the aspects of the Renovations that were in mid-project but did not want to take on any additional aspects of the Renovations under the Borror Construction Agreement.

51. Subsequently, on or about July 23, 2019, Garske and/or other Defendants further represented to Plaintiffs, in a plan that was unilaterally proposed by Garske and/or other Defendants, that Borror Construction and the Borror Vendors would complete a portion of the Renovations that were in mid-project by August 2, 2019. This

13751232 _1

was a false statement/representation, made to delay Plaintiffs from rightfully terminating the Borror Construction Agreement for cause.

52. On July 25, 2019, and subsequently thereafter, Plaintiffs communicated to Steiner their concerns regarding the unilateral plan developed by Garske on behalf of Borror Construction and the Borror Vendors. On the same day, Borror Construction declined, through Steiner, to participate in a scheduled call to discuss outstanding matters related to the Borror Construction Agreement and otherwise.

53. On August 1, 2019, when the plan unilaterally proposed by Garske was determined to be yet another failure and false representation, one or more of the Defendants, through Garske, notified Plaintiffs, that Borror Construction had unilaterally decided not to continue with the unfinished Renovations. Instead, Defendants abruptly stopped all work on the Renovations, instructed the Borror Vendors to cease all efforts on the Renovations, and abandoned the Renovations; including the ones in mid-project. This caused further delays and damages to the Plaintiffs. Defendants took this action with knowledge that this would cause further damages to the Property-Owning Plaintiffs.

54. As described above, disputes were present almost from the commencement of the Borror Construction Agreement, including but not limited to, matters that would have been appropriately addressed by a project neutral.

55.     Despite having the right and the opportunity to do so, neither party timely enacted the project neutral provision.  The project neutral process has been waived, and/or Defendants' breach relieves Plaintiffs of the obligation to engage a project neutral, and/or it would be ineffective because Defendants breached the Borror Construction Agreement by unilaterally ceasing all Renovations (including those in mid-project) at the Properties; there is simply no project for which a project neutral could comment on.

56.     As a result of the Borror Failures, the defective portions of the Renovations, and/or their failure to timely complete the Renovations by the dates promised and represented, the vacancy rates at each of the Properties increased, resulting in loss rental revenues for each of the Property-Owning Plaintiffs, and harm to the Plaintiffs' reputations both within the Columbus community as well as with vendors and lenders.

57.     Additionally, as a result of these actions and inactions by Defendants, the Property-Owning Plaintiffs were required to, among other things, delay the leasing of certain units, spend additional funds to make classic units rent ready without upgrades, lease units at lower rental rates, provide additional concessions, and move existing tenants and/or provide alternative housing arrangements for existing tenants of some units, all at the expense of and to the detriment of the Property-Owning Plaintiffs.

58. The Property-Owning Plaintiffs have also had to and will have to incur additional costs to complete those portions of the Renovations that Borror Construction and/or the Borror Vendors failed to complete (the "Unfinished Renovations").

59. In addition to failing to timely complete the Renovations, portions of the Renovations managed and/or performed by Borror Construction and/or the Borror Vendors contain defects (the "Defective Renovations").

60. Borror Construction also failed to obtain the necessary and required governmental permits, inspections, and/or approvals for portions of the Renovations, which have also caused Plaintiffs to incur damages ("Permit Failures").

61. The Unfinished Renovations, Defective Renovations, and/or the Permit Failures, have resulted in undue and unreasonable delays, which have caused Plaintiffs to incur damages. Defendants had knowledge that this would cause further damages to the Property-Owning Plaintiffs.

62. Plaintiffs have notified Defendants and/or the Borror Vendors of the Unfinished Renovations, Defective Renovations, and the Permit Failures, but neither Borror Construction nor the Borror Vendors have cured or attempted to cure any of the Unfinished Renovations, Defective Renovations, or Permit Failures.

63. Borror Construction, as required by the Borror Construction Agreement, did not inspect or test portions of the Renovations it and/or the Borror Vendors performed on the Properties.

13751232 _1

64.     Plaintiffs have incurred and will incur costs to perform the inspections and tests that Borror Construction and/or the Borror Vendors failed to perform.

65.     Borror Construction did not pay certain of the Borror Vendors for those portions of the Renovations that certain Borror Vendors claim to have performed.

66.     Multiple Borror Vendors claim to have provided services, materials, and/or equipment in furtherance of the Renovations on the Properties for which they claim that Borror Construction has not paid them.

67.     Records provided by HD Supply, Inc. ("HD Supply"), a Borror Vendor, indicate that Borror Construction, in breach of the Borror Construction Agreement and in direct conflict with the Borror Representations, ordered, caused to be ordered, and or failed to monitor the ordering of a quantity of products to be utilized on the upgrade of unit interiors in excess of the required amount to complete such Renovations.

