IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ORO CAPITAL ADVISORS, LLC, et al.,** : | |
| : | Case No. 2:19-cv-05087 |
| **Plaintiffs,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| **BORROR CONSTRUCTION CO., LLC, et al.,** : | |
| : | |
| : | |
| **Defendants.** : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants Borror Construction Co., LLC, Douglas Borror, LoriBeth Steiner, Tom Garske, and Danielle Borror-Sugarman's Motion to Dismiss. Doc. 16. The Motion is fully briefed and is now ripe for review. For the reasons set forth below, the Court **GRANTS** Defendants' Motion [#16].

### II. BACKGROUND

Plaintiffs -- Oro Capital Advisors, LLC, Oro Karric South, LLC, Oro Karric North, LLC, Oro Silvertree, LLC, Oro Springburne, LLC, Oro RB SPE Owner, LLC, and Oro Island Club SPE Owner -- own and operate residential properties located throughout the Greater Columbus, Ohio Area. Doc. 1 at 8-9. On June 25, 2018, Plaintiff Oro Capital, acting as agent for all Plaintiffs, entered into a written contractual agreement with Defendants, whereby Defendants were to complete renovations on Plaintiffs' properties. *Id.* at 6.

Between June 25, 2018 and July 19, 2019, Defendants began renovations on the subject properties. *Id.* at 11. This work, however, was never completed. *Id.* Prior to terminating the

1

agreement, Defendants informed Plaintiffs that they would no longer complete the entire project but represented that they would at least finish the renovations they had already begun. *Id.* at 14. Subsequently, on July 23, 2019, Defendants told Plaintiffs that they would have the partially-started renovations completed by August 2, 2019. *Id.* Defendants would later recant on this statement and abandon all unfinished work. *Id.*

Plaintiffs have filed this civil suit against Defendants raising ten causes of action: (1) Breach of Contract **(Count One)**; (2) Breach of Express Warranties **(Count Two)**; (3) Promissory Estoppel **(Count Three)**; (4) Breach of Fiduciary Duties **(Count Four)**; (5) Conversion **(Count Five)**; (6) Fraud as to the Borror Representations **(Count Six)**; (7) Fraud **(Count Seven)**; (8) Negligent Construction **(Count Eight)**; (9) Quiet Title **(Count Nine)**; and (10) Slander of Title **(Count Ten)**. Defendants have moved to dismiss Counts Three through Eight.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## IV. ANALYSIS

Defendants have moved to dismiss Counts Three through Eight of Plaintiffs' Complaint. The Court will address each of Defendants' arguments, in turn, below.

### A. Whether Plaintiffs can Assert a Claim for Promissory Estoppel

In Count Three of the Complaint, Plaintiffs raise a claim for promissory estoppel stemming from Defendants' promises to complete renovations on the subject properties. Defendants move to dismiss this claim, arguing that a claim for promissory estoppel cannot be brought where the parties' dispute is governed by a valid contractual agreement.

The Sixth Circuit has made clear that "[p]romisory estoppel is not applicable where the parties' claims are governed by a valid contract." *Right-Now Recycling, Inc. v. Ford Motor Credit Co., LLC*, 644 F. App'x 554, 558 (6th Cir. 2016). Still, pursuant to Federal Rule of Civil Procedure 8(d), a plaintiff can plead breach-of-contract and promissory estoppel claims in the alternative where the validity and/or enforceability of the contract at issue is in dispute. *Lynch v. Sease*, 244 F. App'x 736, 739 (6th Cir. 2007).

