**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ORO CAPITAL ADVISORS, LLC, et al. | : | Case No.: 2:19-CV-05087 |
| Plaintiffs, | : | Chief Judge Algenon L. Marbley |
| | | Chief Magistrate Judge Elizabeth P. Deavers |
| v. | : | |
| BORROR CONSTRUCTION CO., LLC, et al. | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ORO BRC4, LLC | : | Case No.: 2:19-CV-04907 |
| Plaintiff, | : | Chief Judge Algenon L. Marbley |
| | | Chief Magistrate Judge Elizabeth P. Deavers |
| v. | : | |
| SILVERTREE APARTMENTS, INC., et al. | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANTS'**
**FAILURE TO PREPARE WITNESS FOR 30(B)(6) DEPOSITION,**
**FAILURE TO DISCLOSE DISCOVERABLE INFORMATION, AND**
**FAILURE TO PRESERVE EVIDENCE[1]**

---

[1] Pursuant to Fed. R. Civ. P. 37(d)(1)(B), Plaintiffs' counsel hereby certify that they have conferred in good faith to resolve the issues raised in this motion by, *inter alia*, phone conferences between the parties and this Court on various dates (December 7, 2020, January 6, 2021, and January 19, 2021). Plaintiffs' counsel made the parties and this Court aware at the status conference on January 19, 2021, of the potentially sanctionable conduct, Borror opposed the same, and this Court instructed Plaintiffs to file the instant motion.

1

## <u>TABLE OF CONTENTS</u>

SUMMARY ....................................................................................................................... 3

I. INTRODUCTION ...................................................................................................... 7

II. BORROR FAILED TO PRODUCE A PROPERLY PREPARED WITNESS ..................... 7

   A. Factual Background ........................................................................................... 7

     1. Borror Failed to Prepare its Designated Witness ................................... 8

     2. Borror's Designated Witness Lacked Knowledge of the Litigation Hold ...................... 9

     3. Borror Failed to Preserve Information from Potentially Material Witnesses ............... 11

     4. Borror Failed to Determine if Devices Have Discoverable ESI .................................... 13

   B. Law and Argument .......................................................................................... 13

   C. Remedy ........................................................................................................... 16

III. BORROR'S FAILURE TO DISCLOSE DISCOVERABLE INFORMATION ................ 17

   A. Factual Background ......................................................................................... 17

     1. Conflicting Disclosures Regarding Reassignment of Electronic Devices ................... 18

     2. Borror Failed to Disclose Devices Likely to Have Discoverable ESI ........................... 19

     3. Borror Failed to Disclose Custodians ....................................................................... 21

   B. Law and Argument .......................................................................................... 22

   C. Remedy ........................................................................................................... 25

IV. BORROR FAILED TO PRESERVE EVIDENCE .......................................................... 25

   A. Factual Background ......................................................................................... 25

     1. Borror Deleted Documents from Electronic Devices ................................................. 25

     2. Borror Destroyed/Failed to Maintain Hard Drives of Terry George ........................... 26

     3. Failure to Preserve Ryan Freet's Computer ............................................................... 27

     4. Failure to Maintain Rankey/Weaver Emails .............................................................. 28

       a. *Jeff Rankey* ..................................................................................... 28

       b. *Kate Weaver* .................................................................................. 29

     5. "The Big Clean Up" ................................................................................................... 29

   B. Law and Argument .......................................................................................... 30

   C. Remedy ........................................................................................................... 35

V. CONCLUSION ........................................................................................................ 35

## SUMMARY[2]

Plaintiffs move this Court for sanctions against Defendants Borror Construction Co. ("Borror") LLC and Karric North Apartments, Inc., Karric South Apartments, Inc., Springburne Apartments, Inc., and Silvertree Apartments, Inc. (collectively "Defendants") for (1) Borror's failure to properly prepare its designee for its 30(b)(6) deposition, for (2) Defendants' failure to make adequate disclosures in accordance with the ESI Orders issued in *Oro Capital Advisors, LLC, et al. v. Borror Construction Co., LLC, et al.*, No. 2:19-cv-05087 (the "Federal Construction Case") and *Oro BRC4, LLC v. Karric North Apartments, Inc., et al.*, No. 2:19-cv-4907 (the "Purchase Agreement Case"), and for (3) Defendants' failure to preserve evidence.

Plaintiffs first seek sanctions against Borror for its failure to properly prepare its designee for the 30(b)(6) deposition.  As part of the ongoing discovery disputes between the parties, Plaintiffs requested, and Borror agreed to a 30(b)(6) deposition regarding various ESI and spoliation issues.  Upon conducting the deposition, Plaintiffs discovered that Mr. Matthew Cook ("Cook"), the head of Borror's IT department, did not have knowledge regarding approximately half of the 37 deposition topics set forth in the applicable deposition notice.  Cook acknowledged that he received the deposition notice just two days before the deposition, that he did not review any documents from Borror (other than his own emails), that he did not have knowledge as to some of the deposition topics, and that he did not talk to any current or former employees at Borror to gather Borror's knowledge regarding the topics for which he lacked personal knowledge.  Plaintiffs request an order regarding a second 30(b)(6) deposition relating to the topics for which Cook lacked Borror's corporate knowledge, and for attorney's fees and expenses to prepare for and conduct for the first and second 30(b)(6) deposition, plus a $10,000 award as a deterrent.

---

[2] Pursuant to Local Rule 7.2(a)(3), Plaintiffs submit this summary of their Motions for Sanctions.

Plaintiffs next seek sanctions against Borror for its failure to obey a court order regarding discovery—namely, the two ESI Orders issued by this Court in the Federal Construction Case and Purchase Agreement Case.  Borror's counsel repeatedly made representations, which turned out to be false, regarding whether Borror could track electronic devices used by former employees, whether Borror's employees could save ESI and documents to the local hard drives of their Borror devices, and whether Borror knew of any additional custodians likely to have discoverable ESI. After months of repetitive correspondence, conference calls with the Court, and then finally after conducting Borror's deposition, Plaintiffs discovered that Borror in fact did track its electronic devices used by former employees and that employees could and did save ESI to their local hard drives on their devices.  Borror had made these representations in part, to bolster its claim that it should not have to image devices used by former employees.  To make matters worse, Plaintiffs discovered that not only could the devices be imaged, but they should be imaged because they do contain discoverable ESI—or at least did at one time until Borror deleted or wiped the devices upon former employees turning in the devices.  Both of Borror's basis for claiming that its devices could not be imaged turned out to be a fallacy.  Finally, Borror claimed externally to Plaintiffs that Borror knew of no other custodians, but internally, Borror saved various email accounts for at least four additional and previously undisclosed custodians as being relevant to the instant litigation. Once again, Plaintiffs did not learn this until long after exchanging repeated correspondence and attending multiple conference calls with the Court and conducting Borror's deposition.

As a sanction, Plaintiffs request that this Court award monetary sanctions in the form of attorney's fees and costs for all of the efforts Plaintiff undertook to discover this information that Borror had an obligation to previously disclose under the ESI Orders but failed to disclose, that Borror be required to image all of its Borror-owned devices because Borror's request for imaging

4

sampling and Plaintiffs agreement to do imaging sampling was based on Borror's fallacies regarding tracking devices and whether its devices likely had discoverable ESI.

