**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ORO CAPITAL ADVISORS, LLC,** | : | |
| et al., | : | |
| | : | **Case No. 2:19-cv-5087** |
| **Plaintiffs,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **BORROR CONSTRUCTION CO., LLC,** | : | |
| et al., | : | |
| | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **THE CARTER-JONES LUMBER CO.,** | : | |
| **D/B/A HOLMES LUMBER CO.,** | : | |
| | : | **Case No. 2:20-cv-04894** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ORO RB SPE OWNER, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on three motions: (1) a Motion to Dismiss by Defendant Canal Services Corporation d/b/a Canal Flooring ("Canal Flooring" or "Canal") (ECF No. 53); (2) a Motion to Dismiss by Defendant The Carter-Jones Lumber Co. d/b/a/ Holmes Lumber Co. ("Holmes Lumber" or "Holmes") (ECF No. 69); and (3) a Motion for Judgment on the Pleadings in Part by Defendants Borror Construction Company, LLC ("Borror Construction" or "Borror"); BPI Associates, LLC ("BPI"); and LoriBeth Steiner, Tom Garske, Danielle Borror Sugarman,

1

Matthew Devereaux, Jeffrey Rankey, and Tina Shivers (together, the "Individual Borror Defendants"). For the reasons set forth below, the Court **GRANTS** Canal Flooring's Motion to Dismiss [#53], **GRANTS** Holmes Lumber's Motion to Dismiss [#69], and **GRANTS** the Motion for Judgment on the Pleadings in Part by Borror, BPI, and the Individual Borror Defendants [#84].

## II. BACKGROUND

Plaintiffs Oro Capital Advisors, LLC ("Oro Capital"); Oro Karric South, LLC; Oro Karric North, LLC; Oro Silvertree, LLC; Oro Springburne, LLC; Oro RB SPE Owner, LLC ("Oro Runaway Bay"); and Oro Island Club SPE Owner (together, the "Oro Entities" or "Oro") own and operate residential properties located in central Ohio. (Am. Compl. ¶¶ 34−44, ECF No. 50). On June 25, 2018, Oro Capital, acting as an agent for all Oro Entities, entered into a written contract with Borror Construction (the "Borror Construction Agreement" or "Agreement"). (*Id.* ¶¶ 27−28). Under the contract, Borror agreed to provide construction management services for renovations on certain residential apartment complexes in Columbus. The most substantial of these projects was planned to occur at the Runaway Bay property ("Project Runaway Bay" or the "Project") in Columbus, Ohio. (*See id.* ¶¶ 24, 26, 88). Borror served as the construction manager for Project Runaway Bay and subcontracted with Canal Flooring, Holmes Lumber, BPI, and at least two other companies to perform work at Runaway Bay. (*See id.* ¶¶ 88, 98, 134). Specifically, Canal Flooring agreed to remove and install flooring in portions of at least 75 apartment units, and Holmes Lumber agreed to provide labor and materials to renovate balconies and to complete other carpentry work. (ECF No. 76 at 7). BPI prepared and submitted certain permits related to the construction work at Runaway Bay. (Am. Compl. ¶ 232, ECF No. 50).

Taking the facts as stated by Oro, Borror began renovations on the properties between June 25, 2018 and July 19, 2019, but the work was never finished. (Am. Compl. ¶ 47, ECF No. 50). Borror informed the Oro Entities that it would no longer complete the entire project but represented that it would finish the renovations it had already begun. (*Id.* ¶ 58). Subsequently, on July 23, 2019, Borror's agents told the Oro Entities that Borror would have the partially-started renovations completed by August 2, 2019. (*Id.* ¶ 59). Borror later recanted on this statement and abandoned all unfinished work. (*Id.* ¶ 61). In addition to the abandoned work, Oro also asserts that it discovered myriad problems relating to the work on the Project that was finished, including construction defects and defective work on the balconies constructed by Holmes Lumber (which was actually constructed by sub-subcontractors) and flooring installed by Canal Flooring (also performed by sub-subcontractors). (ECF No. 76 at 7−8).

The Oro Entities report that some of the subcontractors Borror hired, both for Project Runaway Bay and for other projects, "filed or have threatened to file mechanics' liens"[1] due to "Borror Construction's failure to pay certain [subcontractors] for the Renovations they claim to have performed[.]" (*Id.* ¶ 76). Holmes Lumber was among the subcontractors who threatened to file a lien. (*Id.* ¶ 86). To prevent Holmes Lumber from filing an affidavit for a mechanics' lien at the Runaway Bay Property, Oro Runaway Bay entered into an escrow agreement with Borror and Holmes, whereby Oro agreed to place in escrow "the total sum of $92,099.83—the amount Holmes Lumber claimed it was due for those portions of the Renovations it claims it performed." (*Id.* ¶¶ 87−90, Ex. 10).

