# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **ORO BRC4, LLC,** | : | |
|  | : | **Case No. 2:19-cv-4907** |
| **Plaintiff,** | : | |
|  | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : | |
|  | : | **Magistrate Judge Deavers** |
| **SILVERTREE APARTMENTS, INC.,** | : | |
| et al., | : | |
|  | : | |
| **Defendants.** | : | |

|  |  |  |
|---|---|---|
| **ORO CAPITAL ADVISORS, LLC,** | : | |
| et al., | : | |
|  | : | **Case No. 2:19-cv-5087** |
| **Plaintiffs,** | : | |
|  | : | |
| v. | : | |
|  | : | |
| **BORROR CONSTRUCTION CO., LLC,** | : | |
| et al., | : | |
|  | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendants' Objections, (ECF No. 127), to the Magistrate Judge's June 10, 2021, Opinion and Order, (ECF No. 123), GRANTING IN PART AND DENYING IN PART Plaintiffs' Motion for Sanctions (ECF No. 109).[1] For the reasons set forth more fully below, the Defendants' Objections are **OVERRULED**.

---

[1] The Court will enter this Opinion and Order in each case. Unless otherwise noted, the Court cites to documents only as they appear on the docket for Case No. 2:19-cv-5087 ("Federal Construction Case").

1

## I. BACKGROUND

### A. Factual Background

On December 31, 2020, Plaintiffs served Defendants with a 30(b)(6) Notice of Deposition set for January 15, 2021. (ECF No. 114 at 9; ECF No. 127 at 5). The Notice contained thirty-seven (37) topics seeking testimony by Defendants corporate designee, Mr. Cook. (ECF No. 114 at 9). During the Deposition, Mr. Cook expressed several times that he relied almost solely on his own knowledge in answering questions and except for one topic, declined to seek information from other sources within the company, including other employees. (*See e.g.*, ECF No. 109-2, Cook Dep. 09:22–10:11, 66:11–66:16). After asking Mr. Cook numerous times about his understanding of the role of a 30(b)(6) designee, Plaintiffs' counsel declared:

> "I don't believe this deposition is over and we reserve the right to reconvene it as to these ESI issues and the topics noticed because it's our position that we did not have a witness who was able to and prepared to answer all of the questions relating to all of the topics."

(Cook Dep. 282:11–282:20.) On January 19, 2021, the Magistrate Judge held a previously scheduled status conference to follow-up on discovery matters. (*See* ECF No. 120). There, Plaintiffs made the Court aware of its position as to Defendants' 30(b)(6) designee as well as its position on sanctions; the Magistrate Judge ordered briefing. (*See Id.* at 3, 8).

### B. Procedural Background

On February 9, 2021, Plaintiffs filed a Motion for Sanctions for Defendants' Failure to Prepare Witness for 30(b)(6) Deposition, Failure to Disclose Discoverable Information, and Failure to Preserve Evidence. (ECF No. 109). On June 10, 2021, the Magistrate Judge entered an Opinion and Order GRANTING IN PART and DENYING in PART Plaintiffs' Motion for Sanctions. (ECF No. 123). On June 23, 2021, Defendants filed their Objections to the Magistrate's

Order.  (ECF No. 127).  On July 7, 2021, Plaintiffs filed their Response in Opposition.  (ECF No. 131).  Defendants' Objections are now fully briefed and ripe for decision.[2]

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), district judges reviewing magistrate judges' orders on non-dispositive matters "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

Rule 72(a) provides "considerable deference to the determinations of magistrates."  *Siegler v. City of Columbus*, 2:12-CV-472, 2014 WL 1096159, at *1 (S.D. Ohio Mar. 19, 2014) (Marbley, J.) (quoting *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (internal quotations omitted).  This Court has noted that "[w]hile Rule 72(a) does not use the phrase 'abuse of discretion,' the standard applied under this rule for a nondispositive motion parallels the standard outlined in *Getsy* for appellate review of discovery orders."  *Nathan v. Ohio State Univ.*, 2:10-CV-872, 2013 WL 139874, at *2 (S.D. Ohio Jan. 10, 2013) (citing *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (*en banc*) ("[A] district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.")).

The "clearly erroneous" standard applies to factual findings by the magistrate judge, while legal conclusions are reviewed under the "contrary to law" standard.  *Gandee v. Glaser*, 785 F.

---

[2] The same motion was also filed as ECF No. 90 in Case No. 2:19-cv-04907.

Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994); *see also Siegler*, 2014 WL 1096159, at *1–2 (S.D. Ohio Mar. 19, 2014). A factual finding is "clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Siegler*, 2014 WL 1096159, at *1 (citing *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985)). A district court's review of legal conclusions under the "contrary to law" standard "may overturn any conclusions of law which contradict or ignore applicable precepts of law." *Gandee*, 785 F. Supp. at 686 (quoting *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D. Cal. 1983); *see also Peters v. Credits Prot. Ass'n LP*, 2:13-CV-0767, 2015 WL 1022031, at *3 (S.D. Ohio Feb. 19, 2015) (Marbley, J.).

### III.   LAW AND ANALYSIS

Defendants object to the Opinion and Order granting, in part, Plaintiffs' Motion for Sanctions (ECF No. 123). (ECF No. 127). Defendants assert six separate objections: two it argues are clearly erroneous and contrary to law; one it maintains is simply clearly erroneous; and three it contends are contrary to law. (*Id.* at 1–2). In the first category—objections it alleges are clearly erroneous and contrary to law, Defendants object to the Magistrate Judge's conclusion that Plaintiffs met the standard in S.D. Ohio Civ. R. 37.1 and that its 30(b)(6) witness was not prepared. (*Id.* at 1). In the second category—characterizing the Magistrate Judge's decision as only clearly erroneous, Defendants object to the finding that they failed to disclose devices that could contain discoverable information. (*Id.* at 2). Finally, Defendants assert two objections that it argues are contrary to law. (*Id.*). Defendants maintain that the Magistrate Judge applied the wrong standard when awarding sanctions regarding its 30(b)(6) witness and disclosure of devices potentially containing ESI. (*Id.*). Defendants also contend that even if this Court finds that the awarded sanctions are permissible as a general matter, the portion of the sanctions that are punitive rather

than compensatory must be vacated because punitive sanctions in the discovery context are contrary to law. (*Id.*). This Court will consider each objection along with Plaintiffs' corresponding responses in turn.