68.     As a result of Borror Construction's failure to pay certain Borror Vendors for the Renovations they claim to have performed and/or to properly reject such Renovations, some of the Borror Vendors have filed or threatened to file mechanics' liens on one or more of the Properties.

69.     On July 31, 2019, RM Companies, LLC ("RM Companies"), a Borror Vendor, filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office, Instrument No. 201907310095094, claiming that it was due payment of

$151,598.84 ("Lien Amount") for the portions of the Renovations it claims to have performed on one or more of the Properties.

70.     A true and accurate copy of the Affidavit for Mechanics' lien filed by RM Companies, LLC is attached hereto and incorporated herein as **Exhibit 8**.

71.     In exchange for a signed release of the Affidavit for Mechanics' Lien filed by RM Companies, and without waiving any rights or claims against Defendants, Plaintiffs paid to RM Companies the amount of $9,856.46.

72.     Although the lien amount was $151,598.84, much of that work was never completed and/or the Defendants did not properly reconcile the amounts claimed to be owed to RM Companies.  Upon information and belief, one or more of the Defendants encouraged RM Companies to file this defective mechanics' lien, with knowledge of the defective nature of the claim and in attempt to cause more damage to the Property-Owning Plaintiffs.

73.     On August 22, 2019, a release of the Affidavit for Mechanics' Lien was filed by RM Companies, and Plaintiffs incurred attorney's fees and costs in obtaining and filing said release.

74.     On September 19, 2019, GBK Flooring, Ltd. ("GBK Flooring"), a Borror Vendor, filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office, Instrument No. 201909190122638, claiming that it was due payment of $24,637.88

13751232 _1

for portions of the Renovations it claims to have performed on the Runaway Bay Property.

75. A true and accurate copy of the Affidavit for Mechanics' lien filed by GBK Flooring is attached hereto and incorporated herein as **Exhibit 9**.

76. On or about November 6, 2019, in exchange for a signed release of the Affidavit for Mechanics' Lien filed by GBK Flooring, and without waiving any rights or claims against Defendants, Plaintiffs paid to GBK Flooring the amount of $22,737.85.

77. Although the lien amount was $24,637.88, much of that work was never completed and/or the Defendants did not properly reconcile the amounts claimed to be owed to GBK Flooring. Upon information and belief, this was done with knowledge and in attempt to cause more damage to the Property-Owning Plaintiffs.

78. On November 13, 2019, Plaintiffs' counsel filed a release of the Affidavit for Mechanics' Lien filed by GBK Flooring, and Plaintiffs incurred attorney's fees and costs in obtaining and filing said release.

79. On multiple occasions prior to September 20, 2019, The Carter-Jones Lumber Co. dba Holmes Lumber Company ("Holmes Lumber"), a Borror Vendor, represented to Plaintiffs that it intended to file an affidavit for mechanics' lien on the Properties upon which Holmes Lumber claimed to have performed some of the Renovations.

80.     On or about September 20, 2019, to mitigate damages as much as possible, and to avoid the slander of title to the Properties, Holmes Lumber, Borror Construction, Borror Properties Management, LLC, and Oro Runaway Bay entered into a written contract titled "Escrow Agreement" whereby Oro Runaway Bay agreed to place into escrow the total sum of $92,099.83—the amount Holmes Lumber claimed it was due for those portions of the Renovations it claims it performed.

81.     A true and accurate copy of the Escrow Agreement is attached hereto and incorporated herein as **Exhibit 10**.

82.     Without waiving any rights or claims against Defendants, Oro Runaway Bay has placed $92,099.83 into escrow pursuant to the Escrow Agreement. Plaintiffs incurred attorney's fees and costs in negotiating and obtaining the Escrow Agreement and caused funds to be restrained.

83.     On October 1, 2019, Skyworks, LLC, a Borror Vendor, filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office, Instrument No. 201910010129117, claiming that it was due payment of $15,338.12 for the portions of the Renovations it claims to have performed on the Runaway Bay Property.

84.     A true and accurate copy of the Affidavit for Mechanics' lien filed by Skyworks, LLC is attached hereto and incorporated herein as **Exhibit 11**.

85.     On October 4, 2019, Reliable Staffing Resources, LLC, a Borror Vendor, filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office,

13751232 _1

Instrument No. 201910040132218, claiming that it was due payment of $19,764.88 for the portions of the Renovations it claims to have performed on the Runaway Bay Property.

86.     A true and accurate copy of the Affidavit for Mechanics' lien filed by Reliable Staffing Resources, LLC is attached hereto and incorporated herein as **Exhibit 12**.