Here, Defendants have conceded that the parties have a valid and enforceable contract governing the renovation project. *See* Doc. 24 at 7 ("There is no dispute, and Defendants readily admit, that there was a valid and enforceable contract between Borror Construction and Plaintiff Oro Capital Advisors, LLC ("Oro Capital"), *i.e.* the Construction Agreement that is attached as Exhibit 1 to Plaintiffs' Complaint. Nor is there any dispute that Plaintiff Oro Capital entered into the Construction Agreement 'as representative for the property owners with fully (sic) authority.'"). Defendants also acknowledge that their obligations under the contract are owed to all Plaintiffs in this case. *See id.* at 7 n.1. ("While Plaintiffs accuse Borror Construction of inconsistency in its position here and what Borror Construction has argued in state court in separate

3

litigation between Borror Construction and Plaintiff Oro RB SPE Owner, LLC ("Runaway Bay"), Plaintiffs are wrong.  There is no inconsistency between arguing (as Borror Construction has in state court) that Runaway Bay is not a signatory to the Construction Agreement and therefore lacks standing to enforce the alternative dispute resolution provisions of the Construction Agreement with the argument being asserted here -- that Borror Construction's obligations to all the Plaintiffs in this case arise out of and are governed by the Construction Agreement.").  Hence, Defendants are now judicially estopped from arguing or pleading otherwise.  *See Han v. Hankook Tire Co., Ltd.*, 799 F. App'x 347, 349 (6th Cir. 2020) ("When a party convinces a court to take a certain position, and later advocates an inconsistent position, the court can apply the doctrine of judicial estoppel to prevent that party from playing 'fast and loose' with the courts.") (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598-99 (6th Cir. 1982)).

Notwithstanding the above, Plaintiffs contend that their promissory estoppel claim should survive dismissal because the promises that form its basis are separate and independent from their breach-of-contract claim; specifically, Plaintiffs assert that Defendants made some of these promises after they unilaterally terminated the contract.  It appears that Plaintiffs are referring to Defendants' July 23, 2019 promise to finish portions of the renovation project that had already begun.  *See* Doc. at 14.  Plaintiffs' argument, however, is misplaced.  Critically, the parties' contract encompasses the July 23, 2019 promise.  To be sure, the contract required Defendants to complete renovations on the subject properties.  Defendants later promise to finish partially-started renovations represents the exact same performance contemplated by the contract.  Plaintiffs' promissory estoppel claim in Count Three is, therefore, **DISMISSED**.  *See Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 403 (6th Cir. 2006) ("[E]stoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contact.").

### B. Whether Defendants Owed Plaintiffs a Fiduciary Duty

In Count Four of the Complaint, Plaintiffs raise a claim for breach of a fiduciary duty. Defendants move to dismiss this claim on the basis that their status as a construction manager under the parties' contractual agreement does not give rise to a fiduciary relationship.

"A fiduciary relationship creates the highest order of duty imposed by law." *In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002). In this relationship, "the fiduciary must make every effort to avoid having his own interests conflict with those of the principal." *Id.* Importantly, the creation of a fiduciary duty requires more than "the generalized business obligation of good faith and fair dealing." *Id.* The Sixth Circuit has made this unequivocally clear:

> The duty of good faith and fair dealing merely requires the parties to 'deal fairly' with one another and does not encompass the often more onerous burden that requires a party to place the interest of the other party before his own, often attributed to a fiduciary duty.
>
> . . .
>
> The fact that one businessman trusts another, and relies upon his promise to perform a contract does not give rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

*Id.* at 891-92 (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex. 1992)).

Here, the only grounds Plaintiffs advance for the proposition that Defendants owed them a fiduciary duty is a provision in the contract stating the parties agree to "proceed with the Project on the basis of mutual trust, good faith, and fair dealing" and the fact that Plaintiffs gave Defendants managerial responsibilities, such as handling bidding and accounting for the project. *See* Doc. 21 at 15. Additionally, Plaintiffs note that Defendants had an obligation to pass on any discounts it was offered and to disclose conflicts of interest, presumably with bidders. *See id.*

5

Nothing about this relationship, however, required Defendants to act primarily for the benefit of Plaintiffs or gave Defendants a position of superiority or influence over Plaintiffs. *See Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St. 3d 29, 40-41 (Ohio 2015) ("We have defined the term 'fiduciary relationship' as one 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. In determining whether a fiduciary relationship has been created, the main question is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking.") (internal citations omitted). To the contrary, this was purely a business relationship based on mutual trust. *See In re Sallee*, 286 F.3d at 891-92. Accordingly, Plaintiffs' breach of fiduciary duty claim under Count Four is **DISMISSED**.