Finally, Plaintiffs set forth in the final section issues regarding spoliation of evidence and/or the Defendants' failure to preserve evidence. Borror deleted documents from certain electronic devices even after Plaintiffs had issued a litigation hold letter and after Plaintiffs commenced litigation against Borror. Other Defendants destroyed and/or lost hard drives, and Borror lost a hard drive for a computer used by the project's accountant, Ryan Freet. Furthermore, Borror deleted and/or its third-party email service provider, RDI Corporation, deleted emails as part of what Borror and RDI referred to as the "Big Cleanup" in or around January 2020—more than six months after Plaintiffs had issued the litigation hold letter and more than three months after Plaintiffs commenced this litigation. Because Plaintiffs have just begun to discover information relating to spoliation, Plaintiffs do not ask for a specific spoliation sanction at this time, but instead ask this Court to permit Plaintiffs to inquire more deeply into what efforts, if any, Borror and Defendants took to implement a litigation hold, including, but not limited to, any litigation hold communications or letters from counsel (even if they contain attorney-client and/or attorney work-produce communications).

Generally, litigation hold letters and communications with counsel are privileged, but upon a preliminary showing of spoliation, courts allow parties to obtain such documents and information. *See Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631 (D. N.J. 2013); *see also Little Hocking Water Ass'n Inc. v. E.I. Dupont de Nemours and Co.*, No. 2:09-cv-1081, 2013 WL 5311292 (S.D. Ohio).

In *Little Hocking*, this Court applied the holding in *Major Tours* (although it declined to find a preliminary showing of spoliation). To establish a preliminary showing of spoliation, a

party must show that the other party had an obligation to preserve, either failed to preserve or failed to institute a sufficient litigation hold process to ensure preservation, and some showing of prejudice—that the potentially spoliated evidence is related to the litigation in some manner. A party is not required to show actual spoliation. *See Major Tours*, 2009 WL 2413631 at *5.

Plaintiffs have made a preliminary showing of spoliation based primarily on the deposition testimony of Cook. (1) Borror had an obligation to preserve evidence at least as early as July 22, 2019, upon receipt of the litigation hold letter from Plaintiffs' counsel; (2) Borror destroyed, deleted, and or lost certain evidence after its obligation to preserve arose, including, but not limited to ESI from the hard drives of the electronic devices of former employees who worked on the project, deletion of the Rankey and Weaver emails, the hard drives of Terry George, the device of Ryan Freet, and the information destroyed in the Big Clean Up; (3) the deleted evidence is not otherwise recoverable; and (4) Plaintiffs have suffered prejudice because the deleted or lost ESI is from devices or email accounts used by current and former employees of Borror during the time period in which they worked almost exclusively on Plaintiffs' project.

Accordingly, Plaintiffs request that they be allowed to inquire further into the litigation hold process (if any) implemented by Borror and/or Defendants, including any litigation hold letters and communications relating thereto (from counsel or otherwise).

## I. INTRODUCTION

Plaintiffs Oro Capital Advisors, LLC, Oro Karric South, LLC, Oro Karric North, LLC, Oro Silvertree, LLC, Oro Springburne, LLC, Oro RB SPE Owner, LLC, and Oro Island Club SPE Owner, LLC ("Plaintiffs") respectfully move this Court for an Order imposing sanctions against Defendant Borror Construction Co., LLC ("Borror") and Defendants Karric North Apartments, Inc., Karric South Apartments, Inc., Silvertree Apartments, Inc., and Springburne Apartments, Inc. (collectively "Sellers")(collectively "Defendants") for failure to properly prepare a witness for its 30(b)(6) deposition, failure to disclose discoverable information in accordance with discovery orders, and failure to preserve evidence.

## II. BORROR FAILED TO PRODUCE A PROPERLY PREPARED WITNESS

### A. Factual Background

Borror should be sanctioned for failing to produce a properly prepared witness. On December 7, 2020, Magistrate Judge Elizabeth P. Deavers ("Judge Deavers") held a status conference regarding, *inter alia*, ESI discovery, potential spoliation, and failures to disclose information required under the ESI discovery orders (ECF No. 67 – PSA Case). During this call, the parties agreed that a 30(b)(6) deposition could help resolve some of these outstanding issues. On December 31, 2020, Plaintiffs issued a 30(b)(6) Notice of Deposition to Defendant, Borror Construction Co., LLC ("Borror"), attached hereto as **EXHIBIT 1** (the "Deposition Notice"). Plaintiffs conducted the deposition on January 15, 2021. *See* Deposition Transcript of Matt Cook attached hereto as **EXHIBIT 2**.

The Deposition Notice included thirty-seven material, necessary, and narrowly tailored topics.[3] Borror's designee and IT manager, Mr. Matthew Cook ("Cook"), was knowledgeable

---

[3] Through good faith discussions, Plaintiffs agreed to remove topic number six and to more narrowly tailor topics 22 and 23.

about some but not all topics, and he was unable to substantively answer questions relating to the following fundamental and critically important topics: (1) Borror's litigation hold communications and litigation hold efforts (topics 7-11); (2) the facts and circumstances (including the timing) relating to the recovery and deletion of the emails of Jeff Rankey ("Rankey") and Kate Weaver ("Weaver")[4] and the role of RDI Corporation ("RDI"), Borror's third-party email service provider, in deleting/archiving/attempting to retrieve the emails (topics 16-21); (3) the timing of the departures of Rankey and Weaver (topics 22 and 23); (4) Borror's document and email retention policies, especially as it relates to the preservation/deletion of email accounts through RDI (topic 4); and (5) what efforts Borror undertook to determine if its electronic devices were likely to contain discoverable ESI for purposes of imaging (topics 36 and 37).

### 1.    Borror Failed to Prepare its Designated Witness

Borror failed to prepare Cook to testify regarding numerous topics in the Deposition Notice.  Borror's counsel received the Deposition Notice on December 31, 2020, and devoted considerable time arguing about the topics, resulting in Plaintiffs removing topic number six. Nevertheless, Cook testified that did not receive the Deposition Notice, and did not even begin reviewing the deposition topics, until essentially just two days before his deposition.  *See* Cook Dep. 247: 21-22.[5]  As a result, Cook either lacked sufficient time or simply chose not to exercise reasonable diligence to gather the company's knowledge regarding the various deposition topics and/or to review or gather any documents necessary to provide the company's knowledge.  *See id.* at 247.

---

[4] Mr. Rankey and Ms. Weaver were integrally involved in the project that forms the subject matter of this litigation. Mr. Rankey was in charge of the project initially, and participated in several aspects of the planning for the project as well as budgeting.  Ms. Weaver was integral in connecting Borror with Plaintiffs and managed the subject property at relevant times during the construction on the project.

[5] Cook received the Deposition Notice on the afternoon of Tuesday, January 12, 2021. His deposition started less than two days later, on Friday, January 15, 2021, at 10:00 a.m.

Cook testified that, in preparation for the deposition, he merely "went through [his own] emails to see if anything was pertinent to [the] topics" and talked to counsel – not anyone else, even for topics which Cook admittedly had no knowledge. Cook Dep. 9:20 – 10:7. Said otherwise, the only information Cook came prepared to provide was his own, and not Borror's knowledge.

2.     Borror's Designated Witness Lacked Knowledge of the Litigation Hold.

Cook lacked knowledge and/or was unprepared to answer questions regarding topics 7-11, pertaining to the litigation hold letter that Plaintiffs' counsel issued to Borror's counsel on July 22, 2019; Borror's receipt of that letter; what litigation hold efforts Borror undertook to implement a litigation hold; and what communications Borror sent or received regarding the litigation hold letter and/or any litigation hold.  A copy of the litigation hold letter issued July 22, 2019 is attached hereto as **EXHIBIT 3.**   The litigation hold efforts, and communications relating to the litigation hold, are especially pertinent regarding Borror's spoliation of evidence.  Cook lacked knowledge of whether Borror ever received the litigation hold letter; Borror's internal communications relating to the litigation hold letter; what litigation hold efforts, if any, Borror implemented (other than one effort that he was involved in personally); and what communications Borror sent or received relating to litigation hold efforts.