---

[1] Ohio's mechanics' lien law protects contractors, subcontractors, and other construction project laborers in the event of non-payment. Liens can be placed on property that a lien claimant worked on or supplied materials for. Ohio Rev. Code § 1311.02 *et seq*.

The Oro Entities brought a Complaint in the Southern District of Ohio ("the Federal Construction Case") on November 20, 2019, asserting ten contract and tort claims against Borror Construction and some of the Individual Borror Defendants.[2] (ECF No. 1). In response, these Defendants filed a Motion to Dismiss. (ECF No. 16). This Court granted this motion, dismissing counts three through eight of the Complaint for failure to state a claim on July 15, 2020.[3] (ECF No. 41). Additionally, Borror filed a counterclaim against the Oro Entities. (ECF No. 45).

Plaintiffs amended their Complaint on August 27, 2020, this time including eleven total causes of action and adding as Defendants BPI, Holmes Lumber, Canal Flooring, and Individual Defendants Matthew Devereaux, Jeffrey Rankey, and Tina Shivers. (Pls.' Am. Compl., ECF No. 50). Defendants BPI, Borror, and the Individual Defendants responded by filing a Counterclaim against the Oro Entities. (ECF No. 52). Meanwhile, Defendant Canal Flooring moved to dismiss for failure to state a claim (ECF No. 53), as did Defendant Holmes Lumber (ECF No. 69). Defendants Borror Construction, BPI, and the Individual Borror Defendants also filed a Motion for Judgment on the Pleadings in Part on November 24, 2020. (ECF No. 84).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v.*

---

[2] The original Individual Borror Defendants included Douglas Borror, Danielle Borror-Sugarman, Tom Garske, and LoriBeth Steiner.

[3] The causes of action that the Court dismissed include promissory estoppel, breach of fiduciary duties, conversion, two counts of fraud, and negligent construction.

*Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the Court "must accept all well-pleaded factual allegations in the complaint as true," the Court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level."

## IV. LAW & ANALYSIS

In matters that are brought in federal court due to diversity jurisdiction, the *Erie* doctrine requires district courts to apply the same substantive law that would have been applied if the action had been brought in a state court within the federal court's jurisdiction. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007). Accordingly, this Court applies Ohio law to interpret the contracts at issue here.

### A. Motions to Dismiss

In the Amended Complaint, the Oro Entities added both Holmes Lumber and Canal Flooring as Defendants, bringing one count of unjust enrichment against each. (ECF No. 50 ¶¶ 227−234). The two motions to dismiss by Holmes and Canal are almost identical: Holmes moves this Court to dismiss Oro's unjust enrichment claim against it, which is Count Eight of the Amended Complaint; and Canal makes the same request with respect to Count Nine. Both Holmes and Canal argue that Oro has failed to state viable unjust enrichment claims because Oro did not directly confer a benefit on either Holmes or Canal. Instead, Oro paid Borror pursuant to the Construction Contract, and then Borror paid its subcontractors under separate agreements. (Am. Compl., ECF No. 50 ¶¶ 27−28, 45).

5

With respect to its unjust enrichment claims against Holmes and Canal, Oro's Amended Complaint also alleges the following:

> . . . Defendant[s] Holmes Lumber [and Canal Flooring] have been unjustly enriched, to Plaintiff's detriment, in an amount exceeding $75,000 [each] as a result of Defendant Holmes Lumber [and Canal Flooring] receiving payment for work and/or materials related to the balconies, posts, and/or other carpentry work [or flooring] at the Runaway Bay Project, when such work is incomplete, defective and/or not completed in accordance with the Borror Construction Agreement.

> . . . Holmes Lumber [and Canal Flooring] received payment for such work indirectly from the funds that Plaintiffs provided to Borror Construction and which Borror Construction then paid to Holmes Lumber [and Canal Flooring].

> . . . It would be unjust, under the circumstances, to allow Holmes Lumber to retain funds that it received indirectly from Plaintiffs for work and/or materials related to the balconies at the Runaway Bay Property when such work and/or materials are defective.