### A. S.D. Ohio Civ. R. 37.1 & Fed. R. Civ. P. 37(a)

Defendants assert that Plaintiffs failed to satisfy the requirements of S.D. Ohio Civ. R. 37.1 and Fed. R. Civ P. 37(a) and as such, the Magistrate Judge's conflicting finding is clearly erroneous and contrary to law. (*Id.* at 4). With respect to Local Rule 37.1, S.D. Ohio Civ. R. 37.1, Defendants maintain that Plaintiffs disregarded the requirement of "exhausting all extrajudicial means for resolving their differences" before taking their dispute to the Magistrate Judge. (*Id.*) (citing S.D. Ohio Civ. R. 37.1). Instead, Defendants contend, Plaintiffs immediately raised the issue directly with the Court during the Rule 37.1 informal discovery dispute conference. (*Id.* at 5).

Regarding FRCP 37, Defendants argue that the rule requires a party seeking sanctions in the discovery context to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." (*Id.* at 4) (citing Fed. R. Civ. P. 37(a)(1)). Relying on *In re Johnson*, 408 B.R. 115, 119 (S.D. Ohio 2009), Defendants assert that Plaintiffs' Motion for Sanctions must fail for wont of the conferment requirement. (*Id.*). Additionally, according to Defendants, to find that Plaintiffs met their requirements under either S.D. Ohio Civ. R. 37.1 or Fed. R. Civ. P. 37(a)(1) is clearly erroneous because it is unsupported by the record and accordingly makes the conclusion based on that finding contrary to law. (*Id.* at 5–6).

Plaintiffs rejoin, contending that it did satisfy the duty to exhaust extrajudicial means. (ECF No. 131 at 5). Particularly, Plaintiffs point to its statement at the end of the deposition. There, Plaintiffs' counsel stated that:

> "they didn't believe this deposition is over and we reserve the right
> to reconvene it as to these ESI issues and the topics that were in the
> deposition notice because it's our position that we did not have a
> designee who was able to and prepared to answer all of the questions
> relating to all of the topics."

(ECF No. 123 at 10 n.3) (quoting ECF No. 109-2 at 71) (internal quotations omitted).  Further,

Plaintiffs participated in an informal discovery dispute conference under 37.1.  (ECF No. 131 at 4

n.1).  Taken together, Plaintiffs argue, its statement near the end of the deposition coupled with

the time elapsed to the informal conference, and seemingly the informal conference itself, was

sufficient to discharge its duties under 37.1 allowing it to seek sanctions.  (*Id.* at 4–5).  Importantly,

the Magistrate Judge agreed with Plaintiffs on this point.  (*See id.* at 6).  Moreover, because

Defendants failed to make a good faith effort to prepare its witness under 30(b)(6), Plaintiffs

maintain that no further extrajudicial means could have altered this result.  (*Id.*).  Finally, Plaintiffs

do not respond to Defendants' arguments concerning Fed. R. Civ. P. 37(d).  (*See id.*).

 S.D. Ohio Civ. R. 37.1 requires movants filing under Federal Rules 26 or 37 to take certain

steps *before* bringing the matter to the attention of the Court.  *Asamoah v. Amazon.com Servs.,

Inc.*, No. 2:20-CV-3305, 2021 WL 3637730, at *5 (S.D. Ohio Aug. 17, 2021) (citing S.D. Ohio

Civ. R. 37.1) (Marbley, J.) ("Additionally, Local Rule 37.1 states that before filing a motion …,

the parties must exhaust all extrajudicial means for resolving their differences and issues.")

Specifically, the rule provides that "[o]bjections, motions, applications, and requests relating to

discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless the

parties have first exhausted among themselves all extrajudicial means for resolving their

differences."  S.D. Ohio Civ. R. 37.1.  The rule continues: "After extrajudicial means for the

resolution of differences about discovery have been exhausted, in lieu of immediately filing a

motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case." S.D. Ohio Civ. R. 37.1.

Here, the Magistrate Judge found that Plaintiffs satisfied this threshold requirement.  In a footnote, the Magistrate Judge reached this conclusion, apparently in part, based on the above assertion made by Plaintiffs' counsel at the conclusion of Mr. Cook's deposition.  (ECF No. 123 at 10 n.3).  Then, the Magistrate Judge noted that the parties "discussed Oro's concerns with the Court during an informal Teleconference on January 19, 2021, as contemplated by Local Rule 37.1." (*Id.*).  Finally, the order asserts "that Local Rule 37.1 does not preclude the imposition of sanctions." (*Id.*).  While this assertion is absent authority, the Court does note that the Magistrate Judge's Order does appear to rely, in part, on Plaintiffs' Motion for Sanctions.  (*Id.*) (citing ECF No. 119 at 2–3).  There, Plaintiffs assert a waiver argument but also cite no authority.  (*See* ECF No. 119 at 2–3).

Next, Plaintiffs contend that the exhaustion of extrajudicial means under Local Rule 37.1 is relaxed when compliance would be futile, relying on three decisions by Judge Frost: *William F. Shea, LLC v. Bonutti Rsch., Inc.*, 2:10-CV-615, 2012 WL 3780299, at *3 (S.D. Ohio, Aug. 31, 2012); *E.E.O.C. v. JP Morgan Chase Bank, N.A.*, 295 F.R.D. 166, 171 (S.D. Ohio 2013); and *Tdata Inc. v. Air. Tech. Pub.*, No. 2:03-CV-264, 2008 WL 2169353, at *3 (S.D. Ohio May 21, 2008).  (*Id.*).  Each case, however, is inapposite.

First, in *William F. Shea, LLC.*, the court found that the movant did enough to satisfy 37.1 by writing to opposing counsel with a proposed remedy, waiting two weeks for a reply, and then filing the Motion for Sanctions with the court.  Moreover, the court was motivated in no small part by the time-constraint the parties were up against: a looming final pretrial conference and pretrial motions deadlines.  Instead, in the case sub judice, discovery is not complete.  Plaintiffs' end-of-

deposition declaration and three-day waiting period pales in comparison to the effort by the movant in *William F. Shea, LLC*.   Similarly, in *E.E.O.C. v. JP Morgan Chase Bank*, the movant demonstrated actual exhaustion through its previous dealings with the opposing counsel.  Finally, in *Tdata Inc.*, before the court was a Motion in *Limine*.  There, the Court first assumed without deciding that Local Rule 37.1 applied to Motions in *Limine*. Then, like the previously mentioned cases, waived the requirement of 37.1 on the basis of futility.  The Court then expressly limits the extent of this proposition to "the specific circumstances of this case." *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-CV-264, 2008 WL 2169353, at *4 (S.D. Ohio May 21, 2008).  Here, of course, the case is not on the eve of trial nor is a motion in *limine* under the Court's consideration— the consequence of which would be to exclude testimony of certain witnesses because of the other side's failure in discovery.  *See id.*  Yet, even absent waiver and futility, the Magistrate Judge was still well within her discretion to order briefing and ultimately sanctions.