87.     On September 30, 2019, Borror Construction filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office, Instrument No. 201909300128266, claiming that it was due payment of $790,847.00 for the portions of the Renovations it claims to have performed and/or that the Borror Vendors performed on the Runaway Bay Property (the "Borror Construction Lien").

88.     A true and accurate copy of the Affidavit for Mechanics' Lien filed by Borror Construction is attached hereto and incorporated herein as **Exhibit 13**.

89.     Plaintiffs have incurred costs and attorney fees in dealing with and responding to Borror Construction and/or Borror Vendors that have filed for mechanics' liens and/or threatened to file for mechanics' liens, including, but not limited to, Borror Construction and/or those Borror Vendors identified above.

90.     Section 3.3.4 of the Construction Management Agreement states as follows:

> "COST REPORTING  The Construction Manager [Defendant Borror] shall keep such full and detailed accounts as are necessary for proper financial management under this Agreement.  Construction Manager shall maintain a complete set of all books and records prepared or used by the

13751232 _1

Construction Manager with respect to the Project.  The Construction Manager's records supporting its performance and billings under this Agreement shall be current, complete and accurate and maintained according to Generally accepted Accounting Principles.  The Owner [Plaintiff Oro Capital and the Property-Owning Entities] shall be afforded reasonable access during normal business hours to all the Construction Manager's records, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to this Agreement.  The Construction Manager shall preserve all such records for a period of three years after the final payment or longer where required by law."

91.    After Plaintiffs received Borror Construction's first payment application, and on multiple occasions and times thereafter, Plaintiffs requested that Borror Construction provide copies of and/or access to all books and records and other documents, correspondence, and information of the type described in Section 3.3.4. of the Borror Construction Agreement (the "Books and Records").

92.    On or about August 14, 2019 and on multiple occasions and times subsequent thereto, Plaintiffs, by and through their undersigned counsel, demanded in writing to Borror Construction and/or Borror Construction's counsel that Borror Construction provide reasonable access to and/or copies of the Books and Records.

93.    A true and accurate copy some of the written requests from Plaintiffs' counsel to Borror Construction's counsel are attached hereto and incorporated herein as **Exhibit 14**.

94.    While Borror Construction did provide some of the Books and Records, it refused and/or failed to produce all of the Books and Records.

95.     As a result of Defendants' failure and/or refusal to turn over the Books and Records, it has been unacceptably difficult and impractical, if not impossible, for Plaintiffs to complete a proper forensic accounting in the effort to determine what the Borror Vendors may be owed, if anything, for authorized Renovations that have been properly completed and inspected.

96.     Among other things, one or more of the Defendants have refused to provide Plaintiffs with access to the electronic records that Borror Construction maintains, without limitation, in a ProCore construction management software program that Borror Construction has used to manage and perform the Renovations and any related systems (i.e., dropbox, docusign, etc.), as well as proof of payments (i.e., canceled checks, wire confirmation, etc.), complete and full correspondence with prospective and actual Borror Vendors, all bids, letter of authorizations, change orders, authorizations, invoices, draft and final payment applications, all Borror Vendor documents, including but not limited to, insurance certificates and correspondence, permits, documentation confirming Borror Construction's and Borror Vendor's acceptance of Renovations performed, authorization of work to be and actually performed, governmental inspections, and sign-offs.  *See* Email exchange between Plaintiffs' counsel and Borror Construction's counsel attached hereto and incorporated herein as **Exhibit 15**.

97.     Plaintiffs have never had and currently do not have access to Borror Construction's ProCore software program other than access limited solely to viewing pictures.

98.     Although Plaintiffs have been able to determine some of the damages they have suffered as a result of Defendants' failure to fulfill the Borror Representations, the Borror Failures, the many breaches under the Borror Construction Agreement, and/or improper termination of the Borror Construction Agreement and the tortious acts related thereto, Plaintiffs have not yet been able to determine fully all of the damages they have suffered.

99.     As a result of the lack of disclosure and proper record keeping on behalf of Borror Construction, even if the parties had not already waived the project neutral process, it would be futile for Plaintiffs and Borror Construction to participate in the project neutral process set forth in the Borror Construction Agreement.

100.    Nevertheless, Plaintiffs have made good-faith efforts to participate in the dispute resolution procedure and project neutral process set forth in the Borror Construction Agreement.

101.    Plaintiffs and Borror Construction have completed the dispute resolution procedure set forth in Section 11.2 of the Borror Construction Agreement, which provides for discussions directly between Borror Construction and Plaintiffs.

13751232 _1

102. The Borror Construction Agreement provides that the next step in the dispute resolution procedure is to take any unresolved dispute to the project neutral. This is no longer required and/or practicable for the reasons described herein.