### C. Whether Plaintiffs can Assert a Claim for Conversion

In Count Five of the Complaint, Plaintiffs bring a conversion claim, alleging Defendants wrongfully took and misused property -- including money, materials, supplies, and equipment -- that was earmarked specifically for the property renovations. Defendants argue that this claim must be dismissed because it is precluded by Plaintiffs' breach-of-contract claim.

Where a conversion claim is based on the same conduct that underlies a breach-of-contract claim, the conversion claim must be dismissed. *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 437 F. App'x 381, 385 (6th Cir. 2011) ("Once the district court correctly determined that [MTI's] obligation to purchase TMSS's parts inventory arose from the Distributor Agreement, it was established that the conversion claim is based on the same actions as the contract claim. The conversion claim is therefore duplicative of the breach of contract claim and is not permitted under Ohio law.").

Here, Plaintiffs' conversion claim is based on Defendants' alleged failure to use Plaintiffs' property in accordance with the parties' contractual agreement. It thus follows that Plaintiffs' conversion claim arises from Defendants' obligations under the parties' contract. Because there is no dispute that the parties' contract is valid and legally enforceable, Plaintiffs' conversion claim must be **DISMISSED**.

### D. Whether Plaintiffs have Satisfied the Heightened Pleading Requirements for Fraud

In Counts Six and Seven of the Complaint, Plaintiffs raise claims of fraud against all Defendants. Defendants argue that these claims must be dismissed because no particular individual is alleged to have made any particular misrepresentation and Plaintiffs fail to plead where or when these alleged fraudulent statements were made.

Pursuant to Federal Rule of Civil Procedure 9(b), which governs claims of fraud, a plaintiff must "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). "Although Rule 9(b)'s special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs most cases, Rule 9(b)'s special requirements should not be read as mere formalism, decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *Id.* at 503 (internal citations omitted). Rather, "Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). This is because "Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.*

at 504 (internal quotations and citation omitted). Under this backdrop, the Court will analyze Plaintiffs' fraud claims in Counts Six and Seven.

1. Count Six

The crux of Plaintiffs' fraud claim in Count Six can be captured by a single paragraph within the Complaint:

> Doug Borror, Steiner, Garske, Borror Sugarman, the John Doe Defendants, Borror Construction (collectively "Defendants"), and other principals, employees and/or representatives of Defendants and/or affiliates of the Defendants, represented that Borror Construction had vast experience renovating multifamily communities and, particularly, individual apartment units and, specifically, providing third-party construction management services, including, but not limited to, providing proper scope of work, bidding, accounting, scheduling, sourcing of materials, identifying qualified vendors, development of renovation designs and or plans, and organizing and working with labor, materials, equipment, and the services necessary (the "Borror Representations").

Doc. 1 at 6. Plaintiffs suggest that these fraudulent representations were made sometime prior to and leading up to June 25, 2018, the date on which the parties signed the construction agreement. *See id.* Further, Plaintiffs assert that they were injured by these misrepresentations because they were induced into signing a contractual agreement that was never fulfilled.

Here, even assuming Plaintiffs have set forth facts putting Defendants on notice of the time, place, and content of the alleged misrepresentations, the intent of Defendants, and Plaintiffs' resulting injury, Plaintiffs fail to identify which Defendants made each misrepresentation. Instead, Plaintiffs group all Defendants together as one, which is not sufficient to enable a particular Defendant to determine with what it is charged. *See Hoover v. Langston Equipment Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("The complaint identifies relationships between various of the defendants but it alleges misrepresentations without sufficiently identifying which defendants made them. The complaint does not enable a particular defendant to determine with what it is charged."); *Heinrichs v. Dunn*, 2014 WL 3572404, at *10 (S.D. Ohio July 21, 2014) (Marbley, J.)