When asked if Cook had seen the litigation hold letter issued to Borror by Plaintiffs on July 22, 2019, he testified "[his] first thought is no" and he "[didn't] think so." Cook Dep. 236:7 – 13. Cook further testified that he "[had] no idea" if anybody at Borror ever received a copy of the litigation hold letter. Cook Dep. 236:14 – 17.

Borror failed to produce a witness who either possessed personal knowledge or gathered the information necessary to answer questions on these topics, per Cook's testimony as follows:

9

Q:     But you said you don't know whether the litigation hold letter from Oro was ever received by Borror – I'm sorry – from Oro's counsel was ever received by Borror.

A:     How would I know?

Q:     Well, you're supposed to ask other people if you don't know enough to answer the questions relating to this topic.  It says the receipt of the litigation hold letter and how and to what extent it was shared, discussed, and/or distributed.  And I'm saying: You don't even know if it was received.  Do you know whether that litigation hold letter was distributed within Borror?

A:     You know, I received this list Tuesday.  37 topics.  I did my best to prepare.

Cook Dep. 247: 6-25.  Cook explained "I have no idea," when asked who at Borror received notice that Borror implemented a litigation hold.  Cook Dep. 245: 6-15.  When asked whether other people at Borror had communicated about a litigation hold or litigation hold letter, Cook answered, "I do not know[,]" and then explained "I did not speak to other people internally on this, being I received it Tuesday."  *See* Cook Depo. 248: 1-25—249: 1-9.

Borror produced a witness who lacked knowledge of whether Borror received any kind of litigation hold letter from anyone regarding Borror's disputes with Plaintiffs.  When asked if Borror's counsel issued a litigation hold letter to Borror, Cook could only "assume they [counsel] gave us [Borror] something." Cook Dep. 242:16 – 19. When asked not to assume, Cook merely re-affirmed that, "to the best of [his] knowledge, [he's] assuming something was sent." Aside from Loribeth Steiner ("Steiner") and Bethany Kungle ("Kungle") (Human Resources), Cook did not know if anyone else at Borror received notice regarding a litigation hold, and further did not know if anyone at Borror communicated about a litigation hold or the subject of such communications. Cook Dep. at 245:13 – 16; 248:1 – 6.  Cook had no knowledge regarding what steps Borror, as a company, took to implement a litigation hold—he only knew what he, as an individual, was asked to do, which essentially involved asking for fourteen email accounts, running a search on those

emails, and creating a shared folder titled "litigation hold" on the Borror network. Cook's testimony was similarly deficient for topics 10 and 11, which asked Borror to answer questions regarding what efforts, if any, Borror took to preserve data for the various Borror-related entities upon receipt of the litigation hold letter and before receipt of the litigation hold letter. *See generally* Cook Dep. 268:20 – 270:1. Cook did not even know whether Defendants had issued any kind of written litigation hold letter or memo internally:

> Q: Did Borror itself issue any sort of email or litigation hold internally to notify all of the other employees that there was a litigation hold in place?
>
> A: I don't know.

Cook Dep. 245: 17-21.

Accepting Borror's designated 30(b)(6) deponent's testimony to be complete and accurate, Borror failed to follow any meaningful litigation hold process. Borror did not notify its relevant employees that it was implementing a litigation hold, did not instruct employees on what steps to take to preserve evidence, did not instruct the IT department to cease all procedures that would potential delete or destroy relevant ESI, and did not inform third-party providers, such as RDI not to delete or carry out procedures that would potentially delete information.

### 3. Borror Failed to Preserve Information from Potentially Material Witnesses

Borror failed to prepare its 30(b)(6) deponent and failed to preserve information from material witnesses. Cook's lack of knowledge and/or failure to properly prepare for the 30(b)(6) deposition regarding Topics 16 through 23 was evidenced by his own notes (attached as **EXHIBIT 4**), which reveal that Cook wrote answers to some topics but left topics 16, 17, 18 and 19 completely blank. *See* Ex. 4. For topics 22 and 23, Cook typed that he had "no knowledge of facts and circumstances" of the departure of potentially material witnesses Jeff Rankey and/or Kate

Weaver's departure from Borror. Cook conceded that he "[didn't] know when they [Rankey and Weaver] left." Cook Dep. at 190:11 – 22. When asked if he made an effort to talk to anybody at Borror in order to find out the timing of [Rankey and Weaver]'s departure, he testified that he did not. Cook Dep. at 191:12 – 16. When asked if he understood his obligation to exercise reasonable diligence to find out, as Borror's 30(b)(6) deposition designee, he testified he did not. Cook Dep. at 191:17 – 19.

Cook noted that Borror consultant RDI provided email archiving, storage, and deletion services for Borror, but could not answer several questions as to what RDI did with the email accounts for Rankey or Weaver, or when or under what circumstances they were deleted or recovered. *See* Cook Dep. 197: 24—198: 1-5. Cook also lacked knowledge regarding RDI's policies and procedures for deleting email accounts, or when RDI deleted Rankey and/or Weaver's email accounts and/or what efforts RDI made to recover them and/or whether RDI recovered Rankey's emails. *See* Cook Dep. 72. Cook explained that he "would have to find out more" to answer certain questions relating to RDI's storage and process of deleting Borror's email accounts and that RDI would know better, meaning that Cook did not confer with RDI about this issue to prepare for his deposition. Cook Dep. 74-75. Regarding the recovery of Rankey's email account and the access provided to Lori Steiner <u>after</u> the litigation hold letter was issued, Cook could not explain whether Steiner was able to see the emails and he did not know if RDI had fully recovered the emails—all things he should have inquired about with Steiner and/or other persons at Borror to prepare for his deposition, as multiple topics (nearly ten) deal with the deletion of the Rankey and/or Weaver emails. Cook Dep. 96: 16-24—97: 1-7.

Borror's failure to preserve documents related to Rankey and/or Weaver is particularly egregious given its receipt of a litigation hold letter, which letter should have triggered an

augmentation of Borror's woefully deficient preservation policies. Cook testified that Borror had no formal or written policy for how long an employee's emails are preserved (and/or deleted) after an employee leaves Borror. Cook Dep. 78:2 – 12. When asked generally how Cook preserved a hard drive after a Borror device was retired (as Cook described as "too old to give to a new user"), Cook testified that he has "[his] kids recycle them" by way of "tak[ing] a hammer to the hard drive." Cook Dep. 180:11 – 14.

4.    <u>Borror Failed to Determine if Devices Have Discoverable ESI</u>

Borror failed to determine if devices have discoverable ESI. Cook lacked knowledge regarding what (if any) efforts Borror took to determine that electronic devices used by current and former employees were likely to have discovery ESI on them—other than stating that Cook himself did not talk to current or former employees to determine whether their devise were likely to have discoverable ESI.  Cook Dep. 229-235.  Cook did not talk to other employees or managers at Borror to determine what efforts Borror took to make this determination, including whether Borror conducted custodial interviews of its current and former employees.  Cook Dep. 229-235. Once again, Cook testified as to his personal knowledge only, and not Borror's knowledge as a company.

**B.**    **Law and Argument**

The party seeking to depose the corporation must issue a deposition notice describing the matters or topics for examination.  *See* Fed. R. Civ. P. 30(b)(6).  The deponent who receives the notice must produce one or more "witnesses who are knowledgeable about the subject matter of the noticed topics."  *See id*.  Rule 30(b)(6) requires that "individuals designated to speak for the company must testify about 'information known or reasonably available to the organization' [and] the designated witness must be prepared by the organization to adequately testify on the noticed

topics." *Naaco Materials Handling Grp, Inc. v. Lilly Co.*, 278 F.R.D. 395, 400-01 (W.D. Tenn. 2011).