(*Id.* ¶¶ 228–34). In essence, Oro paid funds to Borror, which were used to compensate both Holmes and Canal. Oro alleges that both Holmes and Canal knew that the payment they received came from Oro. Accordingly, Oro argues that a "direct tie exists between the money paid by Oro" and the allegedly defective work and materials that Holmes and Canal provided to Oro at the Runaway Bay property. (ECF No. 73).

Additionally, the Court takes judicial notice of allegations Holmes asserts in an action related to this case, which Holmes filed in state court and has since been removed to this Court (the "Removed Action").[4] *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 5106.4 ("Since the enactment of Rule 201, federal courts notice the records of any court, state of federal."). The Removed Action discusses the same transaction at issue in the case sub judice. Holmes'

---

[4] *The Carter-Jones Lumber Co. d/b/a Holmes Lumber Co. v. Borror Constr. Co.*, No. 2:20-cv-04894 (S.D. Ohio).

Complaint in the Removed Action alleges that Holmes "furnished construction labor and materials to and for the benefit and improvement of" Project Runaway Bay, and that Oro's "acceptance and use of [Holmes'] labor and materials created an implied contract that Oro would pay [Holmes] the reasonable value of the labor and materials." (2:20-cv-0489, ECF No. 1, Ex. B-1 ¶¶ 12−13).

Under Ohio law, an unjust enrichment claim requires the plaintiff to prove the following elements: (1) the plaintiff has conferred a benefit upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances that make it unjust to do so without payment. 18 Ohio Jur. 3d Contracts § 279. *See also Patel v. Krushna SS L.L.C.*, 2018-Ohio-263, 106 N.E.3d 169, 176 (8th Dist.); *Barrow v. Village of New Miami*, 2018-Ohio-217, 2018 WL 500170, at *3 (12th Dist.), *appeal not allowed*, 152 Ohio St. 3d 1489, 2018-Ohio-2154, 99 N.E.3d 425 (2018); *Pipino v. Norman*, 2017-Ohio-9048, 101 N.E.3d 597, 611 (7th Dist.). The purpose of unjust enrichment is "to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Jones v. Jones*, 179 Ohio App. 3d 618, 2008-Ohio-6069, 903 N.E.2d 329, at ¶ 27 (2008)). Because unjust enrichment is a quasi-contractual remedy "a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (citing *Wuliger*, 567 F.3d at 799).

When determining whether the plaintiff has conferred a benefit on the defendant, context is critical. The relationship between the parties, the type of benefit, and the nexus between the two all help courts determine whether a plaintiff has established a prima facie case for an unjust enrichment claim. *Compare Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.* 2017-Ohio-1462, 81 N.E.2d 499, at ¶ 27 (10th Dist.) (holding that an auto body shop's performance of

repairs did not constitute a benefit conferred on an insurance company because the insured clients received the direct benefit of the repairs and the relationship between the body shop and the insurance company was "too indirect" for purposes of unjust enrichment), *with Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2020 WL 5760445, at *2 (S.D. Ohio Sept. 28, 2020) (finding that delivery drivers' use of their personal vehicles conferred a benefit on a pizza franchiser even though it benefitted "the franchisee's bank accounts first"). Accordingly, courts sometimes require a direct economic transaction between the plaintiff and the defendant to find that a sufficient benefit conferred exists, but this requirement is largely limited to cases involving manufacturing supply chains. *Clark*, 2020 WL 5760445, at *2. *See also Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (requiring an economic transaction because "an indirect purchaser cannot assert a common-law claim for . . . unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser.").

As this Court recently explained, "Determining whether a benefit has been conferred does not require a rigid application of whether the two parties were directly engaged in an economic transaction. Rather, the core inquiry is whether the benefit conferred 'contains an element of causation.'" *Clark*, 2020 WL 5760445, at *2−3; *see also Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 824 (N.D. Ohio 2006) (quoting *Fairfield Ready Mix v. Walnut Hills Assoc.*, 60 Ohio App. 3d 1, 3, 572 N.E.2d 114 (1988) ("To recover under a theory of unjust enrichment, the complaining party must show not only loss on one side but gain on the other, with a tie of causation between them.") (internal quotations omitted). For this reason, courts sometimes permit "indirect economic transactions" to meet the "benefits conferred" element of an unjust enrichment claim. In *Randleman*, for example, the court allowed homeowners who refinanced their loans through various mortgage lenders to maintain an unjust enrichment claim against an insurer who

charged excessive title insurance premiums. 465 F. Supp. 2d at 823−25. The court held that a sufficient "transactional nexus" existed because the homeowners were actually the insurer's customers and the mortgage lenders served as nothing more than a pass-through entity. *Id.* at 825.