While the better practice is to hold parties and counsel accountable to the requirements of our local rules, or clearly provide the basis for departure, S.D. Ohio Civ. R. 1.1(c) empowers Judges in this court with significant discretion concerning such rules.  Specifically, the rule provides that the Local Rules "govern practice and procedure ... unless a Judge orders otherwise in a given case." *Emerson Climate Techs., Inc. v. M.P.D., Inc.*, No. 3:15-CV-365, 2016 WL 3637182, at *5 (S.D. Ohio June 29, 2016) (citing S.D. Ohio Civ. R. 1.1(c)).  Further, assuming *arguendo* that 37.1 was a bar to sanctions here, the Court still retains inherent power to sanction certain conduct. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 513 (6th Cir. 2002) ("We do not interpret *Chambers* to require the district court, in every instance, to exhaust consideration of sanctions under other relevant rules and/or statutes.").  Although the Court reminds the litigants of its inherent power, here Local Rule 37.1 is the proper device.

Because Magistrate Judge Deavers had the authority to relax what would otherwise be a condition-precedent to seeking sanctions, her articulation of the law and her factual findings are neither contrary to law nor clearly erroneous. Thus, Defendants' objection to the Magistrate Judge's order on this basis is **OVERRULED**.

Regarding Defendants assertion that Plaintiffs failed to satisfy Fed. R. Civ. P. 37(a), it is important to note that Plaintiffs move for sanctions under Fed. R. Civ. P. 37(d). (ECF No. 119 at 3). As such, the requirements of Fed. R. Civ. P. 37(a)(1) are irrelevant to the Court's analysis. Furthermore, while 37(d) has its own certification requirement, the plain language of Fed. R. Civ. P. 37(d)(1)(B) does not extend to sanctions regarding a party's failure to attend its own deposition. And while Defendants would surely argue that its 30(b)(6) witness was physically present, presentation of an unprepared witness can be treated as a failure to attend. *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) ("[P]roducing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d)); *Allen v. Wyndham Vacation Resorts, Inc.*, No. 3:18-CV-259-TAV-DCP, 2021 WL 2434355, at *3 (E.D. Tenn. Mar. 18, 2021) (same); *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 1685955, at *4 (E.D. Tenn. Feb. 3, 2021) (same); *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 1196606, at *14 (S.D. Ohio Mar. 25, 2013) (same). Moreover, courts have found—consistent with the language of Fed. R. Civ. P. 37(d)(1)(B)—that the certification requirement does not apply to such sanctions. *Bell-Coker v. City of Lansing*, No. 1:07-CV-812, 2009 WL 166556, at *5 (W.D. Mich. Jan. 21, 2009) ("The Rule does not require such consultation and certification, however, where the movant seeks sanctions for a party's failure to attend its own properly-noticed deposition."); *see Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 302 (3d Cir. 2000); *see also Gonzalez v.*

*Batmasian*, 319 F.R.D. 403, 404 (S.D. Fla. 2017). Thus, Defendants' objection to the Magistrate Judge's order on this basis is **OVERRULED**.

### B. Alleged Violation - Preparation of 30(b)(6) Witness

Defendants also argue that the Magistrate Judge's finding that Defendants' 30(b)(6) witness was unprepared for noticed topics 7-11, 16-23, and 36-37 was clearly erroneous and contrary to law. (ECF No. 127 at 6). First, Defendants' objection to the Magistrate Judge's factual finding under the clearly erroneous standard. Defendants argue that the Magistrate Judge erroneously found that Mr. Cook did not adequately prepare for the deposition. In fact, according to Defendants, Mr. Cook and counsel spent months getting ready, albeit indirectly, for the deposition. (*Id.*). Defendants minimize the distinction between active and passive preparation, asserting that they should be credited with passively preparing their witness for months.[3] (*Id.*). Finally, Defendants argue it was Mr. Cook's poor memory, not his unpreparedness, that led to his failure to answer some questions during his deposition. (*Id.* at 7).

Next, Defendants argue that the Magistrate Judge's conclusion was contrary to law because she did not apply the appropriate standard. (*Id.* at 6). Specifically, Defendants argue that the Magistrate Judge failed to compare the testimony of Mr. Cook against the noticed topics. (*Id.*). Indeed, according to Defendants, if a 30(b)(6) witness provides substantive responses to some topics, the court should conclude that the witness was sufficiently prepared. (*Id.* at 8). Defendants rely on *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2013 WL 1196606, at *17, 23-25 (S.D. Ohio Mar. 25, 2013) for this proposition. (*Id.*). Further, according to Defendants, had the Magistrate Judge applied this standard correctly, she would have found that Mr. Cook

---

[3] Defendants were served with a Deposition Notice on December 31, 2020 for a Deposition on January 15, 2021. Thus, the passive preparation theory Defendants rely on, appears to mean discussing certain information with their client before they knew he was going to be deposed as a 30(b)(6) witness.

sufficiently discharged his duties to provide responses to the noticed topics. (*Id.*). In fact, Defendants argue, Mr. Cook's testimony shows that he had sufficiently answered questions on every noticed topic. (*Id.*).

Plaintiffs reply, that not only was the Defendants' 30(b)(6) witness unprepared, but it was also the Magistrate Judge's application of the correct legal standard that revealed this fact. (ECF No. 131 at 6). Plaintiffs cite several excerpts from the Magistrate Judge's Order comparing the testimony of Defendants' witness with the noticed topics. (*Id.* at 7). Moreover, Plaintiffs assert that in deciding whether the Magistrate Judge actually compared the witness's testimony "with the noticed topics, this Court must give 'considerable deference' to her determination," relying on *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 550 (S.D. Ohio 2014). (*Id.*).

Additionally, Plaintiffs argue that the Magistrate Judge applied the appropriate legal standard and that Defendants arguing otherwise is supported solely by vague criticism. (*Id.* at 8). Instead, Plaintiffs assert, Defendants' alternative explanation for their witness's performance— that Mr. Cook has a bad memory—is simply unavailing. (*Id.*). According to Plaintiffs, this is not excusable under the plain language of Fed. R. Civ. P. 30(b)(6). (*Id.* at 9). Moreover, Plaintiffs argue, Defendants' reliance on *Little Hocking Water Ass'n, Inc.* for the proposition that a witness can still be considered prepared in the event he answers some questions and not others in a deposition is not applicable in this scenario. (*Id.* at 9–10). Unlike the witness in *Little Hocking Water Ass'n, Inc.*, who was unprepared for one noticed topic, Plaintiffs maintain, Mr. Cook was unable to provide information on more than fifteen topics. (*Id.* at 10). Thus, according to Plaintiffs, the Magistrate Judge's Order appropriately applied the right legal standard and correctly concludes that Mr. Cook was unprepared. (*Id.*).