103. Despite the fact that Borror Construction had waived the project neutral process, and/or that the project neutral is no longer practicable, on September 24, 2019, Plaintiffs, acting by and through their counsel, notified Borror Management that Plaintiffs were ready, willing, and able to proceed with using a project neutral to resolve existing disputes between Plaintiffs and Borror Construction and identified five potential project neutrals.

104. A true and accurate copy of the notice is attached hereto and incorporated herein as **Exhibit 16**.

105. Plaintiffs also stated in the written notice to Borror Construction that if Borror Construction did not respond within six days, or by 5:00 p.m. on September 30, 2019, Plaintiffs would consider Borror Construction's failure to respond as a refusal to participate in the project neutral process and a waiver of its right to demand the project neutral process prior to litigation.

106. Borror Construction did not respond by 5:00 p.m. on September 30, 2019.

107. Borror Construction's bad-faith refusal to cooperate under and participate in the project neutral process constitutes an additional waiver of the project neutral

process, and Plaintiffs are entitled to proceed directly to litigation, as set forth in Section 11.5 of the Borror Construction Agreement.

108.    On October 7, 2019, Borror Construction eventually responded to the September 24, 2019 correspondence, stating it would agree to use a certain identified individual as a mediator, but Borror Construction failed to clearly indicate whether that related to the Borror Construction Agreement, or other disputes between other companies affiliated with Borror Construction and other non-parties to this case.

109.    A true and accurate copy of the October 7, 2019 correspondence is attached hereto and incorporated herein as **Exhibit 17**.

110.    On October 8, 2019, Plaintiffs, acting by and through their counsel, asked Borror Construction to clarify in writing whether it was agreeing to the project neutral process under the Borror Construction Agreement.

111.    A true and accurate copy of the October 8, 2019 correspondence is attached hereto and incorporated herein as **Exhibit 18**.

112.    At least two weeks passed without any response from Borror Construction.

113.    Then, on October 24, 2019, Borror Construction indicated that it could not use the person it previously agreed to use as a mediator and/or project neutral because of a "conflict" without any explanation as to the alleged "conflict."

13751232 _1

114. In that same October 24, 2019 correspondence, despite refusing to explain why none of the other four proposed project neutrals would suffice, Borror Construction proposed three alternative project neutrals, all of which either lacked construction-related experience, or had ties to Borror Construction's counsel's former law firm.

115. A true and accurate copy of the October 24, 2019 correspondence is attached hereto and incorporated herein as **Exhibit 19**.

116. On October 28, 2019, Plaintiffs responded to Borror Construction by explaining that the proposed project neutrals identified by Borror Construction either lacked construction experience or had conflicts due to their relationship with Borror Construction's counsel's former law firm. In a further attempt to identify a project neutral, Plaintiffs identified three additional persons that could serve as project neutral.

117. A true and accurate copy of the October 28, 2019 correspondence is attached hereto and incorporated herein as **Exhibit 20**.

118. In response, on November 8, 2019, Borror Construction refused to accept any of the three alternative proposed project neutrals, without explanation, and Borror Construction agreed that the parties had reached impasse with respect to identifying a project neutral.

119. A true and accurate copy of the November 8, 2019 correspondence is attached hereto and incorporated herein as **Exhibit 21**.

120. Plaintiffs then issued additional correspondence on November 8, 2019, again reiterating that despite the fact that Borror Construction waived the project neutral process, Plaintiffs were willing to go to the Court to have a project neutral appointed.

121. A true and accurate copy of the November 8, 2019 correspondence from Plaintiffs' counsel is attached hereto and incorporated herein as **Exhibit 22**.

122. It has been almost two weeks since Plaintiffs issued the latest correspondence regarding the project neutral process, and yet, Defendants have failed to respond in any manner.

123. Borror Construction's refusal to cooperate, delay in responding, and refusal to agree upon a project neutral constitute additional waivers of the pre-litigation dispute resolution process, and also entitle Plaintiffs to proceed directly with litigation.

## COUNT ONE
**(Breach of Contract)**

124. Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

125. Plaintiffs have performed their obligations under the Borror Construction Agreement, including the prelitigation dispute resolution process and/or Borror Construction has waived them.