8

("Because a complaint may not rely on blanket allegations against all defendants because each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged, Plaintiff's complaint, which collectively refers to Defendants, except Mr. Dunn, fails to allege the required specificity.") (internal quotations and citations omitted). Accordingly, Plaintiffs' fraud claim in Count Six must be **DISMISSED**. *See Arnold v. Alphatec Spine, Inc.*, 2014 WL 2896838, at *12 (S.D. Ohio June 26, 2014) ("Plaintiffs' reference to 'Defendants' collectively is insufficient to 'identify the speaker' of the false statements. As a practical matter, even if all named Defendants contributed to the fraud offense, they did not all simultaneously transmit the alleged false statements. Therefore, Plaintiffs cannot accurately allege that false statements were made by all Defendants.").

### 2. Count Seven

In Count Seven, Plaintiffs allege several bases for its fraud claim. The relevant allegations are as follows:

> Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented to Plaintiffs that would (sic) complete certain portions, in good workmanlike condition, of the Renovations by specific deadlines when, in fact, at the time Borror Construction made such representations it knew or reasonably should have known that it would not complete those portions of the Renovations within those deadlines.

> Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented to Plaintiffs that it would and was passing on any discounts it received from the Borror Vendors to Plaintiffs, when, in fact, at the time Borror Construction made such representations, it knew or reasonably should have known that it would not and was not passing on any discounts it received from the Borror Vendors to Plaintiffs, but instead was insisting that certain Borror Vendors charge higher than usual or non-discounted prices for the Renovations so that Borror Construction could in turn obtain a higher construction management fee under the Borror Construction Agreement due to such fee being structured as a percentage of the cost of the Renovations.

> Borror Construction, through Steiner and/or Garske, represented to Plaintiffs that it and/or the Borror Vendors performed, inspected, or completed certain portions of the Renovations, when in fact, Borror Construction knew or should have reasonably known

9

> that it and the Borror Vendors had not performed, inspected, or completed certain portions of the Renovations.
>
> Borror Construction, through Doug Borror, Steiner, Garske, and/or Borror Sugarman, represented to Plaintiffs that amounts billed by Borror Construction for labor costs were actual costs with no additional mark ups attached when in fact Defendants knew there was a mark-up on the labor costs.
>
> Borror Construction, through Steiner, Garske and/or Borror Sugarman, represented that its team members under the employ of Borror Construction were qualified to manage the completion of the Renovations although they knew or reasonably should have known that they lacked the required knowledge and experience to do so.
>
> Borror Construction represented, through requests for payment (without proper backup), the costs Borror Construction was improperly charging for the Renovations associated with the unit upgrades, or otherwise, when in fact, Borror Construction knew or should have known that such charges were not in-line with agreed upon expenses between Borror Construction and Plaintiffs.
>
> Borror Construction represented through invoices provided that charges incurred for the ordering of materials were necessary to complete the Renovations, when in fact, Borror Construction knew or should have known that such charges included the ordering of material in excess of what was required to complete the Renovations.
>
> Borror Construction represented, through Steiner and/or Garske, that discussions were underway for correction or compensation for defective components of the Renovations, when in fact, no such discussions between Borror Construction and the Borror Vendors actually occurred.

Doc. 1 at 39-42.