A company has the responsibility to prepare its designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources…" *Id.* When an organization is served with a Rule 30(b)(6) deposition notice, the organization "is obligated to produce a witness knowledgeable about the subjects described in the notice and prepare that witness to testify not just about his or her own knowledge, but <u>the corporation's knowledge</u>." *Prosonic Corp v. Stafford*, S.D. Ohio No. 2:07-cv-0803, 2008 WL 2323528 at *1 (emphasis added). This Court explains as follows:

> The actual rationale behind the Rule is: (1) that the corporate recipient of the notice determine who in the company possesses the relevant knowledge, so that the noticing party does not have to fish around aimlessly within the company, (2) that the corporation's full knowledge be disclosed to the requesting party during the deposition, and (3) that a corporation not sandbag by failing to search for information before the deposition, but later searching for such information after discovery in order to present such undisclosed information through other corporate witnesses at trial.

*Wells Fargo Bank NA v. LaSalle Bank Nat. Assoc.*, No. 3:07-cv-449, 2008 WL 1351416, at *3 (S.D. Ohio Oct. 30, 2008).

This Court holds that "production of an unprepared witness is tantamount to a failure to appear, and warrants the imposition of sanctions." *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, S.D. Ohio 2:09-cv-1081, 2013 WL 1196606, *14. Moreover, the "inadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Lutz v. St. Paul Fire & Marine Inc.*, 1:03-cv-750, 2005 U.S. Dist. LEXIS 12568, *11 (S.D. Ohio May 24, 2005).

Courts routinely grant sanctions where a corporation fails to adequately prepare its witness for a 30(b)(6) deposition. Sanctions include ordering a second 30(b)(6) deposition with an

alternative and prepared witness, the imposition of attorney's fees and costs for conducting the first and second deposition, attorneys fees and costs for conducting the second deposition, and/or excluding the party from submitting evidence on any of the topics for which it was unprepared. *See Star Lock Systems, Inc. v. Dixie-Narco, Inc.*, No. 2:03-cv-616, 2006 WL 2265886, (S.D. Ohio Aug. 8, 2006 (awarding attorney's fees and costs for first deposition, attorney fees for motion for sanctions, and ordering second deposition); *Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, No. 1:13-cv-1195, 2015 WL 12743834, (N.D. Ohio Mar. 18, 2015)(awarding attorney's fees and costs for second deposition and ordering second deposition, but noting that additional sanctions could issue regarding failure to produce properly prepared witness); *Nacco Materials Handling Group, Inc. v. Lilly Co.*, 278 F.R.D. 395 (W.D. Tenn. 2011)(awarding attorney's fees and costs incurred in taking first deposition and fees for motion for sanctions as well as ordering second deposition); *Clear Cast Group, Inc. v. Ritrama, Inc.*, No. 1:09-cv-0169, 2011 WL 13334451 (N.D. Ohio Sept. 15, 2011)(awarding attorney's fees and costs in taking first deposition and fees to prepare motion for sanctions as well as ordering second deposition); *Wells Fargo Bank NA v. LaSalle Bank Nat. Assoc.*, No. 3:07-cv-449, 2008 WL 1351416, (S.D. Ohio Oct. 30, 2008)(imposing sanction of prohibiting violating party from submitting evidence on issues to which it did not answer questions at deposition and attorney's fees for filing motion for sanctions); and *Prosonic Corp. v. Stafford*, No. 2:07-cv-0803, 2008 WL 2323528 (S.D. Ohio June 2, 2008)(imposing sanction of second deposition).

Sanctions are appropriate when the deponent was knowledgeable as to some, but not all, topics noticed in the deposition. *See Nacco Materials Handlin Group, Inc. v. Lilly Co.*, 278 F.R.D. 395, 401-402 (W.D. Tenn. 2011)(sanctions appropriate where designee answered questions as to some, but not all, topics).

Borror should be sanctioned for its failure to produce a witness with company knowledge regarding roughly half of the topics listed in the Deposition Notice. Cook was prepared to testify only on his own limited knowledge regarding only some noticed topics. Cook testified that the only person he talked to in preparation for his deposition was counsel – not anyone else at Borror. Cook Dep. 9:20 – 10:7. Accordingly, Borror failed to provide a witness and/or witnesses that could: (1) provide information on all topics listed in the Deposition Notice; and (2) provide testimony regarding the company's knowledge.

Borror failed to make a conscientious and good faith effort to prepare a designated deponent knowledgeable about the information sought by Plaintiffs. Borror's counsel did not provide the Deposition Notice to Cook for nearly two weeks after receipt, and only two days before Cook's deposition. Although Plaintiffs accept at face value that Cook "did [his] best to prepare" in such short order, the preparation was insufficient for purposes of Rule 30(b)(6).

Despite Cook's admitted lack of knowledge regarding various topics, Borror failed to ensure that its designated deponent talked to any other Borror employees and/or anyone at its digital consultant RDI and/or anyone else (excepting legal counsel) to determine what knowledge Borror had relevant to the 30(b)(6) deposition topics. Accordingly, Borror failed to fulfill its responsibility to review documents and/or to consult with current and/or past employees and/or any other sources necessary to educate its designated deponent on information responsive to the Deposition Notice.

### C. Remedy

As a consequence for Borror's failures, this Court should order Borror as follows:: (1) Produce one or more Rule 30(b)(6) designees and to adequately prepare for a second deposition to cover topics 7-11, 16-24, and 36-37; (2) Pay Plaintiffs' attorneys fees and costs for the first

deposition (including court reporter costs and the fees for Plaintiffs' ESI consultant to attend the deposition to assist counsel); (3) Pay Plaintiffs' attorneys fees and costs to prepare for and take a second deposition (including court reporter costs and the fees for Plaintiffs' ESI consultant to attend the second deposition to assist counsel); (4) Pay Plaintiff's attorney's fees for this Motion; and (5) Pay Plaintiffs $10,000.00 as a penalty to deter future discovery misconduct.

## III.    BORROR'S FAILURE TO DISCLOSE DISCOVERABLE INFORMATION

### A.    Factual Background

Borror proffered incomplete and misleading disclosures regarding tracking of digital devices relevant to the project at issue. This Court entered ESI Protocol Orders to govern ESI discovery in these cases on July 13, 2020 (the "ESI Orders"). *See* ECF No. 40 in the Federal Construction Case and ECF No. 47 in the Purchase Agreement Case. The ESI Orders require the parties, including Borror, to disclose various information relating to ESI discovery, including, among other things, a list of devices used by current and former employees, the efforts taken to preserve such information, and any information that was inaccessible.

In its ESI Disclosure in the Federal Construction Case, Borror, acting by and through its counsel, made several representations regarding its ESI:

1.    That the electronic devices such as laptops and desktops used by Borror's former employees were "not identifiable" and thus could not be imaged;

2.    That electronic devices used by former and current employees would not have any discoverable ESI on them because "employees are unable to open, review, edit, or save documents and other ESI to a work computer."

3.    "There are no additional custodians who are likely to have discoverable ESI in their possession custody or control" other than the 14 people identified in the ESI Protocol in the Federal Construction Case.

*See* the ESI Disclosures in the Federal Construction Case and Purchase Agreement Case attached hereto as **EXHIBIT 5**. To clarify these three issues, among others, Plaintiffs' counsel issued a

deficiency letter to Borror's counsel.  *See* September 18, 2020 Email attached hereto as **EXHIBIT 6**.