In the construction context, Ohio courts sometimes allow unjust enrichment claims based on a similar "transactional nexus." It is not uncommon for a subcontractor to bring an unjust enrichment claim against a property owner when the general contractor fails to pay the subcontractor. *See Booher Carpet Sales, Inc. v. Erickson*, No. 98-CV-0007, 1998 WL 677159, at *6 (Ohio Ct. App. Oct. 2, 1998). Such claims "developed as a means for overcoming the lack of privity between most property owners and the subcontractors who provide materials and services for property improvements." *Id.* (citing 62 A.L.R.3d 288, § 1[c] (1975)). This is because:

> Generally, a property owner contracts with a general or primary contractor and the latter contracts with the subcontractor. The subcontractor then looks to the general contractor for payment. When some event occurs in which the general contractor cannot or will not pay, a lack of contractual privity between the subcontractor and the property owner usually will prevent the former from suing the latter for breach of contract.

*Booher*, 1998 WL 677159, at *6 (citing *Pendleton v. Sard*, 297 A.3d 885, 889 (Me. 1972). Because subcontractors do not directly contract with the property owner and are therefore unable to recover from the owner on a contract claim, Ohio courts have recognized that an inequitable outcome would result without allowing the subcontractor to bring a quasi-contract claim against the owner. *Booher*, 1998 WL 677159, at *6. Thus, when a general contractor fails to pay and "the owner has not yet paid the contractor for the aspect of the job at issue," the subcontractor may seek payment from the owner under a theory of unjust enrichment. *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772–73 (N.D. Ohio 2004) (citing *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 861 (6th Cir. 2002)); *see also Brower Prods. Inc. v. Musilli*, 1999 WL 317122, at *2

(Ohio Ct. App. 1999) ("Ohio law allows a sub-contractor or materialman to pursue unjust enrichment as a theory of liability" against the property owner); *Ross–Co Redi Mix Co. v. Steveco, Inc.,* 1996 WL 54174, at *3 (Ohio Ct. App. 1996). In other words, "when justice requires it, courts will recognize a quasi-contract formed between the parties based on unjust enrichment." *Booher*, 1998 WL 677159, at *6.

In order for a subcontractor to pursue an unjust enrichment claim against a property owner, however, the general contractor must be both unavailable for judgment and unable to pursue the owner for the payment the subcontractor seeks. *Id.; see also Coyne v. Hodge Constr. Inc.*, 2004-Ohio-727, at ¶ 6 (9th Dist. Feb. 18, 2004) (upholding the dismissal of an unjust enrichment claim because the general contractor was available for judgment, remained a party to the suit, and had not filed for bankruptcy). This is because the unjust enrichment claim "will not lie when the possibility exists that either the subcontractor could make a double recovery or the [property owner] could pay twice for the same performance." *Booher*, 1998 WL 677159, at *6 (citing *Pendleton*, 297 A.2d at 895; *Turn-A-Lum Lumber v. Patrick*, 85 Or. App. 719, 721, 770 P.2d 964, 965 (1989)) (holding that a subcontractor must exhaust remedies against the general contractor before pursuing an unjust enrichment claim against the property owner).

The Court distinguishes the case sub judice from these above cases. Rather than a subcontractor pursuing an unjust enrichment claim against an owner, here, Oro (the owner) has brought the claim against subcontractors Holmes and Canal. This role reversal is significant because the movant's lack of recourse to recover under contract is essential for establishing the transactional nexus between the parties and bringing an unjust enrichment claim successfully in the construction space.

Oro attempts to recover funds it gave to Borror for work on the Runaway Bay Project that Oro says was deficient. But the Borror Construction Agreement governs both the work required at Runaway Bay and the payment Oro owed to Borror. Therefore, even if Holmes and Canal completed their portions of the Runaway Bay Project work deficiently, as Oro alleges, Oro could still recover its losses under a breach of contract claim against Borror. Since there is no evidence suggesting that Borror is bankrupt or unavailable for judgment, Oro must exhaust this remedy before pursuing an unjust enrichment claim against the subcontractors. Without this exhaustion, justice does not require the Court to recognize a quasi-contract between the parties or to allow Oro to recover against Holmes or Canal on a theory of unjust enrichment. Accordingly, the Court **GRANTS** both Holmes' and Canal's motions. Counts Eight and Nine of the Amended Complaint are **DISMISSED**.