To determine whether a 30(b)(6) witness is adequately prepared, "courts should compare the testimony elicited in the deposition to the topics noticed." *Wicker*, 278 F. Supp. 3d at 1000–01. Moreover, "[t]he party seeking sanctions must make at least an initial showing … suggesting that the designee's preparation was inadequate." *Id.* at 1000 (citing *Eid v. KLM*, 310 F.R.D. 226, 229 (S.D.N.Y. 2015) ("Plaintiffs have not met their burden of establishing that the Defendants' preparation of their Rule 30(b)(6) witness was deficient."). Finally, determinations by Magistrate Judges are afforded 'considerable deference' under Rule 72(a). *Langenfeld*, 299 F.R.D. at 550.

Here, the Magistrate Judge's Order, as consistent with the record, belies the assertions made by Defendants. First, the Magistrate Judge found Defendants' 30(b)(6) witness unprepared for noticed topics 7-11 ("Litigation hold topics"), 16-23 ("Rankey and Weaver topics"), and 36-37. (ECF No. 123 at 27). Under topic 7, for example, concerning the details of Defendants' receipt, internal discussion, and distribution of the litigation hold letter, Mr. Cook testified that he had no idea if anyone at Defendants had ever received the letter. (ECF No. 109-2, Cook Dep. 236:14–237:03). When Plaintiffs' counsel followed up, reminding Mr. Cook of his obligations as the designated 30(b)(6) witness, Mr. Cook stated: "You know, I received this list Tuesday. 37 topics. I did my best to prepare for it." Indeed, Mr. Cook was emphatic about only having two days to prepare even though Defendants had been noticed with the topics two weeks prior. (*See* ECF No. 109-2, Cook Dep. 249:08–249:19). These statements, however, were simply a small sample of the deposition testimony the Magistrate Judge compared to the noticed topics. The Court deals with each in turn, finding that the Magistrate Judge appropriately applied the comparison standard, and as such, found that Defendants' 30(b)(6) witness was not adequately prepared for his deposition. As more fully detailed below, the Defendants' objections to this finding of the Magistrate Judge as to each topic is **OVERRULED.**

12

### 1.  Matters Related to The Litigation Hold Letter (Topics 7, 9)

Defendants assert that the Magistrate Judge did not adequately compare the noticed topics to the deposition transcript of Mr. Cook. Yet, the Magistrate Judge's Order belies this conclusion. (*See e.g.,* ECF No. 123 at 3–4).  Topics 7 and 9 each relate to the Litigation Hold Letter ("Letter") served by Plaintiffs on Defendants.  (ECF No. 109-2 at 104).  Topic 7 concerns the facts and circumstances surrounding the receipt of the Letter; Topic 9 is about internal communications about the Letter.  (*Id.*).  The following exchange demonstrates Mr. Cook's level of preparation:

> Q:    But you said you don't know whether the litigation hold letter from Oro was ever received by Borror – I'm sorry – from Oro's counsel was ever received by Borror.
> A:    How would I know?
> Q:    Well, you're supposed to ask other people if you don't know enough to answer the questions relating to this topic. It says the receipt of the litigation hold letter and how and to what extent it was shared, discussed, and/or distributed. And I'm saying: You don't even know if it was received. Do you know whether that litigation hold letter was distributed within Borror?
> A:    You know, I received this list Tuesday. 37 topics. I did my best to prepare.

(ECF No. 123 at 3) (citing ECF No. 109-2, Cook Dep. 247:06–247:22).  The above exchange not only demonstrates that the Magistrate Judge undertook a comparison of noticed topics 7 and 9, but also reached the reasonable conclusion that Mr. Cook fundamentally misunderstood his role as a 30(b)(6) witness.  (*See id.*).  Further, on Topic 9, Mr. Cook admits he "did not speak to other people internally on this, being I received it Tuesday."  (ECF No. 109-2, Cook Dep. 249:08–249:09).  Thus, on these topics, Defendants' objection that the Magistrate Judge reached an erroneous factual conclusion—that Mr. Cook was unprepared and unable to answer questions concerning these topics—and also that she applied the incorrect legal standard of comparing the deposition testimony to the noticed topics is belied by Mr. Cook's testimony. Accordingly, Defendants' objections as to these topics are **OVERRULED**.

### 2. Matters Related to Any Implemented Litigation Hold Procedures (Topics 8, 10, 11)

Topics 8, 10, and 11 all relate to the implementation of any litigation hold procedures ("Hold Procedures") by Defendants. (ECF No. 109-2 at 104). Topic 8 concerns Hold Procedures generally; Topics 10 and 11 ask about any specific Hold Procedures taken upon receipt of the Litigation Hold Letter and before receipt, respectively. (*See id.*).

As for Topic 8, Mr. Cook was unable to provide even the most routine aspects of Borror's implementation of litigation holds. Indeed, Mr. Cook could not explain why he sought certain archived data—email accounts—from one of its vendor's servers.

> Q. And those were -- because those were
> people that would have access -- or would have
> information or potentially would have e-mails
> relating to the disputes with Oro. Correct?
>
> MS. CARWILE: Objection.
>
> A. I just went off the list. See, I didn't
> know the -- I don't know what the details of what
> the lawsuit was about or is about.
>
> Q. But your understanding was you were
> requesting these accounts because these accounts
> needed to be held for litigation purposes.
> Correct?
>
> A. Yes.
>
> MS. CARWILE: Objection.
> THE WITNESS: Sorry.
>
> Q. Okay. And that would have included
> then -- what I wanted to know is: So basically
> what Borror's position is is that all these people
> here potentially would have e-mails or information
> relating to Oro. Correct?
>
> MS. CARWILE: Objection.

14

> A. I don't know.
>
> Q. Well, is there somebody at Borror that would know that?
>
> A. Bethany gave me the list.

(ECF No. 109-2, Cook Dep. 99:19–100:04). Accordingly, when asked about the details of its litigation hold procedures, Mr. Cook repeatedly answered that he either didn't know or that someone else was better suited to answer counsel's questions. (*See id.*).