126. Borror Construction has breached its obligations under the Borror Construction Agreement, by, among other things:

a.  Failing to furnish construction administration and management services and use diligent efforts to perform the Renovations in a timely and expeditious manner consistent with the Borror Construction Agreement;

b.  Failing to complete the Renovations in a workmanlike manner;

c.  Failing to perform its contractual obligations with integrity, including, but not limited to, failing to disclose conflicts of interest;

d.  Failing to provide all labor, materials, equipment, and services necessary to complete the Renovations;

e.  Failing to supervise and coordinate the Renovations, including, but not limited to, the means, methods, techniques, sequences and procedures utilized to perform the Renovations, and failing to timely report to Plaintiffs errors, inconsistencies, omissions, and/or unsafe practices that Borror Construction discovered or should have discovered;

f.  Failing to perform Renovations within the scope of the Borror Construction Agreement and/or obtaining applicable permits and following all applicable law;

g.  Failing to establish temporary facilities for Borror Construction's use and for the use of the Borror Vendors;

h.  Failing and/or refusing to turn over and/or provide access to all of the Books and Records;

i.      Failing to keep books and records supporting its performance and billings of the Renovations under the Borror Construction Agreement in current, complete, and accurate condition and failing to keep such books and records in accordance with Generally Accepted Accounting Principles;

j.      Failing to use reasonable skill and judgment in the preparation of cost estimates;

k.      Failing to provide competent supervision of the performance of the Renovations;

l.      Allowing unqualified and/or inexperienced persons to perform the Renovations;

m.      Failing to examine, inspect, test, handle, store, and/or install materials and/or equipment provided by Borror Construction and/or the Borror Vendors;

n.      Failing to give Plaintiffs notice of and/or failing to test, approve, and inspect the Renovations in a timely and appropriate manner and failing to obtain and produce to Plaintiffs certificates of testing, approval, and/or inspection;

o.      Failing to obtain manufacturer's warranties from the Borror Vendors and failing to assign them to Plaintiffs;

13751232 _1

      p.     Failing to pay Borror Vendors for work performed on the Renovations;

      q.     Failing to obtain lien waivers from the Borror Vendors;

      r.     Allowing Borror Vendors to perform work that was unauthorized and/or outside the scope of the Renovations as set forth in the Borror Construction Agreement; and

      s.     Failing to ensure the premises surrounding the Renovations is kept in a clean and debris free state;

      t.     Failing to safeguard materials stored in order for completion of the Renovations;

      u.     Failing to initially provide for necessary government approvals required for portions of the Renovations; and

      v.     Failing to accurately communicate updates regarding the Renovations to Plaintiffs.

      w.     Allowing Borror Vendors to file mechanics' liens against one or more of the Properties.

127.    As a result of Borror Construction's breaches of the Borror Construction Agreement, Plaintiffs have suffered damages in an amount exceeding $75,000.

128.    Plaintiffs are entitled to damages in excess of $75,000, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

13751232 _1

129.     As a result of Borror Construction's failure to provide copies of and/or access to all of its Books and Records to Plaintiffs, Plaintiffs are also entitled to an order of specific performance from this Court ordering Borror Construction to specifically perform its obligation to provide Plaintiffs with copies of and/or access to all of the Books and Records.

## COUNT TWO
### (Breach of Express Warranties)

130.     Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

131.     The Borror Construction Agreement contains an express warranty from Borror Construction to Plaintiffs whereby it states that "all materials and equipment furnished under the Construction Phase of this Agreement will be new unless otherwise specified, of good quality, in conformance with the Contract Documents, and free from defective workmanship and materials."

132.     Some of the materials and equipment furnished under the Borror Construction Agreement was not of good quality, in conformance with the Contract Documents, and/or was not free from defects or defective workmanship.

133.     The Borror Construction Agreement also provides an express warranty that Borror Construction will, for a period of one year, promptly correct any Defective Work for which Plaintiffs provide notice.

13751232 _1

134. Plaintiffs have provided Borror Construction with notice of the Defective Renovations, and yet, to date, Borror Construction has failed and/or refused to correct or repair such Defective Renovations in violation of the Borror Construction Agreement.

135. As a direct and proximate result of Borror Construction's breaches of the express warranties set forth in the Borror Construction Agreement, Plaintiffs have incurred and will incur costs to perform the warranty work and to correct and/or repair the Defective Renovations.

136. As a direct and proximate result of Borror Construction's breaches of the express warranties set forth in the Borror Construction Agreement, Plaintiffs have suffered damages in an amount exceeding $75,000, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

### COUNT THREE
**(Promissory Estoppel)**

137. Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

138. Defendants made promises and/or representations, including but not limited to the Borror Representations, to Plaintiffs that Borror Construction would complete the Renovations within specific deadlines.

139. Plaintiffs reasonably relied on said promises, and Defendants knew or should have reasonably known that Plaintiffs would rely on such promises.

140.    In reasonable reliance upon such promises, Plaintiffs changed position, to their detriment, relating to the marketing of and lease rates for residential apartment units on the Properties, including the expenditure of substantial monies in furtherance of the same.