Here, unlike in Count Six, Plaintiffs have made some effort, though not necessarily sufficient, to identify which Defendants made each alleged misrepresentation. In addition, Plaintiffs have pled facts establishing the content of the alleged misrepresentations, the scheme and intent of Defendants (*i.e.,* to, among other things, induce Plaintiffs to sign the construction agreement and to increase their profit under said agreement), and Plaintiffs' resulting injury. Further, it can arguably be inferred, though more specificity is desired, that all of the alleged misrepresentations in Count Seven took place between June 25, 2018 -- the date on which the parties signed the construction agreement -- and July 23, 2019 -- the date on which Defendants

10

promised to finish portions of the renovations they had already begun. *See Zaptron (HK) Ltd. v. Air Sea Transport, Inc.*, 221 F.R.D. 482, 484 (N.D. Ill. 2004) ("While it is true that the time requirement is not exact, the plaintiff must allege an 'approximate time frame.'"). Where Plaintiffs' Complaint clearly falls short, however, is identifying where, how, and to whom these misrepresentations were communicated. The Complaint does not explain, for example, "whether the communications occurred in face-to-face meetings, letters, written correspondence, brochures, or telephone conversations." *See Fischer Indus. Inc. v. Medivance Instruments, Ltd.*, 1992 WL 686866, at *6 (N.D. Ill. Aug. 31, 1992). And, "[b]ecause Plaintiffs were the recipients of the alleged misrepresentations, Plaintiffs must know—and could have alleged—where and how the Defendants communicated these false statements." *See id.* For these reasons, Plaintiffs' fraud claim in Count Seven is **DISMISSED**.

### E.  Whether Plaintiffs can Assert a Claim for Negligent Construction

Finally, in Count Eight of the Complaint, Plaintiffs raise a negligent construction claim, alleging Defendants failed to complete the property renovations in a workmanlike manner and in accordance with industry standards. Defendants move to dismiss this claim on the basis that it is precluded by Plaintiffs' breach-of-contract claim.

Although Ohio law recognizes a legal duty of a contractor to perform services in a workmanlike manner, this duty arises from contract law rather than tort law. *See Jarupan v. Hanna*, 173 Ohio App. 3d 284, 294 n.1 (Ohio Ct. App. 2007) ("When a party contracts for future construction services (such as the remodeling or repair of an existing structure), the contract includes an implied duty to perform in a workmanlike manner. Consequently, if the builder or contractor breaches that implied duty, it is liable in contract, not tort.") (internal citations omitted); *Hilsinger Building and Dev. Corp. v. Terracon Consultants, Inc.*, 2019 WL 4601774, at *7 (S.D.

Ohio Sept. 23, 2019) ("Ohio law recognizes a duty of builders or contractors to perform work in a workmanlike manner—a duty which arises out of contract law."). Hence, where a defendant's duties arise out of contract, there can be no negligent construction claim. *See Cork-Howard Constr. Co. v. Dirty D Props., LLC*, 2017 WL 5574145, at *3 (N.D. Ohio Nov. 20, 2017) ("Since this is a contractual duty, the tort claims must be dismissed as a matter of law.").

Here, Defendants' obligation to complete the property renovations in a workmanlike manner arise directly from the parties' contractual agreement. Because this is a valid and legally enforceable contract, Plaintiffs' negligent construction claim must be **DISMISSED**.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Dismiss [#16] Counts Three through Eight of the Complaint. The Court will, however, permit Plaintiffs to file a Motion for Leave to Amend their Complaint, but only as it relates to the fraud claims in Counts Six and Seven. *See Mason v. Wal-Mart Corp.*, 2015 WL 1197916, at *10 (S.D. Ohio Mar. 16, 2015) (Marbley, J.) ("In cases where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (internal quotations and citation omitted). To be clear, the Court's decision to allow Plaintiffs to file for leave to amend their complaint does not weigh on the merits of Plaintiffs' fraud claims. Plaintiffs will have fourteen (14) days from the date of this Opinion and Order to file their Motion, which should include a copy of their proposed amended complaint attached as an exhibit.

    **IT IS SO ORDERED.**

                                          **ALGENON L. MARBLEY**
                                          **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 15, 2020**