### 1. Conflicting Disclosures Regarding Reassignment of Electronic Devices

Borror proffered conflicting disclosures regarding reassignment of electronic devices. Because Borror failed to identify the devices of its former employees in its initial ESI disclosures, Plaintiffs' counsel requested, via email sent September 18, 2020, that Borror identify the devices used by Borror's former employees during the relevant time period and the types of devices and where the devices are currently located.  This request specifically asked that, "[i]f the devices have been electronically wiped or are being sued by another person at Borror Construction and/or Sellers, please disclose that."  *See* **EXHIBIT 6**.

Borror's initial response claimed that "it is not possible for Borror to identify what devices a prior employee had and where that device is currently located."  *See* October 13, 2020 Email attached hereto as **EXHIBIT 7**.  Fearing that relevant information might have been destroyed despite prior issuance of a litigation hold, Plaintiffs' counsel noted a potentially serious spoliation problem.  *See* email sent November 6, 2020, attached as **EXHIBIT 8**, citing the litigation hold letter issued to Borror's counsel on July 22, 2019, attached as **EXHIBIT 3**.

Months of correspondence ensued before Borror's counsel, suddenly and without explanation, reported that Borror had identified the devices used by former employees -- but Borror's counsel still failed/refused to provide information required by the ESI Orders, including the following: which devices had been used by the former employees; whether the devices had been reassigned; and/or whether the devices had been wiped or had documents deleted prior to reassignment.  Frustrated by Borror's protracted failure to provide the disclosures required by the ESI Orders, Plaintiffs issued the Deposition Notice, including topics regarding Borror's process

for tracking devices, the reassignment of those devices, and what steps or processes Borror followed upon a former employee turning in a device. *See* **EXHIBIT 1**, Deposition Topic 34.

The 30(b)(6) deposition revealed that Borror's excuse for its failure/refusal to image devices (i.e., that the devices were not tracked) was fallacious. Contrary to multiple representations that Borror could not identify its electronic devices and that Borror did not track its electronic devices—the basis for Borror's refusal to image its devices -- Cook explained that Borror began tracking its devices in May 2018, and Borror had a spreadsheet that he updated with relevant information regarding devices, including make/model, serial number, asset tags, who the device was currently signed out to, and who previously used the device. *See* Cook Dep. 104-106. Cook affirmed that he disagreed with Borror's counsel's representations to Plaintiffs' counsel that Borror could not track its devices. Cook Dep. 161-164. Cook offered that, if he had simply been asked to provide the relevant information regarding the devices used by former employees, he could have and would have easily provided it. Cook Dep. 169: 12-24; 170: 1-7.

2.     Borror Failure to Disclose Devices Likely to Have Discoverable ESI

Borror failed to disclose devices likely to have discoverable ESI, contrary to its representation in its ESI Disclosures that the devices used by former employees "will not have discoverable ESI." *See* **EXHIBIT 5**. Borror initially explained that its employees had to login remotely through a VPN and therefore would not have any ESI on their local hard drives. *See id*. Plaintiffs pushed back, noting that such devices were, by their very nature, likely to have discoverable ESI because Borror's former employees that worked on the project used these devices during the relevant time period. *See* **EXHIBIT 6**. In addition to pushing the (now-proven false) narrative that Borror was unable to track such devices, Borror maintained that the employees lacked the ability to download or save or edit documents on the local hard drive. *See* **EXHIBIT**

19

**7**. Notwithstanding Plaintiffs' insistence that former Borror employees affirmed that they <u>could</u> save, view, or edit documents on the local hard drive, Borror continued to deny and even represented to this Court that "it is extremely unlikely" that any devices' local hard drives would have discoverable ESI. *See* email dated Nov. 18, 2020, attached **EXHIBIT 9**.

Only by way of the 30(b)(6) deposition were Plaintiffs able to determine that Borror's representations were inaccurate. Cook confirmed that employees <u>could</u> save information and documents (ESI) to their local hard drives, that employees in fact did so, and that he (Borror's IT manager) deleted such documents from the hard drive for certain employees. Cook Dep. 20: 8-12 (can save documents to local drive); 111-113. Cook acknowledged that employees would have ESI on their local hard drives such as search histories, recycle bin history, documents, and potentially emails. Cook Dep. 229-231. Mr. Cook further confirmed that documents saved on the local hard drive (and not the network) are <u>gone once they are deleted</u>. Cook Dep. 21: 18-24—22: 1-18. To the best of Cook's knowledge, Borror did not even ask the former employees, or current employees for that matter, whether their devices would have discoverable ESI on them relating to the instant litigation. Cook Dep. 231-232 and 233: 7-10.

Borror's failure/refusal to conduct a simple custodial interview of the current and former employees regarding whether they saved such information to their local hard drives would have shed light on the issue. But Borror failed to do so, and Cook affirmed that the devices from which information was deleted could have discoverable ESI that needed to be preserved in accordance with the ESI Orders:

> Q: But it's inaccurate that – that Borror is certain that those devices don't have discoverable ESI on them, correct?
>
> A: I guess so, yes.

Cook Dep. 233: 3-6.

3.    Borror Failed to Disclose Custodians

Borror failed disclose custodians in accordance with the ESI Orders since Borror's Initial ESI Disclosures in the Federal Construction Case and Purchase Agreement Case. Plaintiffs' counsel explained to Borror's counsel in an email dated November 6, 2020, that "Borror's ESI disclosures issued in the Federal Construction Case and the Purchase Agreement Case do not comply with either the express terms of the spirit of the ESI Protocols…[which] require all custodians to be listed – not just those that are already listed in the ESI Protocol." *See* **EXHIBIT 6**. In a response letter dated November 18, 2020, Borror's counsel indicated that after verifying with Borror, "there are no other individuals that are likely to have discoverable ESI" and accordingly "there [was] nothing to supplement at [that] time." *See* **EXHIBIT 8.**

Only by way of the 30(b)(6) deposition were Plaintiffs able to determine that Borror failed to disclose custodians most likely to have discoverable ESI in their possession, custody, or control in accordance with the ESI Protocol at Paragraph III(A)(1). During the deposition, Cook provided a copy of and testified about an email he sent on July 23, 2019, to RDI Corporation regarding a list of Borror employees for whom he requested the PST file to be exported to the Borror Z:/Litigation Hold folder. *See* **EXHIBIT 10**.  Cook's list included the following individuals: Tom Garske; Bethany Kungle; Matt Cook; Amanda Wilson; Lori Steiner; Bridget Everett; Danielle Sugarman; Bill Canady; Bohan Wang; Tina Shivers; Jim Klescich; Katherine Weaver; Dalia Kalgreen; and Zach Hale (emphasis added).

In sum, only by way of the 30(b)(6) deposition were Plaintiffs able to learn that Borror had failed/refused to disclose four additional custodians with discoverable ESI (Bethany Kungle, Matt Cook, Dalia Kalgreen, and Zach Hale.)  *See* **EXHIBITS 5 and 10**.  Cook acknowledged that Borror asked him to preserve all four of these employees' email accounts due to disputes with

Plaintiffs. Cook Dep. 98-99. Contrary to Borror's counsel's representation to Plaintiffs that Borror knew of no other custodians that were likely to have discoverable ESI, Borror saved emails for at least four additional custodians precisely because they expected their email accounts to contain ESI relevant to the instant litigation.