### B. Motion for Judgment on the Pleadings in Part

At issue here are four of the claims Oro asserted against the Individual Borror Defendants and Borror Construction. Specifically, those claims include: negligent misrepresentation, as to Defendants Steiner, Borror-Sugarman, Garske, Devereaux, Rankey, and Borror Construction (Count Four); fraud, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Five); negligent misrepresentation, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Six); and negligent construction, as to BPI (Count Seven).

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). The standard applicable to a motion for judgment on the pleadings is the same as that which applies to a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (citing *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir.

2010)). The Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citations omitted). The plaintiff must "provide the grounds for its entitlement to relief" and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted). The Court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

In general, where a Rule 12(c) motion presents matters outside the pleadings and not excluded by the court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). The motion is not converted to one for summary judgment, however, where the Court considers "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] . . . .'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335−36 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment.") (citations omitted). Additionally, the Court may consider "exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

1.   Negligent Misrepresentation (Counts Four and Six)

Oro alleges two negligent misrepresentation claims against Borror Construction and various other Individual Borror Defendants. Count Four alleges misrepresentations about Borror's experience in the construction field. (Am. Compl. ¶ 162, ECF No. 50). Count Six alleges misrepresentations concerning an alleged "per unit maximum pricing process." (*Id.* ¶ 200).

In Ohio, a party may prevail on a claim for negligent misrepresentation by proving that a defendant: (1) supplies false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied on the information; and (5) while the defendant failed to exercise reasonable care in obtaining or communicating the information. *Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, No. 2:14-CV-91, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014) (citing *Picker Int'l v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998)); *see also Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 1, 534 N.E.2d 835, 838 (Ohio 1989). Additionally, Ohio law provides:

> A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction. This relationship occurs only in 'special' circumstances. Usually the defendant is a professional (e.g., an account) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special' relationship does not exist in ordinary business transactions. Those who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks.

*Palmer-Donavin Mfg. Co.*, 2014 WL 2767665, at * 8 (internal quotations omitted) (quoting *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006) (recognizing that a 40 year relationship between a distributor and a manufacturer "is not the kind of relationship that is a necessary for . . . negligent misrepresentation" and dismissing the claim); *see also* 50 Ohio Jur. 3d Fraud and Deceit § 82 ("[A] core requirement in a claim of negligent misrepresentation is a

special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions; this relationship occurs only in special circumstances.").

Oro argues it has pled that a special relationship existed between Oro and Borror Construction and the other Individual Borror Defendants. To support this claim, Oro relies solely on the fact that Oro designated and trusted Borror to act as the construction manager under the Borror Construction Agreement. (ECF No. 90 at 4; ECF No. 50, Ex. 1). This Court, however, previously concluded in its July 15, 2020 Opinion and Order that Borror's status as the construction manager did not create a fiduciary relationship between the two parties. (ECF No. 41 at 6) ("Nothing about this relationship . . . required Defendants to act primarily for the benefit of Plaintiffs or gave Defendants a position of superiority or influence over Plaintiffs."). Rather, this Court found that Oro and Borror had "purely a business relationship based on mutual trust." (*Id.*).

Although the special relationship requirement in a negligent misrepresentation claim is not exactly equal to a fiduciary relationship, the Court's earlier holding applies here too. The "special relationship" for negligent misrepresentation purposes hinges on whether the defendant is "in the business of supplying information for the guidance of others" and the plaintiff pays the defendant for information to make business decisions. *Ziegler*, 464 F. Supp. 2d at 738. Similarly, a fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence." *Hope Acad. Broadway Campus v. White Hat. Mgt., L.L.C.*, 145 Ohio St. 3d 29, 2015-Ohio-3716, 46 N.E.3d 665, at ¶¶ 40−44 (Ohio 2015). For both, the central question "is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking." *See id.* Such

relationships require more than "the generalized business obligation of good faith and fair dealing" that a contract imposes. *In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002).

Moreover, courts have provided specific examples of special relationships for purposes of negligent misrepresentation claims. Those examples include attorneys, surveyors, abstractors of title, banks dealing with nondepositors' checks, and investment advisors. *See Ziegler*, 464 F. Supp. 2d at 738; *Alton v. Wyland*, 72 Ohio App. 3d 685, 689, 595 N.E.2d 993, 996 (10th Dist. Franklin Cty. 1991) (finding that one who gives investment advice for a fee may be liable for negligent misrepresentation); *cf. Picker Internat'l, Inc. v. May Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (finding that a software licensor did not have the requisite special relationship with a licensee because nothing indicated the relationship was anything other than contractual). Oro has not alleged that Borror or the Individual Borror Defendants were in the business of supplying the information at issue here, and there is no other evidence that the parties had a special relationship as required by negligent misrepresentation claims. The Court therefore **DISMISSES** Oro's negligent misrepresentation claims under both Counts Four and Count Six.