As for Topics 10 and 11, Mr. Cook admitted, as discussed previously, that he was unaware if Borror had even received a litigation hold letter. (ECF No. 123 at 3) (citing ECF No. 109-2 at 62, Cook Dep. 247:06–247:22). Accordingly, his lack of knowledge and investigation of the letter itself significantly undermined his ability to answer questions related to Borror's receipt of the letter. Again, this was excerpted and discussed at length in the Magistrate Judge's Order. (*See id*). Thus, the Magistrate Judge's factual conclusion that Mr. Cook could not adequately answer the noticed topics is not clearly erroneous nor did she reach this conclusion by applying a clearly incorrect legal standard. Defendants claim she did not compare the deposition testimony to the noticed topics when it is clear that is exactly what took place. Further, this lack of knowledge and particularly, Mr. Cook's reference to other Borror employees as the more appropriate person to ask demonstrates a fundamental misunderstanding of the 30(b)(6) role and more importantly, Borror's failure to prepare its corporate witness. Accordingly, Defendants' objections as to these topics are **OVERRULED**.

### 3. Matters related to Rankey and Weaver's departure (Topics 22-23)

Topics 22 and 23 relate to the departure of former employees Jeff Rankey and Kate Weaver. (ECF No. 109-2 at 105). Notably, the example excerpted and discussed in the Magistrate

Judge's Order efficiently demonstrated two aspects of Mr. Cook's deposition: (1) that he was specifically unprepared to discuss Topics 22 and 23; and (2) that he was again fundamentally unaware of his obligations as a 30(b)(6) witness.  Mr. Cook testified:

> Q: But what you're telling me is you did not come here today prepared to talk about the timing of their departure. Is that correct?
> A: I guess so.
> Q: Well, you say, "I have no knowledge" regarding their departure, right?
> A: Correct.
> Q: Okay. Did you make an effort to go talk to anybody at Borror in order to find out the timing of their departures?
> A: No, I did not.
> Q: Did you realize that you have an obligation to do that as the designee for Borror?
> A: I did not.

(ECF No. 123 at 3) (citing ECF No. 109-2 at 48, Cook Dep. 191:06–191:19).  Thus, yet again, this demonstrates that the Magistrate Judge's factual conclusion that Mr. Cook could not adequately answer the noticed topics is not clearly erroneous nor did she reach this conclusion by applying a clearly incorrect legal standard.  Accordingly, Defendants Objections to this finding are **OVERRULED**.

### 4.  Matters related to ESI being stored locally on Borror Electronic Devices (Topics 36 and 37)

Topics 36 and 37 relate to the storage of ESI on local devices.  (ECF No. 109-2 at 106).  First, Topic 36 concerns the actions Borror took to ascertain if the electronic devices used by some former employees stored such ESI.  (*Id.*).  Concerning this topic, Plaintiffs' counsel asked Mr. Cook whether he spoke to any employees about what they might have stored on their local device.  In addition to admitting he had not spoken to anyone, he also admitted he had not even checked the local devices for ESI.  He stated:

> A. No, I haven't sat down with any

16

> individual and said, What do you have stored on
> your device?
>
> Q. Whether they're a current or former
> employee. Okay. Is that right?
>
> A. Definitely if they're not -- are a
> former employee because I haven't talked to any of
> them.
> …
>
> A. We thought we were preserving all the
> information by grabbing all those PST files,
> everyone's e-mail.

(ECF No. 109-2 at 59, Cook Dep. 234:12–235:12). Putting aside the proposition that the head of

IT simply overlooked checking for stored information on the local hard drive of the devices, Mr.

Cook follows that admission with the dubious assertion that the email files represented the entirety

of the litigation hold. While the Defendants argue that the above exchange represented knowledge

on the topic (*See* ECF No. 127 at 9), from the vantage point of the Court it instead appears that

Borror's corporate witness was either being intentionally obstructive or, perhaps more likely, was

uninformed of his duties as a 30(b)(6) witness.

Next, Topic 37 involves how Borror employees accessed typical software programs on

their electronic devices as well as the use of local desktops from 2017 onward. (ECF No. 109-2

at 106). First, it is important to note that asking whether employees save items to their local

desktop is a subset of asking whether those same employees save things to their local machine

generally, as the desktop is but a location on the machine. As such, not having the details about

the entire machine necessarily encompasses the use of desktops over the same time period. Thus,

to the extent Mr. Cook had no details to offer about the storage of information on machine hard

drives, the same can be said about the subset topic about saving on desktops. Thus, the fact that

the Magistrate Judge reached the conclusion that Mr. Cook was unprepared to talk about a

significant portion of Topic 37 is not clearly erroneous. Accordingly, Defendants Objections to this finding are **OVERRULED**

### 5. Matters related to Rankey and Weaver's email accounts (Topics 16-21)

Topics 16-21 relate to the email accounts of former employees Jeff Rankey and Kate Weaver. (ECF No. 109-2 at 104–105). Topics 16 and 17 are about communications involving, *inter alia*, the preservation of those email accounts, internally and externally (with RDI), respectively. (*See id.*). Topics 18 and 19 are about the deletion (18) and recovery (19) of those email accounts. (*See id.* at 105). Topic 20 is about all the places where such emails could have been stored. (*See id.*). Finally, Topic 21 is about Weaver allegedly deleting her emails before she left Borror. (*See id.*).

As for Topics 16 through 21, this is the only portion of the fifteen deposition topics that was not abundantly clear in the Magistrate Judge's Order. That's because it is not entirely clear that the deponent was ever asked about these topics. At first blush, this appears problematic. But when viewed in context of the deposition, there was no need to engage the deponent deeply on subjects where his earlier answers demonstrated his inability to answer those questions. Thus, despite this feature, Defendants do little to disturb the Court's finding on this point. Defendants' Objections and Plaintiffs' Motion for Sanctions forcefully elucidate this conclusion.

In its Objections, Defendants lodge vague criticisms about the Magistrate Judge not comparing Mr. Cook's testimony to the noticed deposition topics. At one point, however, Defendants cite their Response in Opposition to Plaintiffs' Motion for Sanctions. There, they assert that "Mr. Cook … provided all of the information that Borror had concerning the Mr. Rankey and Ms. Weaver's email accounts." (ECF No. 127 at 10) (citing ECF No. 114 at 14). This part

then references another portion of the same brief: the discussion of the former employees' emails. (*See* ECF No. 114 at 14).

First, Ms. Weaver. To support the assertion that Mr. Cook testified to the full extent of Borror's knowledge, Defendants referenced Exhibits. Those Exhibits note that Ms. Weaver left the company in 2018; deleted her entire mailbox; and that efforts at retrieval were unsuccessful. (*See* ECF No. 114 at 5–6). Notably, Defendants do not point to any portion of the Deposition record to demonstrate that Mr. Cook's testimony was consistent with this account. (*See id*). Thus, this portion of the brief is wholly unresponsive as to whether Mr. Cook was prepared to testify on behalf of the corporation concerning its comprehensive knowledge of Weaver's email account.