141.    In reasonable reliance upon such promises, Plaintiffs also delayed the termination of Borror Construction under the Borror Construction Agreement and the hiring of a replacement contractor to complete the Unfinished Renovations and to cure the Defective Renovations.

142.    As a direct and proximate result of Plaintiffs detrimental reliance upon the promises of Borror Construction, Plaintiffs have suffered damages in excess of $75,000, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

## COUNT FOUR
### (Breach of Fiduciary Duties)

143.    Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

144.    As the construction manager under the Borror Construction Agreement, Borror Construction had a fiduciary relationship with Plaintiffs.

145.    The Borror Construction Agreement provides a basis for the fiduciary relationship, stating: "RELATIONSHIP OF PARTIES The Owner [Plaintiffs] agree to proceed with the Project on the basis of mutual trust, good faith, and fair dealing."

13751232 _1

146. The fiduciary duties owed by Borror Construction to Plaintiffs include a duty of loyalty, duty to act in good faith, duty to disclose errors and conflicts, and a duty to exercise reasonable care and skill in contracting with Borror Vendors to perform the Renovations.

147. Borror Construction breached the fiduciary duties it owed to Plaintiffs by, among other things:

      a. Failing to disclose conflicts of interest in contracting with certain Borror Vendors;

      b. Failing to accept, disclose, and/or pass through discounts for the work on the Renovations offered by Borror Vendors;

      c. Failing to minimize the costs of the Renovations;

      d. Failing to properly staff the Renovations with qualified individuals;

      e. Failing to properly order material necessary to complete the Renovations to ensure no waste or excess charges;

      f. Failing to supervise the completion of the Renovations and to ensure its conforming nature;

      g. Failing to complete the Renovations in an efficient and timely manner;

      h. Failing to properly track and document the expenses associated with the Renovations;

148. Borror Construction's breach of the fiduciary duties owed to Plaintiffs has directly and proximately caused damages to Plaintiffs in an amount exceeding $75,000, punitive damages in an amount to be proven at trial, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

## COUNT FIVE
### (Conversion)

149. Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

150. Borror Construction has wrongfully taken property (including money, materials, supplies, and/or equipment) to be used to pay for the performance of the Renovations on the Properties and/or made wrongful distributions and payments from money received from Plaintiffs to pay for work that was not authorized and/or was outside the scope of the Renovations.

151. Plaintiffs owned or had a right to the possession of said money, materials, supplies, and/or equipment at the time that Borror Construction converted it.

152. As a direct and proximate result of Borror Construction's conversion of Plaintiffs' property, Plaintiffs are entitled to damages in an amount exceeding $75,000, punitive damages in an amount to be proven at trial, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

13751232 _1

## COUNT SIX
### (Fraud against All Defendants as to the Borror Representations)

153.    Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

154.    Defendants represented that Borror Construction had vast experience renovating multifamily communities and, particularly, individual apartment units and, specifically, providing construction management services, including, but not limited to providing proper scope of work, bidding, accounting, scheduling, sourcing of materials, identifying qualified vendors, development of renovation designs and or plans, and organizing and working with labor, materials, equipment, and the services necessary (the "Borror Representations").

155.    Defendants, Doug Borror, Steiner, Garske, Borror Sugarman, Borror Construction, and/or the John Doe Defendants made the Borror Representations to Plaintiffs when in fact, at the time Defendants Doug Borror, Steiner, Garske, Borror Sugarman, Borror Construction, and/or the John Doe Defendants made the Borror Representations, they knew or reasonably should have known they were false and that they were intentionally misrepresenting Borror Construction's experience renovating multifamily communities and, particularly, individual apartment units and, specifically, providing third-party construction management services, including, but not limited to, providing proper scope of work, bidding, accounting, scheduling, sourcing of materials,

13751232 _1

identifying qualified vendors, development of renovation designs and or plans, and organizing and working with labor, materials, equipment, and the services necessary.

156.    All of the Borror Representations stated above are material to the Renovations under the Borror Construction Agreement.

157.    Defendants made all of the Borror Representations above with knowledge of their falsity or with such utter disregard and recklessness as to whether such statements were true or false that Defendants' knowledge of falsity must be inferred.

158.    Defendants made all of the Borror Representations above with the intent of misleading Plaintiffs.

159.    Plaintiffs justifiably relied upon all of the Borror Representations.

160.    As a direct and proximate result of Defendants' fraudulent representations, Plaintiffs have suffered damages in an amount exceeding $75,0000, punitive damages in an amount to be proven at trial, plus prejudgment and postjudgment interest together with their costs and reasonable attorney fees.