## B. Law and Argument

A litigant "is prejudiced by a [party's] dilatory conduct if the [litigant] is required to waste time, money, and effort in pursuit of cooperation which [the party] was legally obligated to provide. *See Mosley v. Spartan Freight Systems, Inc.*, No. 2:16-cv-01197, 2019 WL 1375096, at *9 (S.D. Ohio, March 27, 2019)(citing *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013)). "[E]ven if the litigant ultimately receives the sought-after documents this 'ignores the fact that the [litigant was] required to expend time, money, and effort, to compel the production of these documents that [the party] was legal obligated to provide in the first place.'" *See id*. (quoting *Brown v. Tellermate Holdings, Ltd.*, 2:11-cv-1122, 2015 WL 4742686, *7 (S.D. Ohio Aug. 11, 2015). "[T]his, in and of itself, satisfies the prejudice standard." *See id*. In *Mosley*, this Court explained:

> But, ignorance, without diligence, is not an acceptable excuse. The best-case scenario is that Defendants simply did not make any attempt to determine all the insurance policies they had, despite their representations and Plaintiffs' repeated attempts at obtaining this information. The worst-case scenario is that Defendants caused Plaintiffs to endure the unreasonable wait knowing all along that they had the [umbrella] insurance policy. While the Court is inclined to accept the former as true, either way, Defendants committed a sanctionable discovery violation.

*Mosley*, 2019 WL 1375096, at *8. *Mosley* points out that if the party representatives" had only 'asked the right people the right questions' regarding the umbrella policy, the Court would not be tasked with resolving the instant Motion." *See id*. at *9.

22

Rule 37(b)(2) provides a variety of sanctions that a Court may award for a party's failure to comply with a discovery order. Instead of or in addition to the sanctions described in Rule 37(b)(2), a court must order the disobedient party, the attorney, or both, to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C). "The burden of proof is on the sanctioned party to establish that its failure to comply was due to inability and not to willfulness, bad faith, or any fault of the party." *See Mosley*, 2019 WL 1375096 at *7 (citing *JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, No. 2:06-cv-0095, 2007 WL 1989752, at *4 (S.D. Ohio July 9, 2007)).

The failure to disclose, and the misleading nature of the disclosures that were provided, warrant sanctions against Borror and/or its counsel. *Mosley* explains that whether the non-disclosure was intentional or through the lack of due diligence, the result is the same—sanctions are appropriate. Like the party in *Mosley*, Borror either knew that it had the ability to track devices, and simply did not want to disclose it <u>because it does not want to image such devices</u>, or Borror acted with a complete lack of diligence in that it did not even ask its IT department manager if he tracked devices—the obvious person to ask (which he did).[6] Cook verified that he kept such information since May 2018, that such information was readily available, and that had anyone bothered to simply ask, he would have provided such information. Cook Dep. 105-106, 158-169. Instead of exercising any reasonable diligence, Borror (by and through its counsel) repeatedly (and falsely) represented to Plaintiffs that Borror could not image the devices used by former employees

---

[6] Borror has opposed imaging of the devices used by its former employees from the beginning of this litigation. First, it argued for a wholesale exclusion of such devices from imaging under the ESI Orders. When this Court decreed otherwise, Borror pivoted to a two prong strategy: (1) claiming (falsely) that it did not track devices and therefore could not image such devices (as it would not know what devices to image); and (2) falsely claiming that such devices could not have discoverable ESI because it was impossible to save to them, when in fact it was possible and employees did save documents on local devices. Borror made these representations despite never having conducted (or having its former employees subjected to) a custodial interview to determine whether they saved documents to their devices.

because Borror did not track such devices.  Only after months of repetitive correspondences, conference calls, and the taking of Cook's deposition was Plaintiffs' counsel finally able to obtain all of the information regarding devices that Borror was obligated to disclose to Plaintiffs on August 13, 2020 (30 days after the ESI Orders).

Borror's persistent efforts to avoid imaging devices was in bad faith. This Court will recall that Borror has fought the imaging of the devices of its former employees from the initial negotiations of the ESI Orders.  *See* ESI correspondence and proposed ESI protocol of Borror, which specifically excluded the imaging of non-employees (former employees) attached hereto as **EXHIBIT 11.**  Even after this Court entered the ESI Orders, which required the parties to image devices used by former employees, Borror continued to fight imaging, claiming it could not image because it did not track devices and because its devices could not possibly contain discoverable ESI.  *See* **EXHIBIT 7 AND 9.**  Borror even convinced this Court and Plaintiffs to conduct a "sample imaging," rather than full imaging as Plaintiffs have done, based upon these representations.  Only by way of the 30(b)(6) deposition were Plaintiffs able to prove these representations, to be  demonstrably false.  Borror deleted and/or wiped documents and ESI from such devices after the duty to preserve arose and without conducting any custodial interviews to properly determine whether the devices might contain discoverable ESI.  Cook Dep. 112-113 and 231-232 and 233: 7-10.  All along, Borror knew that its devices were likely to have discoverable ESI, and that it <u>could</u> track such devices, and Borror knew (and failed to disclose) that such imaging would inevitable lead to the discovery that Borror had spoliated such evidence, and Borror withheld the identity of four persons who Borror knew (or should have known) possess information that necessitates their disclosure as custodians.  Such bad faith tactics warrant sanctions.

24

### C. Remedy

Plaintiffs request as sanctions that this Court order as follows: (1) Borror be required to immediately image all devices in Borror's possession, custody, or control that were used during th the relevant time period by current or former employees who performed services relating to the project; (2) Borror pay the reasonable attorney's fees and costs associated with bringing this Motion and the additional efforts Plaintiff's counsel had to spend to obtain the information that Borror failed to disclose, including the attorney's fees and costs (including expert costs of ESI consultant) associated with obtaining the information described above, including all relevant correspondence, discovery requests, and court conferences, as well as the attorney's fees and costs (including, but not limited to, expert costs of Plaintiffs' ESI consultant) for the deposition of Borror. Had Borror and/or its counsel disclosed the information when it should have, these additional fees and costs would not have been necessary.

## IV. BORROR FAILED TO PRESERVE EVIDENCE

### A. Factual Background

#### 1. Borror Deleted Documents from Electronic Devices

Borror deleted documents from electronic devices in direct violation of the litigation hold. Borror explained its process, as determined solely by its IT department manager, Cook, for how it handles electronic devices turned in by a former employee upon the former employee's departure from Borror. *See generally* Cook Dep. 109. Upon a device being turned in by a former employee, Cook clears the device of certain ESI to prepare it for the new user, including deleting search histories, emptying recycle bins, and deleting documents:

"And then we make sure that there aren't any other files left on it. Some people will clutter their desktop with downloads. We just delete all that, empty their recycle bins and basically have

it ready so we can give it to the next employee." Cook Dep. 108: 21-24 – 109: 1-2 (emphasis added). When asked if Borror wipes the machine at all, Cook explained: "We go through the My Documents folder, make sure there's nothing in there. Make sure there's nothing left on the desktop. <u>Delete all that stuff</u>." Cook Dep. 109: 7-11 (emphasis added).

Cook admitted that Borror has used this procedure for all employees who have left since 2015, and Borror did <u>not</u> change this policy after Plaintiffs issued the litigation hold letter. Cook Dep. 112-113. Accordingly, Borror deleted documents from various computers for former employees that departed Borror even <u>after</u> Borror received a litigation hold letter, and Borror deleted documents even after Plaintiffs commenced litigation *See id.* Cook does not know whether the documents deleted from these former employees' electronic devices could be relevant or not because he did not review the titles of the documents or open the contents of the documents before deleting them. Cook Dep. 115: 5-8. Regardless, there is no dispute that these devices were used during the relevant time period by Borror now-former employees who worked on the project. Although Cook conceded that Borror has no way of knowing whether relevant documents were deleted from these devices but he acknowledges that, if former employees had such information or documents on their devices, Borror deleted them. Cook Dep. 111-113.