### 2. Claim for Fraud (Count Five)

In Count Five of the Amended Complaint, Oro raises claims of fraud against Defendants Shivers, Garske, Rankey, and Borror Construction. Oro argues that Borror misrepresented its per-unit prices, charging Oro more for most units than the prices to which the two parties had agreed.

According to the Oro Entities, on November 20, 2018, representatives from both Borror and Oro agreed via telephone that the two companies would calculate the maximum price that Oro would pay for each unit based on a pre-walk-through form (a "Walk Sheet"), which Oro and Borror would both sign, and which would include the "items, labor, and equipment needed for the renovation of the unit." (Am. Compl. ¶¶ 186−91, ECF No. 50). Borror promised not to charge Oro

more than the maximum price set forth in the applicable Walk Sheet for each unit. (*Id.* ¶ 193). Oro alleges that Borror charged more than the amounts agreed to by: (1) incorporating general costs for project supervisors/engineers, project superintendents, and general on-site office space in the cost for individual units, beyond the amounts listed in the Walk Sheets; and (2) shifting specific per-unit costs into the general conditions costs, in contravention of the terms of the Borror Construction Agreement. (*Id.* ¶¶ 195−96).

Oro and Borror signed the Borror Construction Agreement on June 25, 2018. (ECF No. 50, Ex. 1). In relevant part, the Agreement provides the following:

### ARTICLE 6 COMPENSATION

6.1 The Owner shall compensate the Construction Manager for Work performed on the following basis:

6.1.1 the Cost of the Work[5] as allowed in ARTICLE 7; and

6.1.2 the Construction Manager's Fee paid in proportion to the Work performed subject to adjustment as provided in section 6.4.

6.2 Payment for Work performed shall be as set forth in ARTICLE 8.

6.3 CONSTRUCTION MANAGER'S FEE The Construction Manager's Fee shall be . . . [a] percentage of the cost of work as defined in Article 7. The fee percentage shall be 9%. . . .

6.5 PRECONSTRUCTION SERVICES COMPENSATION The Construction Manager shall be compensated for Preconstruction services, as set forth in sections 3.2 and 3.3 as follows: Actual cost plus fee as identified in Article 6.3.

### ARTICLE 7 COST OF THE WORK

---

[5] "Work" is defined in the Agreement as "the construction and services necessary or incidental to fulfill the Construction Manager's obligations for the Project in conformance with this Agreement and other Contract Documents. The Work may refer to the whole Project or only a part of the Project if work is also being performed by the Owner or Others. (ECF No. 50, Ex. 1 § 2.4.18).

7.1 The Owner agrees to pay the Construction Manager for the Cost of the Work as defined in this article. This Payment shall be in addition to the Construction Manager's Fee stipulated in section 6.3.

7.2 COST ITEMS The Cost of the Work includes:

> 7.2.1 Wages paid for labor in the direct employ of the Construction Manager in the performance of the Work as set forth below and which are not subject to audit. . . .

7.2.2 Salaries of the Construction Manager's employees . . . .

7.2.3 Cost of all employee benefits and taxes . . . .

7.2.4 Reasonable transportation, hotel and moving expenses . . . .

7.2.5 Cost of all materials, supplies and equipment incorporated in the Work . . . .

7.2.6 Payments made by the Construction Manager to Subcontractors . . . .

7.2.8 Rental charges of all necessary machinery and equipment . . . .

7.2.9 Cost of the premiums for all insurance and surety bonds . . . .

7.2.13 All costs associated with establishing, equipping, operating, maintaining and demobilizing the field office. . . .

(*Id.*).

Under Ohio law, the elements of fraudulent misrepresentation are: (1) a representation or a concealment of fact when there is a duty to disclose; (2) that is material to the transaction at hand; (3) made falsely, either with knowledge or with utter disregard to its truthfulness; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by the reliance. *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011). Moreover, "[i]t is well-settled that a fraud claim cannot be based on an alleged fraud that is directly contradicted by a signed writing. *Axios, Inc. v.*

*Thinkware, Inc.*, No. 1:15-CV-379, 2015 WL 029227, at *7 (S.D. Ohio Aug. 26, 2015) (dismissing fraud claims because the misrepresentations were contradicted by a signed license agreement) (citing *Marion Prod. Credit Ass'n v. Cochran*, 40 Ohio St. 3d 265, 533 N.E.2d 325, 334 (Ohio 1988) ("[A]n oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.")); *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 680 (Ohio Ct. App. 2000) ("[A] principle, analogous to the parol evidence rule and the Statute of Frauds, holds that a fraud claim may not be maintained where the alleged fraud is directly contradicted by a signed writing."); *see also Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 690 (S.D. Ohio 2018) ("A claim cannot be sustained when a plaintiff seeks to contradict the plain language of a written contract or disclosure.").