Next, Mr. Rankey's emails. Again, instead of using the deposition testimony to demonstrate that Mr. Cook was prepared for this topic, Defendants turned to other sources of information including Exhibits and Declarations of other Borror employees. (*See* ECF No. 114 at 6). While this information is generally helpful in providing context, it does not speak to whether Mr. Cook was able to provide that information during his deposition as required. Instead, Defendants need to go outside of the deposition record is telling—it suggests that Mr. Cook's testimony, on its own, could not support their theory that Mr. Cook adequately responded to the noticed topics.

Importantly, in Plaintiffs' Motion for Sanctions, they noted that Mr. Cook's reference documents he used throughout his deposition was blank as to these topics. (ECF No. 109 at 11). Thus, it is entirely plausible that Plaintiffs' opted not to probe further since the document Defendants provided in the beginning of the deposition and identified as a reference for Mr. Cook—a document Mr. Cook intimated was necessary for his recollection—suggested he had

limited to no knowledge on these topics.[4]  (ECF No. 109-2 at 4).  The Magistrate Judge, having expressly written on all preceding topics, may have concluded that there was no reason to scour the record on these topics, given the witness's performance on the previous topics.

Moreover, because Plaintiffs have met their initial burden of "suggesting that the designee's preparation was inadequate," this additional information when viewed in light of the Defendants other shortcomings provided an adequate basis for her to conclude Defendants' witness was also not prepared for this topic.  *Wicker*, 278 F. Supp. 3d at 1000.  Furthermore, "[a] factual finding is "clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed."  *Siegler*, 2014 WL 1096159, at *1 (citing *Heights Cmty. Cong.*, 774 F.2d at 140).  Here, it is difficult to reach the opposite conclusion based on the totality of the circumstances presented by Plaintiffs and Defendants.  If Defendants were prepared for their 30(b)(6) deposition as they assert, a simple reference to the deposition transcript could have demonstrated as such. They have failed to provide any relevant citations. Thus, they have similarly failed to demonstrate that the Magistrate Judge's finding on this point is clearly erroneous. Accordingly, Defendants' objections on this point are **OVERRULED**.

### C.  Alleged Violation - Disclosure of Devices that could contain discoverable information

Defendants also argue that the Magistrate Judge's finding that Defendants failed to disclose that some of its electronic devices could contain discoverable information is clearly erroneous. (ECF No. 127 at 10).  According to Defendants, the record and the exhibits show that Defendants

---

[4] A. I typed some notes in on the deposition sheet.
Q. Okay. And you are using those again to kind of help—and I understand that—to help refresh your recollection as to some of the dates and names?
A. Oh, absolutely.  Otherwise it would be a big fog.
Cook Dep. 15:18–15:23.

and counsel were sufficiently diligent in determining whether employees of Borror were able to save, view, or modify documents on their local computers as opposed to the network. (*Id.* at 10–11). Instead, Defendants again point to their witness's poor memory as the primary reason "some information" was not timely disclosed. (*Id.* at 11). In response, Plaintiffs simply assert that the sanctions imposed for failure to disclose such devices were neither clearly erroneous nor contrary to law. (*See* ECF No. 131 at 13–14).

In determining whether Defendants complied with the Magistrate Judge's July 13, 2020, discovery Order, she simply compared what was required by the litigants in her previous Order to the inconsistent statements made by Defendants. (*See* ECF No. 123 at 19). Although Defendants disagree with the conclusion reached by the Magistrate Judge, they do not appear to challenge the methodology employed to reach this conclusion. (*See* ECF No. 127 at 10–12). Instead, Defendants appear to place great emphasis on its counsel's effort in working with its clients to ensure the representation Defendants made was defensible. (*Id.*).

Yet, the diligence of counsel to determine whether its client complied with a court order is somewhat of a red herring: Rule 37(b)(2) authorizes the district court to sanction parties to the litigation as well as attorneys. *See* Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court must order the ***disobedient party***, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees.") (emphasis added). As made abundantly clear by the Magistrate Judge's Order, Borror, (*i.e.*, Defendants) not Borror's counsel, is to pay Oro's attorney's fees associated with the Motion for Sanctions. (ECF No. 123 at 22). Accordingly, the emphasis on the effort of Defendants' lawyers, while important as a general matter, does nothing to disturb the Magistrate Judge's finding that ***Borror's*** errant initial disclosure about devices should have been corrected in the first instance, and at the very least, corrected sooner. Moreover, that finding—

that Borror made inconsistent statements about the possibility of ESI on certain devices—was exceedingly evident when the Magistrate Judge compared deposition statements to its own ESI disclosures. (*Id.* at 19). Indeed, Defendants' 30(b)(6) witness openly admitted that it was possible for employees to have information located on their local machine's hard drive. (*Id.*). To argue that the Magistrate Judge was clearly erroneous on this point strains the credulity of the Court. Accordingly, the objections on this basis are **OVERRULED**.

### D. Appropriate Standard for Awarding Sanctions

#### 1. 30(b)(6)

Defendants also argue that the Magistrate Judge failed to apply the appropriate standard for awarding sanctions; as such, her decision to award sanctions is contrary to law. (ECF No. 127 at 8). First, Defendants cite *Marietta Health Care Physicians, Inc. v. Yoak*, 2021 WL 1310335, at *2-3 (S.D. Ohio Apr. 8, 2021) for what they consider to be the correct standard. Under that standard, courts must consider: "(1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; [and] (3) whether the party was warned that failure to cooperate could lead to the sanction." (*Id.*) (quoting *Marietta Health Care Physicians, Inc. v. Yoak*, 2021 WL 1310335, at *2-3 (S.D. Ohio Apr. 8, 2021)) (internal quotations omitted). Moreover, according to Defendants, had the Magistrate Judge applied that standard, sanctions would not have issued. (*See id.* at 8–10). Thus, because the Magistrate Judge failed to apply the appropriate standard, her conclusion is contrary to law. (*Id.* at 10).

Plaintiffs retort that the Magistrate Judge not only applied the appropriate standard but also did so correctly. (ECF No. 131 at 10). First, Plaintiffs note that sanctions regarding 30(b)(6) depositions are governed by Federal Rule of Civil Procedure 37(d). (*Id.*). Furthermore, relying

on *Little Hocking Water Ass'n, Inc.*, Plaintiffs maintain that Magistrate Judges have significant discretion under that standard to determine appropriate sanctions and she chose a relatively mild option. (*Id.* at 11) (citing *Little Hocking Water Ass'n, Inc.*, 2013 WL 1196606, at *17)). Moreover, Plaintiffs assert that Defendants advocate for the wrong, more stringent standard. (*Id.* at 12). Finally, under the appropriate standard used, the Magistrate Judge correctly found that the Defendants were subject to sanctions for producing an unprepared 30(b)(6) witness. (*Id.* at 13).