## COUNT SEVEN
### (Fraud against All Defendants)

161.    Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

162.    Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented to Plaintiffs that would complete certain portions, in good workmanlike condition, of the Renovations by specific deadlines when, in fact, at the time Borror

Construction made such representations it knew or reasonably should have known that it would not complete those portions of the Renovations within those deadlines.

163.     Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented to Plaintiffs that it would and was passing on any discounts it received from the Borror Vendors to Plaintiffs, when, in fact, at the time Borror Construction made such representations, it knew or reasonably should have known that it would not and was not passing on any discounts it received from the Borror Vendors to Plaintiffs, but instead was insisting that certain Borror Vendors charge higher than usual or non-discounted prices for the Renovations so that Borror Construction could in turn obtain a higher construction management fee under the Borror Construction Agreement due to such fee being structured as a percentage of the cost of the Renovations.

164.     Borror Construction, through Steiner and/or Garske, represented to Plaintiffs that it and/or the Borror Vendors performed, inspected, or completed certain portions of the Renovations, when in fact, Borror Construction knew or should have reasonably known that it and the Borror Vendors had not performed, inspected, or completed certain portions of the Renovations.

165.     Borror Construction, through Doug Borror, Steiner, Garske, and/or Borror Sugarman, represented to Plaintiffs that amounts billed by Borror Construction for labor costs were actual costs with no additional mark ups attached when in fact Defendants knew there was a mark-up on the labor costs. In fact, one or more of the

Defendants were using this as a profit center to the harm of the Property-Owning Plaintiffs.

166. Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented that its team members under the employ of Borror Construction were qualified to manage the completion of the Renovations although they knew or reasonably should have known that they lacked the required knowledge and experience to do so.

167. Borror Construction represented, through requests for payment (without proper backup), the costs Borror Construction was improperly charging for the Renovations associated with the unit upgrades, or otherwise, when in fact, Borror Construction knew or should have known that such charges were not in-line with agreed upon expenses between Borror Construction and Plaintiffs.

168. Borror Construction represented through invoices provided that charges incurred for the ordering of materials were necessary to complete the Renovations, when in fact, Borror Construction knew or should have known that such charges included the ordering of material in excess of what was required to complete the Renovations.

169. Borror Construction represented, through Steiner and/or Garske, that discussions were underway for correction or compensation for defective components of

13751232 _1

the Renovations, when in fact, no such discussions between Borror Construction and the Borror Vendors actually occurred.

170. All of the representations stated above are material to the Renovations under the Borror Construction Agreement.

171. Borror Construction, as well as one or more of the other Defendants, made all of the representations above with knowledge of their falsity or with such utter disregard and recklessness as to whether such statements were true or false that Borror Construction's knowledge, as well as the knowledge of one or more of the other Defendants, of falsity must be inferred.

172. Borror Construction, as well as one or more of the other Defendants, made all of the representations above with the intent of misleading Plaintiffs.

173. Plaintiffs justifiably relied upon all of Borror Construction's representations above.

174. As a direct and proximate result of Borror Construction's fraudulent representations, Plaintiffs have suffered damages in an amount exceeding $75,0000, punitive damages in an amount to be proven at trial, plus prejudgment and postjudgment interest together with their costs and reasonable attorney fees

## COUNT EIGHT
### (Negligent Construction)

175. Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

13751232 _1

176.    Borror Construction holds itself out as being in the business of and is in the business of constructing and remodeling, and managing the construction and remodeling of, residential apartment buildings and residential apartment units.

177.    Borror Construction and/or the Borror Vendors, owed Plaintiffs a duty to use reasonable care in managing and performing the Renovations on the Properties, including, but not limited to, any repair and/or warranty work.

178.    Borror Construction and/or the Borror Vendors breached the duty of care owed to Plaintiffs by, among other things, failing to timely complete the Renovations, including, but not limited to, the Unfinished Renovations, failing to complete all of the Renovations, including, but not limited to, the Defective Renovations, in a workmanlike manner, free from defect and in accordance with industry standards and the applicable codes and regulations, and failing to correct or repair the Defective Renovations and/or Permit Failures.

179.    Borror Construction's and/or the Borror Vendors' conduct in managing and/or performing the Renovations fell below the requisite standard of care in the construction industry.

180.    Borror Construction's negligence and/or the negligence of the Borror Vendors and their failure to adhere to the requisite standard in the construction industry directly and proximately caused Plaintiffs to suffer damages in an amount

exceeding $75,000, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

## COUNT NINE
### (Quiet Title)

181.  Plaintiffs restate the allegations set forth in the preceding paragraphs as if fully rewritten here.

182.  Plaintiff Oro Runaway Bay is the fee simple owner of the Runaway Bay Property.

183.  On September 30, 2019, Borror Construction filed an Affidavit for Mechanics' Lien with the Franklin County Recorder's Office, Instrument No. 201909300128266, claiming that it was due payment of $790,847.00 for the portions of the Renovations it claims to have performed on the Runaway Bay Property.