## 2. Borror Destroyed/Failed to Maintain Hard Drives of Terry George

Borror destroyed/failed to maintain hard drives of former employee Terry George, who signed the purchase and sale agreement in the Purchase Case. Borror's belated production of information regarding the devices of former employees indicated that two devices used by George were "retired." Borror provided no other indication, despite the fact that the ESI Orders required the parties to disclose any inaccessible data (such as "retired" devices of persons such as George who are likely to have discoverable ESI) and to preserve it. *See* ECF No. 47 in the Purchase Case,

Page ID # 207, Section III(A)(7). Not until the 30(b)(6) deposition did Oro learn that Mr. Cook put George's devices in the trash. Cook Dep. 177: 10-11. Cook then explained that he might have kept the hard drives but he could not say for sure. Cook Dep. 177: 12-16. Cook explained he couldn't remember because Borror's normal practice for retiring devices was for Cook to take the devices home to his minor children and have them physically destroy them with hammers. Cook Dep. 180-181. Cook explained that, based on Borror's protocols in place at the time, it is impossible to determine whether he has the hard drives from Terry George's devices. Cook Dep. 180: 8-23 ("They're either still in the drawer or their gone."). Regardless, the information is neither available nor accessible. Following the 30(b)(6) deposition, Plaintiffs' counsel emailed Borror's counsel on February 3, 2021, asking whether Cook had located the hard drives. To date, Borror has indicated that Mr. Cook located one hard drive, but Borror has not determined whether it can access information on that drive and Borror has provided no answer as to the second hard drive.

### 3. Failure to Preserve Ryan Freet's Computer

Borror failed to preserve the computer for former employee Ryan Freet, who was involved with the project at issue in this litigation. Borror only recently indicated that it cannot image one of the devices that Ryan Freet used during the relevant time period for the sampling order (ECF No. 96 Federal Construction Case) because Borror sent the hard drive to HP due to an alleged technical issue, and Borror did not take any steps to preserve it. *See* January 21, 2021 Email attached hereto as **EXHBIIT 12**. According to Borror, this failure to preserve occurred in April, 2020, approximately nine months after Borror's counsel received the litigation hold letter from Plaintiffs, and approximately six months after this litigation began. *See id.* Plaintiffs relied on the list of available devices in determining which Borror employees to include in the imaging sampling

27

process. Now, because of yet another failed disclosure, another device cannot be imaged or preserved.

4.    <u>Failure to Maintain Rankey/Weaver Emails</u>

Borror failed to maintain the emails of both Jeff Rankey and Kate Weaver (Prophater), despite both individuals being ESI custodians, and having discoverable information.

a.    *Jeff Rankey*

Borror impermissibly deleted emails of Jeff Rankey. Although Borror saved emails from persons such as Tom Garske "because he was the president of a division and they [Borror] needed to keep it" (Cook Dep. at 90:2 – 5) Borror did not save emails from persons like Rankey because he was purportedly a mere engineer. Cook Dep. at 90:18 – 20. Regardless, Cook testified that Rankey's emails were deleted, though he did not know when. Cook Dep. 97:3 – 7. Mr. Cook admits that he failed to request the preservation of Jeff Rankey's mailbox in his July 23, 2019, email to RDI, which requested the exportation of the PST files for 14 other Borror employees. *See* **EXHIBIT 10**. Cook testified that he did not include Jeff Rankey on his list because "it wasn't given to him as a person…[and] he had been long gone since then." Cook Dep. 101:7 – 13.

Coincidentally or not, on July 22, 2019 (one day prior to Cook requesting preservation of the 14 PST files from RDI), Borror's President Lori Steiner requested and was given full delegate access to Rankey's email account by RDI after the access was requested by Kungle. *See* **EXHIBIT 13** (604181 – Jeff Rankey RDI Ticket); (604335 – Jeff Rankey RDI Ticket). RDI's service tickets further indicate that Steiner was again granted access to Rankey's inbox on March 24, 2020. *See* **EXHIBIT 14** (704024 – Jeff Rankey RDI Ticket). Why or how Rankey's emails were deleted remains unclear, but Plaintiffs are scheduled to depose RDI on February 16, 2021.

     *b.*  *Kate Weaver*

   Cook testified that he could not find Kate Weaver's emails. Cook Dep. 95:8 – 10. Cook

explained that at one point, he thought the emails may be under her maiden name, which he thought

was Persaud, and consequently pulled that PST file. Cook Dep. 95:11 – 15. It was only later, Cook

explained, that he learned Kate's maiden name was Prophater. Cook Dep. 95:16. Cook indicated

that he has not been able to otherwise recover Rankey or Weaver's deleted emails.

     5.  <u>"The Big Clean Up"</u>

   In March 2020, RDI "went through a mass account cleanup" whereby certain accounts

and/or information being stored by RDI was deleted. Cook Dep. 84:22 – 85:5. Borror apparently

had never instructed RDI to stop any deletion of any email accounts or any standard procedures

that might otherwise delete information relevant to this litigation. Cook discovered the "cleanup"

when he "went to look in a particular folder for something, and the account – it had no data in it"

which prompted him to call RDI. Cook Dep. 85:6 – 11. RDI said they had deleted data from "pretty

much all the mailboxes on the network." Cook Dep. 85:6 – 18. When asked if this included Rankey

and Weaver's inboxes, however, Cook explained that he could not say for sure because ultimately

there is no way of now going back to determine whether or not the deletion of Rankey and/or

Weaver's emails were included in RDI's 2020 clean up. Cook Dep. 87:19 – 22; 88:15 – 18. Cook

further testified that he did not know which email inboxes were included in RDI's cleanup or

whether all information deleted therein, including emails other than Rankey's or Weaver's were

fully recovered. Cook Dep. 227:9 – 11.

   Cook acknowledged that the RDI's cleanup happened in early 2020 – <u>after</u> Plaintiffs issued

the litigation hold letter and after Plaintiffs commenced litigation. Cook Dep. 93:20 – 23. When

asked why a cleanup would take place in the middle of litigation, Cook responded that Borror "had

pulled a bunch of files, PST files and copied them out separately, and thought we [Borror] had all the ones we [Borror] needed to have." Cook Dep. 94:8 – 10.  Cook acknowledged, however, that he had no way of knowing what all was deleted in the Big Clean Up.  *See* Cook Dep. 227.  Cook was not aware of any communications with RDI asking RDI to cease the deletion or any processes by which RDI might delete Borror's emails during the litigation.

## B.    Law and Argument

Spoliation is the "destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). Prior to the Federal Rules of Civil Procedure amendments of 2015, the standard in the Sixth Circuit was that a party seeking sanctions for spoliation must establish: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the accused party destroyed the evidence with a culpable state of mind; and (3) the evidence destroyed must be relevant to the other side's claim or defense.  *See McCarty v. Covol Fuels No. 2, LLC*, 644 Fed.Appx. 372, 278 (6th Cir. 2016)(citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).  Effective December 1, 2015, however, Rule 37(e) was amended to include the following:

> **(e) Failure to Preserve Electronically Stored Information**.  If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;

    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

    (C) dismiss the action or enter a default judgment.

*See DriveTime Car Sales Company, LLC v. Pettigrew*, No. 2:17-cv-371, 2019 WL 1746730, at *3 (S.D. Ohio April 18, 2019).