Oro's fraud claim is based on Borror's alleged misrepresentations during the November 20, 2018 phone call. (Am. Compl. ¶ 193, ECF No. 50). These misrepresentations, however, directly contradict provisions in the Borror Construction Agreement. The Agreement prescribes the amount Borror would charge Oro for the Renovations and the method it would use to determine the amount. Articles 6 and 7 of the Agreement detail that Borror would be paid based upon the cost of work performed plus a manager's fee. (ECF No. 50, Ex. 1). Specifically, the Agreement defines the cost of the work to include wages for project supervisors, engineers, and superintendents. (*Id.* § 7.2.1). It also includes costs for the on-site office space. (*Id.* § 7.2.13). If Borror promised that the maximum price per unit price would be based entirely on the Work Sheets, as Oro alleges, those promises would directly contradict the terms of the Agreement. Both the amount that was to be paid and the mechanism for payment are expressly provided for in the Agreement.

Moreover, Article 8 prescribes procedures for how and when payments would be made. Per the Agreement, Borror was to submit to Oro a monthly pay application consisting of the "Cost of Work performed up to the last Day of the month." (*Id.* § 8.1.1). If Oro disagreed with the amount included in any pay application, either in whole or in part, Oro was to provide written notice of its rejection to Borror within ten business days. (*Id.* § 8.1.2). In this scenario, if Oro and Borror could not agree on a revised amount, Oro was to pay the amount not subject to the rejection within fifteen business days, while the disputed amount was resolved.[6] (*Id.*). That the Agreement prescribes a payment procedure in the event of a disputed amount owed further undermines Oro's claim of fraud. The Agreement expressly governs the amounts Borror could charge Oro, the process for calculating those amounts, and any dispute concerning the amounts. Any alleged misrepresentation concerning either the amount charged or the mechanism employed for payment (including maximum unit pricing) is directly contradicted by the Borror Construction Agreement and cannot be used to support a fraud claim against Borror.

---

[6] This provision reads in full:

> 8.1.2 Within ten (10) business Days after receipt of each monthly application for payment, the Owner shall give written notice to the Construction Manager of the Owner's acceptance or rejection, in who or in part, of such application for payment. Within fifteen (15) business Days after accepting such application, the Owner shall pay directly to the Construction Manager the appropriate amount for which application for payment is made, less amounts previously paid by the Owner. If such application is rejected in whole or in part, the Owner shall indicate the reasons for its rejection. If the Owner and the Construction manager cannot agree on a revised amount then, within fifteen (15) business Days after its initial rejection in part of such application, the Owner shall pay directly to the Construction Manager the appropriate amount for those items not rejected by the Owner for which application for payment is made, less amounts previously paid by the Owner. Those items rejected by the Owner shall be due and payable when the reasons for the rejection have been removed. . . .

(ECF No. 50, Ex. 1 § 8.1.2).

In sum, the misrepresentations that Oro alleges directly contravene the Borror Construction Agreement and therefore cannot serve as the basis for a claim of fraud as a matter of law. Accordingly, the Court **DISMISSES** Count Five of the Amended Complaint.

### 3. Negligent Construction Claim (Count Seven)

Finally, in Count Seven, Oro brings a negligent construction claim against BPI. Oro alleges that BPI breached its duty of care by "failing to properly design, engineer, construct, and/or obtain permits" for the balconies as part of the Runaway Bay Project, as an agent of Borror Construction and/or under its instruction and authority. (ECF No. 50 ¶ 224). Oro claims that BPI's negligence "directly and proximately caused [Oro] to suffer damages in an amount exceeding $75,000[.]" (*Id.* ¶ 226). Borror moves to dismiss this claim because it is barred by the economic loss rule.