Although "[a]bsolute perfection is not required of a 30(b)(6) witness, producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Fed. R. Civ. P. 37(d)." *Wicker*, 278 F. Supp. at 1000 (citing *Lutz v. St. Paul Fire & Marine Ins. Co.*, No. 1:03–cv–750, 2005 WL 2372871, *7–8 (S.D. Ohio May 24, 2005)) (internal quotations omitted). Moreover, "Rule 37(d) provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default." *Id.* at 1000 (citing *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)." When determining whether to impose "sanctions, courts should compare the testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness's preparation." *Id.* at 1000–01. (citing *QBE*, 277 F.R.D. at 685 (reviewing transcript)).

Beyond that, Rule 37 provides that rather than "or in addition to [the above mentioned] sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37. Although Defendants urge this Court to apply the four-factor test set forth *in Marietta*

*Health Care Physicians, Inc. v. Yoak*, No. 2:19-CV-5626, 2021 WL 1310335, at *2 (S.D. Ohio Apr. 8, 2021), it is inapposite for several reasons.

First, in *Marietta*, the Court was analyzing whether to sanction a party that failed to comply with a Rule 16 scheduling Order. *Marietta Health Care Physicians, Inc.*, 2021 WL 1310335, at *2. Moreover, the plain language of Rule 16(f) provides for the same sanctions in 37(b). See Fed. R. Civ. P. 16(f)(1). As such, courts in this circuit have recognized that sanctions pursuant to Rule 16(f) are evaluated in the same manner as those under Rule 37(b). *Marietta Health Care Physicians, Inc.*, 2021 WL 1310335, at *2–3. Here, however, Plaintiffs move for sanctions under 37(d). Further, while Rule 37(d)(3) allows for any of the sanctions enumerated in 37(b)(2)(A)(i)-(vi), the Court *must*, at least, "require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 447 (6th Cir. 2020) (citing Fed. R. Civ. P. 37(d)(3)).

Furthermore, the enumerated sanctions under 37(b)(2)(A)(i)-(vi)—those specifically authorized under 37(d)(3)—are wholly distinct from those listed in 37(d)(3). *See* Fed. R. Civ. P. 37(d)(3). Thus, if the Court finds that sanctionable conduct occurred under 37(d) (*i.e.*, "failure to attend its own deposition, serve answers to interrogatories or respond to a request for inspection"), whether the Court chooses to invoke sanctions under 37(b), it must always order the 37(d) sanctions independent of those available under 37(b). Fed. R. Civ. P. 37(d)(3) ("Instead of or in addition to these sanctions, the court *must*…") (emphasis added). Accordingly, while the four-factor test might be appropriate for at least some sanctions under 37(b), it need not be applied when

invoking sanctions under 37(d).[5]  Instead all that is required is that the court "compare the testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness's preparation." *Wicker*, 278 F. Supp. 3d at 1000–01.

Here, the Magistrate Judge did just that. As explained above, she excerpted representative samples of the deposition testimony provided by Plaintiffs.  In the order, she notes with specificity the 30(b)(6) witness's fundamental misunderstanding of his role as a 30(b)(6) witness.  On more than one occasion, Mr. Cook openly admitted that he did not realize he had to talk to others reasonably to obtain the knowledge of the corporation.  Moreover, his unpreparedness is further buttressed by his startling admission that he'd only received the deposition notice a few days prior despite the company being served more than two weeks prior.  The Magistrate Judge applied the correct standard and applied that standard appropriately.  Accordingly, Defendants' objection on this basis is **OVERRULED**.

## 2.  Devices

Defendants again assert that the Magistrate Judge failed to apply the *Marietta Health* factors and as such the Order is contrary to law.  (ECF No. 127 at 12).  Moreover, had the Magistrate Judge applied those factors, according to Defendants, she would have concluded that

---

[5] The Sixth Circuit reviews "a district court's decision to invoke Rule 37 sanctions … for an abuse of discretion." Yet, this Circuit does not require a district court—either by a Magistrate or a District Judge, in the first instance or when sitting in review—to consider the factors the Defendants urge from *Marietta*. *See EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 447 (6th Cir. 2020) (finding the District Court did not abuse its discretion despite not applying the *Marietta* four-factor test).  Instead, as articulated by other courts in this circuit, "the Sixth Circuit uses four factors to determine whether the sanction is warranted … [w]here dismissal is considered."  *Morris v. Burton*, No. 19-02874-MSN-TMP, 2021 WL 6011105, at *2 (W.D. Tenn. Nov. 30, 2021), *report and recommendation adopted*, No. 2:19-CV-2874-MSN-CGC, 2021 WL 5999306 (W.D. Tenn. Dec. 20, 2021).  Although some may consider these factors in the first instance, the test is not mandatory as Defendants urge.  Accordingly, the Magistrate Judge applied the appropriate standard consistent with this Circuit's law.

its witness simply has a bad memory, not that Defendants failed to make any necessary disclosures. (*Id.*). Further, Defendants maintain that Plaintiffs were not prejudiced by this failure to disclose. (*Id.*). Accordingly, Defendants argue that absent the appropriate analysis, the Order granting the sanctions for failure to disclose is contrary to law. (*Id.* at 13).

Plaintiffs rejoin that the Magistrate Judge applied the correct standard (ECF No. 131 at 13), contending that the standard applied for the failure to produce a 30(b)(6) witness and a failure to disclose is identical. (*Id.* at 14). Beyond that, the sanctions imposed for this conduct is identical to that imposed for its unprepared 30(b)(6) witness. (*Id.*). As such, according to Plaintiffs, even if the Magistrate Judge applied the wrong standard here, the sanctions were appropriate under the 37(d) standard. (*Id.*).

As noted above, *Marietta Health* was principally about evaluating a motion for sanctions under Rule 16(f). There, the Court noted that analysis under 16(f) is the same under 37(b). Although Defendants do not identify the source of this sanction, they appear to argue that the Magistrate Judge acted pursuant to 37(b). (*See* ECF No. 127 at 12). Hence, its repeated invocation of the 37(b) four factor analysis. For their part, Plaintiffs also fail to offer the specific sanction authority under which the Magistrate Judge acted. (*See* ECF No. 131 at 14).