184.  The Borror Construction Lien creates a cloud upon Oro Runaway Bay's title to the Runaway Bay Property, negatively affecting the marketability of the Runaway Bay Property in an amount exceeding $790,847.00.

185.  The Borror Construction Lien was not properly or timely filed, and is void, invalid, unlawful, and unenforceable.

186.  Oro Runaway Bay is entitled to an order from this Court quieting title in and to the Runway Property to Oro Runaway Bay, declaring the Borror Construction Lien as void, invalid, unlawful, and unenforceable, and causing it to be released as of record from the Runaway Bay Property in the Franklin County, Ohio, Recorder's Office.

## COUNT TEN
### (Slander of Title)

187.     Plaintiffs restate the allegations set forth in the preceding paragraph as if fully rewritten here.

188.     The Borror Construction Lien constitutes the publication of a slanderous statement that disparages Oro Runaway Bay's title to the Runaway Bay Property.

189.     The statements set forth in the Borror Construction Lien, including, but not limited to, the statement that Borror Construction is owed $790,847.00 for work it claims to have performed on the Runaway Bay Property, are false.

190.     Borror Construction made the statements set forth in the Borror Construction Lien with malice and reckless disregard of their falsity.

191.     The statements made by Borror Construction in the Borror Construction Lien have caused actual and/or special damages to Oro Runaway Bay in excess of $75,000, punitive damages to be proven at trial, plus prejudgment and postjudgment interest, together with their costs and reasonable attorney fees.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.     As to Count One, judgment in favor of Plaintiffs and against the Defendant, Borror Construction, in an amount exceeding $75,000 to be proven at trial, plus prejudgment and postjudgment interest, costs, and reasonable attorney fees, and an order from this Court requiring Defendant Borror Construction to specifically perform its obligation under Section 3.3.4 of the Borror Construction Agreement by

13751232 _1

producing all of the Books and Records plus damages in an amount to be proven at trial for the costs and attorney fees incurred by Plaintiffs in bringing this action to compel Defendant Borror Construction to specifically perform (as set forth in Section 11.5.1 of the Borror Construction Agreement);

B.     As to Counts Two and Three, judgment in favor of Plaintiffs and against the Defendant, Borror Construction, in an amount exceeding $75,000 to be proven at trial, plus prejudgment and postjudgment interest, costs, and reasonable attorney fees;

C.     As to Counts Four and Five, judgment in favor of Plaintiffs and against the Defendant, Borror Construction, in an amount exceeding $75,000 to be proven at trial, plus punitive damages, prejudgment and postjudgment interest, costs, and reasonable attorney fees;

D.     As to Count Six and Seven, judgment in favor of Plaintiffs and against the Defendants, jointly and severally, in an amount exceeding $75,000 to be proven at trial, plus punitive damages, prejudgment and postjudgment interest, costs, and reasonable attorney fees;

E.     As to Count Eight, judgment in favor of Plaintiffs and against Borror Construction in an amount exceeding $75,000 to be proven at trial, plus prejudgment and postjudgment interest, costs, and reasonable attorney fees;

F.     As to Count Nine, an order of this Court declaring the Borror Construction Lien as void, invalid, unlawful, and unenforceable and quieting title in

13751232 _1

and to the Runaway Bay Property to Oro Runaway Bay, free and clear of the Borror Construction Lien or any claim Borror Construction may claim in or to the Runaway Bay Property plus Oro Runaway Bay's costs and reasonable attorney fees;

G.      As to Count Ten, judgment in favor of Plaintiff, Oro Runaway Bay and against Borror Construction, in an amount exceeding $75,000 to be proven at trial, plus punitive damages, prejudgment and postjudgment interest, costs, and reasonable attorney fees;

H.      An award of costs and attorney fees to Plaintiffs (as set forth in Section 11.5.1 of the Construction Management Agreement); and

I.      Any other relief which this Court deems appropriate under the law or in equity.

### **<u>JURY DEMAND</u>**

Plaintiffs respectfully demand a trial by jury on all counts of its Complaint.

Respectfully submitted,

/s/ Lucas K. Palmer
David M. Scott (0068110)
Lucas K. Palmer (0080838)
**BRENNAN, MANNA & DIAMOND, LLC**
250 S. Civic Center Dr., Ste. 300
Columbus, Ohio 43215
Telephone:    (614) 246-7500
E-mail:        dscott@bmdllc.com
               lkpalmer@bmdllc.com
*Attorneys for Plaintiffs*

4816-6349-2525, v. 1