    "While a litigant is under no duty to keep or retain every document in its possession...it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *See EPAC Technologies, Inc. v. HarperCollins Cristian Publishing, Inc.*, No. 3:12-cv-0463, 2018 WL 1542040, at *17 (M.D. Tenn. Mar. 29, 2018)(citing *Kemper Mortg., Inc. v. Russell*, No. 3:06–CV–042, 2006 WL 2319858, at *2 (S.D. Ohio Apr. 18, 2006) (quoting *William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984)). It is an attorney's responsibility to advise its client of the scope of its preservation duty. *John B. v. Goetz*, 879 F. Supp. 2d 787, 868 (M.D. Tenn. 2010) (citations omitted). That duty extends to all "unique, relevant evidence that might be useful to an adversary." *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). In the context of ESI, this means that, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *See id.* at 218. Because "there are many ways to manage electronic data, litigants are free to choose how this task is accomplished," so long as a "complete set of relevant documents" is retained. *Id.*

    "To show prejudice resulting from the spoliation, 'a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'" *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (alteration in original) (quoting *TLS*

*Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. 15-2121, 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017)). Prejudice "range[s] along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010)). Ultimately, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Another potential imposition regarding spoliation, which is not classified as a sanction, is that a Court may, upon a preliminary showing of spoliation, allow a party to obtain and inquire into the litigation hold letters and the litigation hold process including attorney client and/or attorney work product communications relating to litigation holds. *See Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours and Co.*, No. 2:09-cv-1081, 2013 WL 5311292, at *3 (S.D. Ohio Sept. 20, 2013)(citing and applying *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631, at *2 (D. N.J. Aug. 4, 2009)). "Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs the letters are discoverable." *See Major Tours* (citing *Keir v. Unumprovident Corp.*, No. 02–CV–8781(DLC), 2003 WL 21997747 at *6 (S.D.N.Y. Aug.22, 2003) (allowing detailed analysis of emails pertaining to defendant's preservation efforts after finding that electronic records which had been ordered preserved had been erased). *See also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 nn. 15–16 (S.D.N.Y.2004) ("*Zubulake V*" ) (disclosing the details of counsel's litigation hold communication after discovering that at least one e-mail had never been produced); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 634 (D.Colo.2007) (permitting plaintiff to take a Rule 30(b)(6) deposition to explore the procedures defendants' counsel took "to identify,

preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the present litigation had begun).

*Major Tours* holds that the moving party made a preliminary showing of spoliation by pointing to corporate deposition testimony wherein the corporate representative did not know the extent of the litigation hold and admitted to not saving information and deleting information. *See Major Tours*, 2009 WL 2413631, at *3. Moreover, *Major Tours* holds that evidence concerning the witnesses ignorance regarding a litigation hold and the undisciplined retention policies, coupled with a delay in implementing a litigation hold constituted a sufficient preliminary showing of spoliation so as to warrant inquiry into litigation hold letters and processes, even if they contained attorney-client and/or attorney work-product information. *See id.*; *see also City of Colton v. American Promotional Events, Inc.*, No. 09-01864, 2011 WL 13223880 (C.D. Cal. Nov. 22, 2011). In *City of Colton*, the Court orders disclosure of litigation hold letters and the related litigation hold efforts because the disobedient party had failed to implement a litigation hold and/or had a lack of awareness of a litigation hold. Under such circumstances, courts are not required to find actual spoliation. *See City of Colton v. American Promotional Events, Inc.*, 2011 WL 13223880 at *5 (citing *Major Tours* at *5 and fn. 4 (ordering the production of litigation hold letters but declining to rule at the time as to whether spoliation sanctions should be imposed).

Plaintiffs should be allowed to inquire into any litigation hold letters received or issued to Borror regarding the instant litigation. Plaintiffs have made at least a preliminary showing of spoliation, as the facts demonstrate that (1) Borror had an obligation to preserve evidence at least as early as July 22, 2019, upon receipt of the litigation hold letter from Plaintiffs' counsel; (2) Borror destroyed, deleted, and or lost certain evidence after its obligation to preserve arose, including, but not limited to ESI from the hard drives of the electronic devices of former employees

who worked on the project, deletion of the Rankey and Weaver emails, the hard drives of Terry George, the device of Ryan Freet, and the information destroyed in the Big Clean Up; (3) the deleted evidence is not otherwise recoverable (see Cook Dep. 86-88, 116: 5-21, 180: 15-18); and (4) Plaintiffs have suffered prejudice because the deleted or lost ESI is from devices or email accounts used by current and former employees of Borror during the time period in which they worked almost exclusively on Plaintiffs' project.

Borror acknowledged that it deleted electronic documents and other ESI from the devices of former employees who worked on the project, and that Borror did so even after Plaintiffs had issued the litigation hold letter. Borror acknowledged that it failed to change its document / email retention policies upon learning of the potential for litigation, and that apparently, it did not warn RDI, its third-party email service provider, to cease any deletions, including those that occurred during the "Big Clean Up." Borror deleted search histories, potentially emails saved locally, recycle bins, and entire libraries of documents saved on these former employees' hard drives.

This ESI is relevant to the litigation because it was saved on devices used by key former employees during the time period in which they worked exclusively on the Plaintiffs' project. The emails or documents could have contained communications regarding failures on the project, defects in the construction work, Borror's knowledge of such defects, and/or the failure to cure such defects. Moreover, these ESI documents and/or communications could have contained communications with subcontractors about construction defects, deducts, budgets, or improper charges. This is sufficient to show prejudice to Plaintiffs.

Borror's handling of the litigation hold process is similar to the party's handling of the litigation hold process in *Major Tours*. Cook indicated that he did not even know what a litigation hold letter was or if he or Borror ever received the litigation hold letter issued by Plaintiffs' counsel

or any other litigation hold letter. To Cook's knowledge, the full extent of Borror's litigation hold was for Cook to request the pst files for 14 email accounts (not including Rankey's), and for a limited search to be run on those emails, said search not being saved. Cook did not know whether other people at Borror were informed of a litigation hold and what efforts, if any, Borror took to preserve information relevant to the litigation. Based on the testimony of Cook at Borror's deposition, Borror's implementation of a litigation hold is dubious at best.

### C.     Remedy

Under the circumstances, Plaintiffs need to investigate these spoliation issues further. Because Fed. R. Civ. P. 37(e) imposes different sanctions depending on culpability and/or intent, Plaintiffs do not request any specific spoliation sanctions at this time, but rather ask this Court to issue an order allowing Plaintiffs to inquire into all communications regarding Borror's litigation hold letters and/or litigation hold process regarding this litigation. This should include, but not be limited to, communications between Borror's counsel and/or Borror relating to any litigation hold regarding this matter and/or the litigation hold process (and generally Borror's and/or RDI's efforts to preserve evidence relating to these matters). This inquiry is necessary because it may show culpability or intent, which could determine the appropriate sanctions to impose upon Defendants. It would be fundamentally unfair for Borror to spoliate evidence and simultaneously refuse to provide information regarding Borror's culpability and intent relating to such spoliation. Because Plaintiffs have made a preliminary showing of spoliation, Plaintiffs should be allowed to fully inquire into such matters.

## V.     CONCLUSION

Borror should be sanctioned for its failure to prepare its designated deponent Mr. Cook, failure to disclose device tracking for former employees, failure to conduct any form of custodial

interviews for current or former employees regarding use of their local drives on devices, and failure to disclose all custodians. Borror should also be sanctioned for its spoliation of various local hard drives, various emails, Terry George's hard drives, and Freet's computer, Plaintiffs respectfully requests that Defendants, Borror Construction and Sellers be sanctioned for the discovery conduct described above.

Respectfully submitted,

/s/ Lucas K. Palmer
David M. Scott (0068110)
Lucas K. Palmer (0080838)
Krista D. Warren (0097842)
**BRENNAN, MANNA & DIAMOND, LLC**
250 S. Civic Center Dr., Ste. 300
Columbus, Ohio 43215
Telephone:    (614) 246-7500
E-mail:    dscott@bmdllc.com
lkpalmer@bmdllc.com
kdwarren@bmdllc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of February, 2021, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Lucas K. Palmer
Lucas K. Palmer (0080838)

4836-3391-8171, v. 1

36