The economic loss rule, which shields a party from tort liability when damages are purely economic and not arising from physical harm to persons or property, applies to negligent construction claims. *See Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609, 615, 653 N.E.2d 661, 667 (1995) (citing *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 3, 560 N.E.2d 206, 208 (1990) ("[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.")). The economic loss rule applies even when the parties are not in privity of contract. *See, e.g., All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x 554, 559−60 (6th Cir. 2006) (recognizing that Ohio's economic loss rule applies regardless of the presence or absence of privity, at least between commercial entities); *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 11 (finding that a property owner could not sue a subcontractor in tort for purely economic damages even

though the owner and the subcontractor were not in privity of contract); *Spring Creek Condo. Ass'n v. Colony Dev. Corp.*, No. 07AP-671, 2008 WL 802729, at *3 (Ohio Ct. App. Mar. 27, 2008) (barring a condominium association's negligence claims against an architect hired by a general contractor due to the economic loss rule).

Oro does not describe the type of damages that allegedly resulted from BPI's negligent construction under Count Seven of the Amended Complaint, but elsewhere in the Amended Complaint, Oro does contend that its balconies were damaged. In its Memorandum in Opposition to the Motion for Judgment on the Pleadings ("Opposition"), Oro "alleges that BPI's failures relating to the design, engineering, and/or construction resulted in property damage to Oro—mainly, Oro had Holmes Lumber remove portions of the old balconies and replaced them with new balconies that have defects, including defects that violate applicable building codes." (ECF No. 90 at 6). The Opposition argument, however, includes a specific assertion of property damage and an allegation of causal connection between BPI's alleged negligence and Oro's property damages that do not appear in the Amended Complaint itself. In the Amended Complaint, Oro's allegations of damage to its balconies are as follows:

> Defendant Holmes has been unjustly enriched, to Plaintiff's detriment, in an amount exceeding $75,000 as a result of Defendant Holmes Lumber receiving payment for work and/or materials related to the balconies, posts, and/or other carpentry work at the Runaway Bay Project, when such work is incomplete, defective and/or not completed in accordance with the Borror Construction Agreement.

(ECF No. 50 ¶ 228). Oro also alleges that Holmes failed to "construct the balconies of the renovated units at the Runaway Bay Property in a workmanlike manner," and failed to "report errors and code violations relating to the balconies." (*Id.* ¶ 134(i)−(j)). Oro does not otherwise

allege how the balconies were damaged or even that they were damaged, nor does it connect the balcony damages to the alleged negligence of BPI.

The uncertain relationship between the alleged negligence and the damage to the balconies and the lack of specificity about damages otherwise incurred due to BPI's alleged negligence are both problematic. This is because the economic loss rule distinguishes between direct and indirect economic damages[7] and the extent to which they are recoverable under tort. In particular:

> [T]he mere coupling of personal injury or property damages with indirect economic damages is not enough to entitle a plaintiff to recover the indirect economic damages. The plaintiff must show that the indirect economic damages *arose from* the property damage or personal injury. There must be a causal nexus between the tangible damage and the indirect economic losses in order for the economic losses to be recoverable.

*Queen City*, 73 Ohio St. 3d at 615. Oro does not allege its damages with sufficient particularity for the Court to discern whether it experienced direct economic losses or indirect losses and, if the latter, whether they arose from property damage. Because Oro has not raised its right to relief above the speculative level, its negligent construction claim therefore fails as a matter of law. *See Avery Dennison Corp. v. Soliant LLC*, No. 1:04CV1865, 2005 WL 2035511, at *4 (N.D. Ohio Aug. 23, 2005) (barring plaintiff's tort claims due to the economic loss rule because plaintiff did not sufficiently allege personal injuries or property damage). Accordingly, the Court **DISMISSES** Count Seven.

---

[7] Direct economic loss is "the loss attributable to the decreased value of the product itself. Generally, this type of damages encompasses the difference between the actual value of the defective product and the value it would have had had it not been defective." *Queen City*, 73 Ohio St. 3d at 614 (internal quotations omitted) (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 43, 537 N.E.2d 624, 629 (1989). Indirect economic loss, on the other hand, "includes the consequential losses sustained, which may include the value of production time lost and the resulting lost profits." *Id.*

**V. CONCLUSION**

For the reasons articulated above, the Court **GRANTS** Canal Flooring's Motion to Dismiss [#53], **GRANTS** Holmes Lumber's Motion to Dismiss [#69], and **GRANTS** the Motion for Judgment on the Pleadings in Part by Borror, BPI, and the Individual Borror Defendants [#84]. Counts Four, Five, Six, Seven, Eight, and Nine of the Amended Complaint are hereby **DISMISSED**.

  **IT IS SO ORDERED.**

                  _____

                  **ALGENON L. MARBLEY**
                  **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 16, 2021**