Assuming for the sake of argument that the Magistrate Judge Ordered sanctions for a failure to disclose without applying the proper standard, this error is harmless. Because the sanction ordered by the court regarding the 30(b)(6) witness and failure to disclose certain information is arguably identical, Defendants would need to differentiate between the two sanctions.[6] Simply put, they do not. Further, the sanction ordered for the Defendants' failure

---

[6] Although an argument could have been asserted that the cost of producing the motion allocated to just this issue—to the extent that information is able to be disaggregated—is the most appropriate sanction, Defendants do not raise it. Even if they did, the briefing on just this issue was little more than a page. Assuming that the Magistrate Judge's sanctions are the same for both sets of conduct, the district court is

under 37(d) is consistent with 37(d)(3)—namely, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(d)(3). Thus, absent such foregoing arguments, Defendants' fail to identify an error in the Magistrate Judge's analysis such that this court should vacate the Order. Accordingly, this objection is **OVERRULED**.

### E.  Nature and Extent of Awarded Sanctions

Defendants finally argue that even if some sanctions are warranted, the portion of the sanctions ordered that are punitive must be stricken. According to Defendants, discovery sanctions must be "compensatory rather than punitive." (ECF No. 127 at 13) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)). Moreover, relying on *Bard v. Brown* County, Defendants contend this rule extends not only to sanctions authorized under rules of civil procedures, but also to sanctions pursuant to the Court's inherent power. (*Id.*) (citing *Bard v. Brown Cty.*, No. 1:15-CV-00643, 2018 WL 4087928, at *2 (S.D. Ohio Aug. 27, 2018)). Further, Defendants maintain, punishment or deterrence are inappropriate to consider when crafting such sanctions. (*Id.* at 14). Thus, according to Defendants, they should, at most, be made to pay for the portion of the Plaintiffs' Motion for Sanctions that deals directly with the alleged misconduct. (*Id.*). In Defendants' estimate, this amounts, at most, to half of the Plaintiffs' Motion for Sanctions. (*Id.*).

Plaintiffs argue that despite having the power to punish via discovery sanctions, the Magistrate Judge did not use that power when crafting the sanction. (ECF No. 131 at 16). Instead,

---

only required to consider lesser sanctions, not necessarily articulate that consideration. *Bullard v. Roadway Exp.*, 3 F. App'x 418, 422 (6th Cir. 2001) (citing *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) ("Concomitantly, we do not assume that lesser sanctions were not considered simply because their consideration is not articulated.").

her Order merely compensated Plaintiffs for having to seek sanctions and repeat its 30(b)(6) deposition. (*Id.*). Thus, even if what Defendants say is true as a legal matter—that discovery sanctions must not be punitive—the Magistrate Judge's Order is consistent with this view of the law. (*See id.* at 16–17).

First, Defendants' arguments as to the applicability of *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), are persuasive. There, the Supreme Court instructed that "when using its inherent sanctioning authority (and civil procedures)," the Court must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* Indeed, in reaching that holding, the Court used Federal Rule of Civil Procedure 37(b)(2)(C) as an example of a "rule based … regime[] [that] similarly require[s] courts to find such a causal connection before shifting fees." *Id.* at n.5. The language of Rule 37(b)(2)(C) and 37(d)(3) is almost identical. Notably, both provisions empower the court to require the disobedient litigant or litigant engaging in misconduct, or its lawyers, "to pay the reasonable expenses, including attorney's fees, ***caused*** by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Compare* Fed. R. Civ. P. 37(b)(2)(C) *with* Fed. R. Civ. P. 37(d)(3) (emphasis added). Moreover, the Supreme Court rejected the use of such sanctions to deter or punish. Instead, when shifting fees, the appropriate inquiry is whether the fees would have "been incurred except for the misconduct." *Id.* at 1188.

Here, the Court ordered Defendants to participate in an additional 30(b)(6) deposition with Defendants paying the bill. (ECF No. 123 at 27). Moreover, the Court ordered Defendants to pay Plaintiffs' reasonable attorney's fees associated with Plaintiffs' Motion for Sanctions. (*Id.*). And while Defendants do offer the principle set forth in *Haegar* as a basis for its request to limit the amount it is liable for in sanctions, they do not provide any specific support for disaggregating the

fees incurred for producing different portions of the motion. Nor do Defendants offer this Court anything more than the general principle from *Haeger* to reduce its liability.

More importantly, the Supreme Court in *Haeger* foresaw this exact type of request the Defendants assert and explicitly decided not to adopt such an approach. *Id.* at 1187. There, the *Haeger* Court set out the general standard and added limiting principles to guide district courts in their task. Articulating the general rule, the *Haeger* Court noted that the "but-for-causation standard generally demands that a district court assess and allocate specific litigation expenses— yet still allows it to exercise discretion and judgment." *Id.* Toward that end, "[t]he court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct." *Id.*

Then, it espoused some helpful limits: "trial courts undertaking that task need not, and indeed should not, become green-eyeshade accountants (or whatever the contemporary equivalent is)." *Id.* (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Instead, district courts should maintain their focus on "[t]he essential goal" in shifting fees: which, of course, is "to do rough justice, not to achieve auditing perfection." *Id.* (citing *Fox*, 563 U.S. at 838). As such, even when applying the but-for standard, district courts are empowered to "exercise discretion and judgment." *Id.*

Here, although articulating the wrong standard, the Magistrate Judge still arrived at a reasonable and permissible conclusion: Defendants pay for the fees associated with Plaintiffs having to depose the 30(b)(6) witness a second time and the Plaintiffs' Motion for Sanctions. Defendants urge this Court to extend the Supreme Court's rule in *Haeger* to a level of granularity— subparts of a motion—even they could neither reasonably articulate with any specificity nor demonstrate the feasibility of such a request. Specifically, Defendants' proposal of having this Court only hold them liable for half of the Plaintiffs' Motion for Sanctions is rejected, and the

District Court finds that the Magistrate Judge's sanction to pay for all of the Plaintiffs' Motion for Sanctions consistent with its task "to do rough justice, not to achieve auditing perfection." *Haeger*, 137 S. Ct. at 1187 (citing *Fox*, 563 U.S. at 838). Accordingly, Defendants' objections on this basis is **OVERRULED**.

## IV.    CONCLUSION

The Court **OVERRULES** Defendants' Objections, (ECF No. 127), and **AFFIRMS** the Magistrate Judge's Opinion and Order (ECF No. 123). Plaintiffs shall submit time and expense records, for each professional who performed work on the Motion for Sanctions and the second 30(b)(6) Deposition within fourteen (14) days. Defendants' counsel may submit objections to the requested amount within fourteen (14) days of each movants' filing.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 18, 2022**